**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Case No. 26-11178-BLS |
| YSA Investments 1, LLC | ) | Chapter 11 |
| Debtor. | ) | |

**MOTION BY JENK'S BEST LIVING, LLC**
**FOR RELIEF FROM THE AUTOMATIC STAY**

Comes now Jenk's Best Living, LLC, debtor in possession ("Jenk's"), by and through undersigned counsel, pursuant to section 362(d)(1) of title 11 of the United States Code, and moves this Honorable Court for relief from the automatic stay arising under subsection (a) of the same statute (the "Automatic Stay"), for purposes of pursuing an adversary proceeding against YSA Investments 1, LLC ("YSA" or the "Debtor") in the United States Bankruptcy Court for the District of Maryland. In support thereof, Jenk's submits the *Declaration of Zvi Guttman* ("Gutman Decl.") filed contemporaneously herewith, and states as follows:

## I. Introduction

This bankruptcy arises out of the same set of facts as the bankruptcy of Jenk's: YSA's extraordinary and improper seizure of the sole asset of Jenk's, an apartment building in Oklahoma. After YSA used an unauthorized and questionable pledge to deed itself the building, Jenk's sought bankruptcy protection in Maryland pursuing chapter 5 avoidance actions against YSA and a declaration that unauthorized encumbrances on the property are void. After a lengthy hearing, the Maryland bankruptcy court granted a temporary restraining order against YSA (the "TRO"), finding a likelihood of success on, at a minimum, the a section 548 fraudulent conveyance claim.



4915-5241-6198, v. 1

A fair reading of the TRO prohibits YSA from seeking bankruptcy relief. A few days later, YSA did just that and sought bankruptcy relief in this Court.

YSA has taken a series of extremely aggressive steps in a campaign that is difficult to ascribe to good faith. Efraim Diveroli, a former arms dealer who has been convicted of fraud and has recently been accused of weaponizing baseless lawsuits to force businesses into transactions that benefit him financially, used YSA to lend funds to Marc Kulick and his personal entities. To secure those personal loans, Mr. Kulick used a pledge with a one-paragraph joinder of "any other entities in which the undersigned does now own or control or may herein after own or control." Mr. Kulick was the former managing member of Jenk's but, under its operating agreement, he lacked authority to borrow money or encumber the property without consent of all members. That consent was never obtained for any YSA loan or encumbrance.

Using the pledge, and supporting power of attorney, YSA self-executed a mortgage on the property. Mr. Kulick's outstanding principal debt to YSA is somewhere between $317,000.00 and (at most) $2,000,000.00. The $317,000.00 loan bears interest at 7,000%, compounded daily, and appears to have been executed at a time when Mr. Kulick was in default on another loan. In less than two months, the interest on that loan ballooned to over $900,000,000.00, at which point YSA appears to have stopped calculating interest to avoid presenting an even more absurd number.[1]

YSA did not stop at wrongfully encumbering the property. Mr. Kulick filed an action, personally and on behalf of his wholly owned entities, in Delaware Chancery Court, seeking an injunction against YSA that would void mortgages entered by YSA. The Delaware court denied the injunction, based solely on an interpretation of the loan documents, without making any finding

[1] The true outstanding amount is in the nonillions.

regarding Mr. Kulick's power or authority to make any pledge, or the validity of the loan documents. Jenk's was not a party to the injunctive claim and did not authorize the litigation.

YSA appears to have taken the denial of an injunction as carte blanche to do whatever it wishes. YSA proceeded to use a power of attorney in the name of Mr. Kulik to self-execute a deed in lieu of foreclosure for the Jenk's property.[2] Following the entry of that deed, and the day after Jenk's filed its bankruptcy, YSA entered the management office for the property, evicted the property manager's employees, and changed the locks. YSA has taken—without any consideration to Jenk's whatsoever—the sole asset of Jenk's.

Jenk's is trying to get its asset back. Whether or not the language of the pledge purported to include the asset, it is undeniable that Mr. Kulick did not have the needed authority to pledge the asset. Mr. Kulick had no actual or apparent authority to pledge, encumber, or transfer the asset. None of the money went to Jenk's. Yet, when the former manager invariably defaulted on his personal loans, YSA seized upon a power of attorney and, acting in the name of the Jenk's former manager, executed a deed in lieu of foreclosure in favor of YSA.

Before YSA petitioned for bankruptcy relief, Jenk's filed an adversary proceeding in its Maryland bankruptcy case, suing to either (i) declare its apartment building to have not been lawfully lost to YSA (in which case the building would not be a part of YSA's estate); or (ii) avoid the loss as a fraudulent conveyance or preferential transfer (in which case the building would transfer from YSA's estate to the estate of Jenk's). *See Jenk's Best Living, LLC v. Kulick, et al.*,

[2] Oklahoma law, which governs the transfer of Oklahoma property, voids any loan agreement that results in the transfer of property without the opportunity to redeem. 42 O.S. §11 ("contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby. . . are void."). The intent of this statute is to prohibit exactly this situation: a clandestine seizure of property without the opportunity to redeem. *Burke v. Tarrant Inv. Co.*, 26 P.2d 949, 951 (Okla. 1933) ("pledge contracts are frequently entered into without careful examination" and the statute "requir[es] a public sale of pledged property.").

Case No. 26-176-MMH (Bankr. D. Md. 2026) (the "Adversary Proceeding"). The Maryland court granted a TRO against YSA, finding a likelihood of success on the avoidance claims (without needing to reach the declaratory judgment claim), and placed severe restrictions on YSA's actions regarding the property. This bankruptcy arguably violates that TRO.[3]

Beyond the stay violation, everything about this bankruptcy is irregular. On July 27, 2025, a hearing began in the United States Bankruptcy Court for the Northern District of Texas, on a motion alleging YSA violated a different debtor's stay by seizing properties. Late in the afternoon of the first day of the hearing, YSA seized an additional property. Late in the afternoon on the second day of the hearing, and immediately before Mr. Diveroli was to take the stand, YSA filed the petition for relief commencing this case. And, at a conference before this Honorable Court on August 6, 2026, counsel for YSA stated that one of the goals of the bankruptcy was to make it easier for it to deal with the litigation engendered by its actions, while also intimating a desire to sell off assets before their conveyance can be challenged or avoided by other bankruptcy estates.[4]

This motion presents the somewhat unusual circumstance of one chapter 11 debtor in possession seeking stay relief to pursue claims against another purported chapter 11 debtor in possession. Jenk's is a victim of various activities undertaken by YSA and others. However, the relief sought herein is simple: for the Adversary Proceeding to continue, in the United States

---

[3] A copy of the TRO, entered in the Adversary Proceeding, is attached as Exhibit A to Guttman Decl. The TRO provides, *inter alia*, that "YSA shall not agree to the Property or an Owner Entity becoming subject to any voluntary or involuntary action or proceeding—whether through contract, document, instrument, or possession, or before a court, agency, administrative body, tribunal, similar forum, or other entity or person—and shall immediately notify the Plaintiff, the other Defendants, and the Court within one business day of any such attempted action or proceeding against the Property or an Owner Entity." TRO, at p. 8.

[4] The debts listed on YSA's petition are, without exception, fees owed to numerous law firms for services in connection with YSA's seizures.

Bankruptcy Court for the District of Maryland, where a hearing on the TRO has already been held, where the TRO has already been granted, and where Jenk's is a debtor in possession yearning to reorganize.

The simple remedy of stay relief will allow for the court that already had control of this matter, and that has already made substantive rulings on the issues, to continue to resolve the issue. YSA's irregular bankruptcy filing should not be allowed to shift that balance or materially upend the reorganization of Jenk's.

## II. Standard

Title 11 of the United States Code (the "Bankruptcy Code") permits one to seek relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). This "is a 'flexible concept and courts often conduct a fact-intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.'" *In re Rupari Holding Corp.*, 573 B.R. 111, 120 (Bankr. D. Del. 2017) (quoting *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 120 (Bankr. D. Del. 2015) (quoting *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007))).

Generally, courts examine three factors when assessing whether to afford relief from the automatic stay for cause:

> 1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
> 3. The probability of the creditor prevailing on the merits.

*Trump Entm't Resorts*, 526 B.R. at 120-21 (quoting *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del 1992)). These factors, however, are non-exhaustive,

*see Trump Entm't Resorts*, 526 B.R. at 121, and a court is free to weigh other equitable considerations in assessing the existence, *vel non*, of "cause."

**III. Argument: Stay Relief is Appropriate**

Seeking stay relief, in this somewhat *sui generis* instance, is actually the least obtrusive effort Jenk's can fairly muster. There is a strong argument for dismissal of this case, on the basis that it was filed in contravention of a bankruptcy court's injunction in the Adversary Proceeding. There is also an argument for the appointment of a chapter 11 trustee, given that this case was seemingly filed to circumvent an order of a neighboring bankruptcy court. There is an absolute statutory right to have an examiner appointed, since the claim of Jenk's is for far more than $5 million and is putatively unsecured. *See* 11 U.S.C. § 1104(c)(2). And the options well continue from there. But Jenk's respects that there might be some sense in YSA endeavoring to reorganize, and thusly believes it least intrusive—and most sensible—to simply seek stay relief.

In considering the first *Izzarelli* factor: no prejudice will accrue to YSA or its estate by allowing the litigation to continue in a neighboring bankruptcy court. Whether or not YSA actually seized the assets of Jenk's (and, if so, whether or not such seizure is avoidable) will need to be determined before either entity can fully reorganize. This is not an issue that can be ignored. And both parties benefit from continuing in the extant litigation, especially insofar as that litigation has already occasioned the imposition of an injunction that is *not* dissolved by virtue of YSA seeking chapter 11 relief and that remains in place.

As to the second criterion: it appears the hardship of maintaining the stay will profoundly impact both Jenk's and YSA. As noted above, YSA is subject to an injunction from a sister court. That needs to be addressed through continuation of the litigation and adjudication of a trial on the merits. Both bankruptcy estates will benefit from achieving finality and gleaning an understanding

as to which estate owns the at-issue real property (as well as whether or not a prior transfer thereof is avoidable and, if so, whether or not one of the estates has a section 502(d) claim against the other estate).

Finally, the third inquiry is easily resolved: Jenk's has a probability of prevailing on the merits. One need not take Jenk's word for this, either; the TRO is clear: ". . . the Court finds that the foregoing basic facts show that the Plaintiff has demonstrated a likelihood of prevailing on its fraudulent transfer claims under section 548 of the Code." TRO, attached as Exhibit A to Guttman Decl., at p. 5.

In terms of the catch-all equitable nature of section 362(d)(1), there are two additional reasons stay relief should be afforded: first, such is the least prejudicial means of addressing the enormous procedural harm occasioned by YSA violating the Maryland bankruptcy court's injunction and filing this bankruptcy case (just days after the injunction was issued, no less). The TRO is accompanied by an aggressive scheduling order, and a trial date is set. *See* Scheduling Order, attached as Exhibit B to Guttman Decl. Any delay occasioned by YSA's invocation of the Automatic Stay will risk derailing that Scheduling Order and, in turn, irreparably prejudicing the rights of Jenk's—also a debtor in possession seeking to reorganize under chapter 11. This is fundamentally inequitable, and can be readily cured through a prompt grant of stay relief.

Second, Jenk's would be harmed by being forced to proceed as just one more claimant to YSA's estate. Jenk's has a clear and simple claim: Kulick completely lacked authority to grant YSA any interest in Jenk's property and the purported transfer of the property is void. As an owner seeking to void YSA's interests, not just avoid YSA's transfers, the interest of Jenk's differs from the other parties to the proceedings before this Honorable Court. At the status conference on August 6, 2026, YSA laid out the final phase of its scheme. Use § 363 to sell all properties, pay

the senior lenders, and fight over the proceeds. Senior lenders are not necessarily harmed by that; it is the investors and owners like Jenk's who will lose their assets because of personal loans to Mr. Kulick at absurd interest rates. As an owner who has already taken action to protect its interests, Jenk's should be permitted to continue to do so.

As far as section 362 motions go, this is relatively mild: Jenk's is merely asking that the adversary proceeding already pending in a sister bankruptcy court—a court well-equipped to pay specialized attention to the intricacies of both the plaintiff and defendant being chapter 11 debtors and which has already engaged substantively in the case—be able to continue in that bankruptcy court. No one is seeking to run off to a state court, to exercise self-help remedies, or even to venture into a federal district court. Jenk's simply asks that it be permitted to continue seeking to recover its property, as part of its own reorganization, and that it be permitted to do so 70 miles down I-95 in the forum where the recovery process already begun and from which the TRO has already been issued.

## IV. Conclusion

WHEREFORE, Jenk's respectfully prays this Court (i) afford relief from the automatic stay, pursuant to section 362(d)(1) of the Bankruptcy Code, so as to allow Jenk's to pursue a pending adversary proceeding—against YSA and others—in the United States Bankruptcy Court for the District of Maryland, to and through the point of the entry of judgment; (ii) permit the bankruptcy court overseeing Jenk's reorganization to facilitate any transfer of property, pursuant to any judgment entered in the aforesaid adversary proceeding; and (iii) afford such other and further relief as may be just and proper.

*[Signatures on Following Page]*

Respectfully submitted,

Dated: August 10, 2026
Wilmington, Delaware

**THE ROSNER LAW GROUP, LLC**

By: *Zhao Liu*_______________
Zhao (Ruby) Liu (DE 6436)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Tel: (302) 777-1111
E-mail: liu@teamrosner.com

**THE VERSTANDIG LAW FIRM, LLC**

Maurice B. VerStandig (admitted *pro hac vice*)
9812 Falls Road
#114-160
Potomac, Maryland 20854
Tel: (301) 444-4600
E-mail: mac@mbvesq.com

*Proposed Counsel to Jenk's Best Living, LLC*