**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re: | |
| YSA INVESTMENTS 1, LLC, | Case No. 26-12806-SAH |
| Debtor. | Chapter 11 |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 328, 330, AND 1107 AUTHORIZING EMPLOYMENT AND RETENTION OF BAYARD, P.A. AS CO-COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE AND NOTICE OF OPPORTUNITY FOR HEARING**

**NOTICE OF OPPORTUNITY FOR HEARING**

> **Your rights may be affected. You should read this Document carefully and consult your attorney about your rights and the effect of this Document.** If you do not want the Court to grant the motion, or you wish to have your views considered, you must file a written response to the motion with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than 14 days from the date of filing of the motion. You should also serve a file-stamped copy of the response to the undersigned [and others who are required to be served] and file a certificate or affidavit of service with the Court.
>
> [NOTE – THIS IS A FLAT FOURTEEN (14) DAYS REGARDLESS OF THE MANNER OF SERVICE.]

YSA Investments 1, LLC (the "Debtor") in the above-captioned chapter 11 case (the "Case") hereby submits this application (the "Application") for entry of an order pursuant to sections 327(a), 328, 330, and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended (the "Bankruptcy Code"), Rules 2014(a), 2016(b), and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the Western District of Oklahoma (the "Local Rules"), and consistent with any applicable guidelines established by the Office of the United States Trustee for

Region 20 (the "U.S. Trustee"), authorizing the Debtor to retain and employ Bayard, P.A. ("Bayard") as bankruptcy co-counsel effective as of the Petition Date. In support of this Application and the statement herein required by Bankruptcy Code section 329, the Debtor submits the (i) declaration of Ericka F. Johnson (the "Johnson Declaration"), attached hereto as **Exhibit 1**. In further support of the Application, the Debtor respectfully represents as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the Western District of Oklahoma (the "Court") has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue of this Case and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409. This Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are sections 327(a), 328, 330, and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

3. On July 28, 2026 (the "Petition Date"), the Debtor commenced this Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

4. On August 14, 2026, the Case was transferred to this Court. *See* D.I. 118. The Debtor continues to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## RELIEF REQUESTED

5. Pursuant to sections 327(a), 328, 330, and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b) and 5002, and Local Rules 2014-1 and 2016-1, the Debtor

submits this Application for an order authorizing the Debtor to retain and employ Bayard as bankruptcy co-counsel to the Debtor in connection with this Case and all related proceedings, effective as of the Petition Date.

**BASIS FOR RELIEF REQUESTED**

6. Section 327(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession is authorized, with the court's approval, to employ "attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist [the debtor in possession] in carrying out [its] duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a). Section 328(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, with the court's approval, "may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

7. As required by section 329 of the Bankruptcy Code and Bankruptcy Rule 2014(a), this Application and the attached Johnson Declaration set forth: (a) the specific facts showing the necessity for Bayard's employment; (b) the reasons for the selection of Bayard as bankruptcy counsel to the Debtor in this Case; (c) all of Bayard's connections, if any, to certain parties in interest in this Case, to the best of the Debtor's and Bayard's knowledge; (d) the nature and scope of professional services to be rendered by Bayard; (e) the proposed arrangement between the Debtor and Bayard for Bayard's compensation; and (f) any compensation paid by the Debtor to

Bayard within the year prior to the Petition Date. *See* Fed. R. Bankr. P. 2014(a); 11 U.S.C. § 329. For the reasons set forth in the Johnson Declaration, the Detweiler Declaration, and in this Application, the Debtor respectfully submits that Bayard is eligible and capable to serve as bankruptcy counsel to the Debtor in this Case.

**A. Need to Retain Bayard as Bankruptcy Counsel**

8. The Debtor submits that the successful administration of its chapter 11 Case requires the service of a law firm experienced in bankruptcy and reorganization matters. The Debtor selected Bayard as its bankruptcy counsel because of Bayard's extensive experience in corporate reorganizations. The Debtor determined that Bayard has the resources and experience necessary to assist the Debtor and deal effectively with many of the potential legal issues that may arise in the context of this Case. Subject to the Court's approval of this Application, Bayard has indicated that it is willing to serve as Debtor's bankruptcy co-counsel in this Case to perform the services described below.

**B. Bayard's Qualifications**

9. The Debtor seeks to retain Bayard as its bankruptcy counsel because of Bayard's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. Additionally, the Debtor submits that, because of Bayard's expertise, experience, and knowledge, the legal services that it will provide will be efficient and cost-effective for the Debtor's estate. In connection with services already rendered to the Debtor, Bayard developed familiarity with the Debtor, its business operations, certain issues affecting the Debtor, and the circumstances which led to the commencement of this Case.

10. The Debtor has determined that Bayard has the resources and experience necessary to assist and deal effectively with many of the potential legal issues that may arise in the context of this Case. Further, Bayard's appearance before this Court for the applications, motions, and other matters that may arise in this Case will be efficient and cost-effective for the Debtor's estate. Bayard will work with any other counsel that is retained by the Debtor to ensure that no work is duplicated and that the work is completed in the most efficient manner possible. The Debtor therefore believes that Bayard is both well-qualified and uniquely able to represent the Debtor as bankruptcy co-counsel in this Case in a cost-effective, efficient, and timely manner.

**C. Bayard's Disinterestedness**

11. In connection with its proposed retention by the Debtor in this Case, Bayard researched its computer client database to determine whether it has any relationships with any of the entities listed on a list of creditors and other parties in interest related to the Debtor. Bayard's conflict database includes the names of: (i) current and former clients and, where practical, the known affiliates of those clients; (ii) current and former adverse parties; and (iii) certain current and former related parties in matters upon which Bayard has been or is currently engaged.

12. Bayard maintains and systematically updates its conflict check system in the regular course of its business, and it is the regular practice of Bayard to make and maintain these records. It is the policy of Bayard that no new matter be accepted or opened within the firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter, and the related adverse parties. Accordingly, it is Bayard's regular practice to update its database for every new matter undertaken by Bayard.

13. Moreover, through a firm-wide email, Bayard solicited information from its attorneys to determine whether any attorneys employed by Bayard are investors of the Debtor or were, within two years prior to the Petition Date, a director, officer, or employee of any of the Debtor. No such connections were discovered.

14. To the best of the Debtor's knowledge, based upon the Johnson Declaration, and except as otherwise set forth herein and in the Johnson Declaration: (i) Bayard does not hold or represent any interest adverse to the Debtor, its chapter 11 estate, its creditors, or any other party in interest in connection with this Case, and (ii) neither Bayard nor any of its directors or associates have had or presently have any connections with the Debtor or any other party listed on the Conflicts Check List (as defined in the Johnson Declaration). Bayard is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and neither represents nor holds an interest adverse to the interests of the Debtor or the Debtor's estate with respect to the matters on which Bayard is to be employed. Finally, Bayard will not, while employed by the Debtor, represent any other entity having an adverse interest in connection with this Case.

15. Bayard advised the Debtor that Bayard and certain of its directors and associates may have in the past represented or opposed, may currently represent or oppose, and may in the future represent or oppose parties in interest in this Case in matters wholly unrelated to the Debtor. Bayard has not (except as disclosed in the Johnson Declaration) and will not represent any such parties or any of their affiliates or subsidiaries in relation to the Debtor or this Case.

16. Bayard has further advised the Debtor that it appears in many cases, proceedings, and transactions involving many different attorneys, counsel, accountants, financial consultants, and investment bankers, some of which may now or in the future represent parties in interest in this Case. Bayard has not and will not represent any such entities in relation to this Case, and

Bayard does not have any relationship with any such entities that would be adverse to the Debtor or its interests in the matters upon which Bayard is to be employed. For the avoidance of doubt, Bayard will not represent any entity other than the Debtor in connection with this Case. Bayard may, however, represent a successor in interest to the Debtor if one is formed or appointed.

17. To the extent that Bayard discovers any connections with any interested party or enters into any new relationships with any interested party, the Debtor understands that Bayard will promptly supplement its disclosures to the Court.

18. The Debtor therefore respectfully submits that Bayard satisfies the applicable standards to represent Debtor as its bankruptcy counsel in this Case.

**D. Professional Services to Be Rendered by Bayard**

19. The Debtor anticipates that Bayard will render legal services to the Debtor as needed throughout the course of this Case. Bayard has agreed to provide certain legal services as bankruptcy co-counsel to the Debtor in connection with this Case. The professional services that Bayard will render to the Debtor include, but shall not be limited to, the following:

a. Assisting the Debtor with preparation of all applications, motions, answers, orders, reports, and other legal papers necessary to the administration of the Debtor's estate;

b. Negotiating, drafting, pursuing, and assisting the Debtor in its preparation of all documents, reports, and papers necessary for the administration of this Case;

c. Providing legal advice with respect to the powers and duties of the Debtor as a debtor in possession in this Case in the continued operation of its business and management of its property, including with respect to a potential sale of the Debtor's assets;

d. Appearing in court and protecting the interests of the Debtor before the Court in its capacity as bankruptcy counsel;

e. Attending meetings and negotiating with representatives of creditors, the U.S. Trustee, and other parties in interest;

f. Performing all other legal services for the Debtor which may be necessary and proper in this proceeding including, but not limited to, advice in areas such as bankruptcy law, corporate law, corporate governance, employment, transactional, litigation, intellectual property, and other issues to the Debtor in connection with the Debtor's ongoing business operations.

g. Performing all other services as may be required or deemed necessary and in the best interests of the Debtor and its estate in this Case.

To the extent Bayard is assigned by the Debtor to perform additional services that may be necessary and proper in this Case but that differ materially from the above-described services, Bayard will file a supplemental declaration, in accordance with Bankruptcy Rule 2014, disclosing both the nature of its expanded employment and the reasons supporting its additional duties and responsibilities.

**E. Bayard's Professional Compensation**

20. Section 328(a) of the Bankruptcy Code authorizes the employment of professional persons on any reasonable terms and conditions of employment, including on an hourly basis. 11 U.S.C. § 328(a). Subject to this Court's approval and in accordance with section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, the Debtor requests that Bayard be compensated on an hourly basis for the work it performs, plus reimbursement of the actual and necessary expenses that Bayard incurs.

21. Bayard has advised the Debtor that its ordinary hourly rates range from $450 to $1,875 per hour for attorneys and $275 to $385 per hour for paraprofessionals. The primary attorneys and paralegal that will work on this representation and their respective hourly rates are as follows:

| Professional | Current Rate |
|---|---|
| Ericka Johnson | $895 |

| | |
|---|---|
| Daniel Brogan | $795 |
| Kevin Collins | $775 |
| Steven Adler | $625 |
| Ashly Riches | $475 |
| Rebecca Hudson (paralegal) | $385 |

Other attorneys and paralegals will render services to the Debtor as needed.

22. The hourly rates set forth in the ranges disclosed above are Bayard's standard hourly rates for work of this nature both inside and outside of the bankruptcy context.[1] These rates are set at a level designed to fairly compensate Bayard for the work of its attorneys and paralegals, to cover fixed and routine overhead expenses, and are subject to periodic adjustment to reflect economic and other conditions. Bayard has advised the Debtor, and the Debtor understands, that the hourly rates set forth above are subject to periodic adjustments. Bayard will advise the Debtor of any rate increases once they are established and when any other rate change becomes effective during the course of Bayard's engagement.

23. In addition to the hourly billing rates set forth above, Bayard customarily charges its clients for all costs and expenses incurred, including telephone and telecopier charges, mail and express mail charges, hand delivery charges, document processing, photocopying and print copy charges, travel expenses, expenses for "working meals," computerized research, and transcription costs. Bayard has advised the Debtor that it will charge such costs and expenses in accordance,

[1] Bayard has national practices in commercial bankruptcy, corporate litigation, intellectual property litigation, entity law, and commercial transactions. The hourly rates reflected in the ranges disclosed in this Application are Bayard's standard hourly rates for engagements in those practice areas. In addition, Bayard has a full service regional-based practice in areas including, among others, insurance law and personal services such as familial and estate matters. While Bayard generally charges its standard hourly rates in its regional practice areas, occasionally certain Bayard attorneys will agree to reduced rates for those representations. Bayard also occasionally accepts representations with alternative fee structures, such as contingent, mixed-contingent, flat fee, and blended-hourly.

and only to the extent consistent, with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

24. Subject to the Court's approval, and in accordance with section 330(a) of the Bankruptcy Code, the applicable provisions of the Bankruptcy Rules, and the Local Rules, and pursuant to the additional procedures established by the Court in this Case, Bayard intends to apply to the Court for payment of compensation and reimbursement of expenses. Bayard understands that interim and final fee awards are subject to approval by the Court.

25. The Debtor engaged Bayard as its bankruptcy counsel prior to the Petition Date. In connection therewith, Bayard received a retainer payment in the amount of $50,000.00 from the Debtor (the "Retainer") prior to the Petition Date. Prior to filing the petition, Bayard applied $9,380.00 against the Retainer in satisfaction of fees and expenses incurred by Bayard prior to the Petition Date on behalf of the Debtor.[2] Bayard has a third-party payor agreement with Philadelphia Holdings Group, LLC, an affiliate of the Debtor. Other than having common ownership with the ultimate parent of the Debtor, Philadelphia Holdings Group, LLC has no connections, prior agreements, and no adversity with the Debtor. Pursuant to such third-party payor agreement, Philadelphia Holdings Group, LLC has agreed to pay Bayard's fees and expenses if the Debtor is unable to pay for any reason. The Debtor has made no promises to Bayard regarding compensation in this Case other than in accordance with the Bankruptcy Code and as set forth in this Application. Bayard has advised that it has not shared, nor agreed to share, (a) any compensation it has received

[2] As of the Petition Date, Bayard had not yet completed a final reconciliation of its prepetition fees and expenses incurred in connection with the preparation of this Case. Upon final reconciliation of the amount actually expended prepetition, any balance remaining from the prepetition Retainer will be utilized as Bayard's retainer to apply to postpetition fees and expenses in this Case pursuant to the compensation procedures approved by this Court and in accordance with the Bankruptcy Code.

or may receive with any other party or person, other than with the directors and associates of Bayard, or (b) any compensation another person or party has received or may receive.

26. The Debtor believes the compensation arrangements with Bayard are consistent with, and typical of, arrangements entered into by Bayard and other law firms rendering similar services for clients such as the Debtor. The Debtor, therefore, respectfully requests entry of an order, substantially in the form submitted herewith, authorizing the retention and employment of Bayard as bankruptcy counsel to the Debtor.

**F. Bayard's Retention Should be Made Effective as of the Petition Date**

27. Finally, the Debtor respectfully requests that Bayard's retention be made effective as of the Petition Date in order to allow Bayard to be compensated for the work it performed for the Debtor as of and following the date it was retained and prior to the Court's consideration and approval of this Application. Due to the unique and complex nature of this Case, as well as the significant efforts Bayard needed to expend as bankruptcy counsel promptly upon its retention in connection with the preparation and filing of this Case, there was an immediate need for Bayard to perform services for the Debtor upon its retention. Upon its retention, Bayard immediately turned its attention to urgent matters including, but not limited to, preparing and filing the bankruptcy petition, addressing pending litigation issues, and addressing a variety of other business- and creditor-related issues that are expected to arise in this Case. The Debtor submits that under the circumstances, and to avoid the irreparable harm to the Debtor's estate that may occur if Bayard is not immediately retained, retroactive approval to the Petition Date, is warranted.

28. The Debtor submits that for the reasons stated above, Bayard's retention and employment should be approved pursuant to section 327 of the Bankruptcy Code.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

29. Bayard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this case in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.

30. Bayard also intends to use its reasonable best efforts to comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013* (the "U.S. Trustee Guidelines"). Pursuant to Part D.1 of the U.S. Trustee Guidelines, Bayard hereby provides the following responses set forth below:

> **Question: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?**
>
> Answer: No.
>
> **Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?**
>
> Answer: No.
>
> **Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.**
>
> Answer: Bayard has represented the Debtor since July 2026. As set forth above, Bayard will be billing at its standard hourly rates, with all fees and expenses being subject to approval of the Bankruptcy Court, subsequent to the commencement of a case under chapter 11 of the Bankruptcy Code.
>
> **Question: Have the Debtors approved your prospective budget and staffing plan, and, if so for what budget period?**
>
> Answer: The Debtor and its professionals are currently re-negotiating the detailed budget given the transfer of the Case to Oklahoma, recognizing that in the course

of a case like this Case, it is highly likely that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtor and its professionals.

## NOTICE

31. Notice of this Application shall be provided to (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; and (c) all parties who, as of the filing of this Application, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

**YSA Investments 1, LLC**

______________________________

Name: Aahron Diveroli
Title: Manager

______________________________

Name: John Spurrier
Title: Independent Manager

*/s/ Jason A. Sansone*
Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
Nicholas J. Candido, OBA No. 36069
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 – facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
njcandido@phillipsmurrah.com
**Proposed Attorneys**
**for YSA Investments 1, LLC**

Respectfully submitted,

**YSA Investments 1, LLC**

Name: Aahron Diveroli
Title: Manager

Name: John Spurrier
Title: Independent Manager

*/s/ Jason A. Sansone*
Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
Nicholas J. Candido, OBA No. 36069
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 – facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
njcandido@phillipsmurrah.com
**Proposed Attorneys**
**for YSA Investments 1, LLC**

# EXHIBIT 1

## Johnson Declaration

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re: | |
| YSA INVESTMENTS 1, LLC, | Case No. 26-12806-SAH |
| Debtor. | Chapter 11 |

**DECLARATION OF ERICKA F. JOHNSON IN SUPPORT OF APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 328, 330, AND 1107 AUTHORIZING EMPLOYMENT AND RETENTION OF BAYARD, P.A. AS CO-COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE AS OF THE PETITION DATE AND STATEMENT REQUIRED BY BANKRUPTCY CODE SECTION 329**

Pursuant to section 329 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, (as amended, the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the Western District of Oklahoma (the "Local Rules"), I, Ericka F. Johnson, submit the following declaration in support of the *Application of the Debtor for Entry of an Order Pursuant to Bankruptcy Code Sections 327(a), 328, 330, and 1107 Authorizing Employment and Retention of Bayard, P.A. as Counsel for the Debtor and Debtor in Possession Effective as of the Petition Date* (the "Application"),[1] and declare that the following is true to the best of my knowledge, information, and belief:

1. I am a director at Bayard, P.A. ("Bayard" or the "Firm"), which maintains offices for the practice of law at 600 North King Street, Suite 400, Wilmington, Delaware 19801. I am an attorney-at-law, duly admitted and in good standing to practice in, among others, the State of Delaware, as well as the United States District Court for the District of Delaware.

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

2. I submit this Declaration in support of the Application and for the purposes of complying with Bankruptcy Code section 327(a) to provide the disclosures required under Bankruptcy Rules 2014(a), 2016(b), and 5002.

3. Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto. To the extent that any information disclosed herein requires amendment or modification upon Bayard's completion of further analysis or as additional information becomes available to Bayard, a supplemental declaration will be submitted to the Court.

**BAYARD'S DISCLOSURES**

4. In preparing this declaration and the Application, we have used a set of procedures established by Bayard to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding retention of professionals by a chapter 11 debtor or debtor in possession under the Bankruptcy Code. In that regard, Bayard obtained a list of names and entities who may be creditors or parties in interest in this Case (the "Conflicts Check List").

5. In connection with its proposed retention by the Debtor in this Case, Bayard researched its computer client database to determine whether it has any relationships with any of the entities in the categories on the Conflicts Check List. Bayard's conflict database includes the names of: (i) current and former clients and, where practical, the known affiliates of those clients; (ii) current and former adverse parties; and (iii) certain current and former related parties in matters upon which Bayard has been or is currently engaged.

6. Bayard maintains and systematically updates its conflict check system in the regular course of its business, and it is the regular practice of Bayard to make and maintain these records. It is the policy of Bayard that no new matter be accepted or opened within the firm without

completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter, and the related and adverse parties. Accordingly, it is Bayard's regular practice to update its database for every new matter undertaken by Bayard.

7. Bayard solicited information from its attorneys to determine if any attorneys employed by Bayard are investors of the Debtor or were, within two years of the Petition Date, a director, officer, or employee of the Debtor. No such connections were discovered. If any information relevant to the Application is received after the date hereof, I will promptly supplement this Declaration with such information.

8. Insofar as I have been able to ascertain, the only connection identified is that one of Bayard's directors acted as a mediator in a matter unrelated to the Debtor in which the Bancorp Bank (a first lien lender) was a participant. Neither I, Bayard, nor any director or associate at Bayard represent or have any other connections with any of the parties listed on the Conflicts Check List. Bayard is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and neither represents nor holds an interest adverse to the interests of the Debtor or its estate with respect to the matters on which Bayard is to be employed. Finally, Bayard will not, while employed by the Debtor, represent any other entity having an adverse interest in connection with this Case.

9. Bayard and certain of its directors and associates may have in the past represented or opposed, may currently represent or oppose, and may in the future represent or oppose parties in interest in this Case. I do not believe that any such matter has been or is currently a major engagement that, alone or in the aggregate with other engagements for the same entity, involved or currently involves the billing of fees in excess of 1% of Bayard's annual fees billed.

10. As part of its practice, Bayard appears in many cases, proceedings, and transactions involving many different attorneys, counsel, accountants, financial consultants, and investment bankers, some of which now or in the future may represent claimants and parties in interest in this case. I have advised the Debtor that Bayard has not and will not represent any such entities in relation to this Case and that Bayard does not have any relationship with any such entities that would be adverse to the Debtor or its interests in the matters upon which Bayard is to be employed.

11. If Bayard discovers any information that is contrary to or pertinent to the statements made herein, Bayard will promptly disclose such information to the Court by filing and serving a supplemental declaration. To the extent that Bayard discovers any connection with any interested party or enters any new relationship with any interested party, Bayard will promptly supplement its disclosure to the Court.

12. Bayard intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order entered in this case governing the compensation of professionals, and any applicable U.S. Trustee guidelines.

13. Bayard will seek compensation on an hourly basis for the services it renders, plus reimbursement of actual and necessary expenses and other charges that it incurs. Attorneys and paraprofessionals of Bayard bill their time in one-tenth hour increments. Bayard has advised the Debtor that Bayard's standard hourly rates range from $450 to $1,875 per hour for attorneys and $275 to $385 per hour for paraprofessionals. The primary attorneys and paralegal that will work on this representation and their respective hourly rates are as follows:

| **Professional** | **Current Rate** |
|---|---|
| Ericka Johnson | $895 |
| Daniel Brogan | $795 |
| Kevin Collins | $775 |
| Steven Adler | $625 |
| Ashly Riches | $475 |
| Rebecca Hudson (paralegal) | $385 |

Other attorneys and paralegals will render services to the Debtor as needed.

14. The hourly rates set forth in the ranges disclosed above are Bayard's standard hourly rates for work of this nature both inside and outside of the bankruptcy context.[2]

15. The rates listed in the Application and this Declaration are set at a level designed to fairly compensate Bayard for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Accordingly, such rates are subject to periodic adjustments to reflect economic and other conditions. Bayard has advised the Debtor, and the Debtor understands, that the hourly rates set forth above are subject to periodic adjustments as disclosed in the Application and this Declaration. Bayard will advise the Debtor of any rate increases once they are established and when any other rate change becomes effective during the course of Bayard's engagement.

16. In addition to the hourly billing rates set forth above, Bayard customarily charges its clients for all costs and expenses incurred, including telephone and telecopier charges, mail and

[2] Bayard has national practices in commercial bankruptcy, corporate litigation, intellectual property litigation, entity law, and commercial transactions. The hourly rates reflected in the ranges disclosed in the body of paragraph 13 and in the Application are Bayard's standard hourly rates for engagements in those practice areas. In addition, Bayard has a full service regional-based practice in areas including, among others, insurance law and personal services such as familial and estate matters. While Bayard generally charges its standard hourly rates in its regional practice areas, occasionally certain Bayard attorneys will agree to reduced rates for those representations. Bayard also occasionally accepts representations with alternative fee structures, such as contingent, mixed-contingent, flat fee, and blended-hourly.

express mail charges, hand delivery charges, document processing, photocopying and print copy charges, travel expenses, expenses for "working meals," computerized research, and transcription costs. Bayard has advised the Debtor that it would charge such costs and expenses in accordance, and only to the extent consistent, with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable U.S. Trustee guidelines.

17. Other than set forth herein, there is no proposed arrangement to compensate Bayard. Bayard has not shared or agreed to share (a) any compensation it has received or may receive with any other party or person, other than with the partners and associates of Bayard, or (b) any compensation another person or party has received or may receive.

18. The Debtor engaged Bayard as its bankruptcy counsel prior to the Petition Date. In connection therewith, Bayard received a retainer payment in the amount of $50,000.00 from the Debtor (the "Retainer") prior to the Petition Date. To date, Bayard has applied $9,380.00 against the Retainer in satisfaction of fees and expenses incurred by Bayard prior to the Petition Date on behalf of the Debtor.[3] Bayard has a third-party payor agreement with Philadelphia Holdings Group, LLC, an affiliate of the Debtor. Other than having common ownership with the ultimate parent of the Debtor, Philadelphia Holdings Group, LLC has no connections, prior agreements, and no adversity with the Debtor. Pursuant to such third-party payor agreement, Philadelphia Holdings Group, LLC has agreed to pay Bayard's fees and expenses if the Debtor is unable to pay for any reason. Pursuant to section 329 of the Bankruptcy Code, during the one year immediately

[3] As of the Petition Date, Bayard had not yet completed a final reconciliation of its prepetition fees and expenses incurred in connection with the preparation of this Case. Upon final reconciliation of the amount actually expended prepetition, any balance remaining from the prepetition Retainer will be utilized as Bayard's retainer to apply to postpetition fees and expenses in this Case pursuant to the compensation procedures approved by this Court and in accordance with the Bankruptcy Code.

preceding the Petition Date, the Debtor paid Bayard fees and expenses totaling $9,380.00 which payments came exclusively from the Retainer.

19. Bayard also intends to work cooperatively with the U.S. Trustee to address any concerns it may have related to Bayard's Application and to respond to any requests for additional information related thereto

20. Bayard intends to use its reasonable best efforts to comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013* (the "U.S. Trustee Guidelines"). Pursuant to Part D.1 of the U.S. Trustee Guidelines, Bayard hereby provides the following responses set forth below:

**Question: Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?**

Answer: No.

**Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?**

Answer: No.

**Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.**

Answer: Bayard has represented the Debtor since July 2026. As set forth above, Bayard will be billing at its standard hourly rates, with all fees and expenses being subject to approval of the Bankruptcy Court, subsequent to the commencement of a case under chapter 11 of the Bankruptcy Code.

**Question: Have the Debtors approved your prospective budget and staffing plan, and, if so for what budget period?**

Answer: The Debtor and its professionals are currently re-negotiating the detailed budget given the transfer of the Case to Oklahoma, recognizing that in the course

of a case like this Case, it is highly likely that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtor and its professionals.

21. The foregoing constitutes the statement of Bayard pursuant to Bankruptcy Code sections 327(a) and 329 and Bankruptcy Rules 2014(a), 2016(b), and 5002.

22. By reason of the foregoing, I believe Bayard is eligible for employment and retention by the Debtor pursuant to section 1107 of the Bankruptcy Code and the applicable Bankruptcy Rules, effective as of the Petition Date.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 21, 2026

*/s/ Ericka F. Johnson*
Ericka F. Johnson (Delaware Bar No. 5024)