**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>YSA INVESTMENTS 1, LLC,<br><br>Debtor. | Case No. 26-12806-SAH<br>Chapter 11 |

**DEBTOR'S APPLICATION TO EMPLOY**
**PJD CONSULT LLC AS REAL ESTATE CONSULTANT,**
**WITH BRIEF IN SUPPORT AND NOTICE OF OPPORTUNITY FOR HEARING**

**NOTICE OF OPPORTUNITY FOR HEARING**

**Your rights may be affected. You should read this Document carefully and consult your attorney about your rights and the effect of this Document.** If you do not want the Court to grant the motion, or you wish to have your views considered, you must file a written response to the motion with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean McGee Avenue, Oklahoma City, OK 73102 no later than 14 days from the date of filing of the motion. You should also serve a file-stamped copy of the response to the undersigned [and others who are required to be served] and file a certificate or affidavit of service with the Court.

**[Note – this is a flat fourteen (14) days regardless of the manner of service.]**

Debtor, YSA Investments 1, LLC ("Debtor"), by and through the undersigned counsel, respectfully files this *Debtor's Application to Employ PJD Consult LLC as Real Estate Consultant and Notice of Opportunity for Hearing* (the "Application"). In support of this Application, the Debtor submits the Declaration of Parker Detweiler (the "Declaration") attached hereto as **Exhibit 1**, which is incorporated by reference. A copy of the proposed consulting agreement (the "Consulting Agreement") is attached as **Exhibit 2**.

**JURISDICTION AND STATUTORY AUTHORITY**

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The statutory predicates for the relief requested are sections 105, 327, 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1, 2016-1, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the Western District of Oklahoma (the "Local Rules").

**BACKGROUND**

4. On July 28, 2026 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor continues to manage its affairs as a debtor in possession pursuant to sections 1107 and 1108. No trustee, examiner, or committee has been appointed.

5. The factual background regarding the Debtor, including its business operations and the events leading to this Chapter 11 case, is set forth in the Affidavit in Support of First Day Motions and is incorporated herein by reference.

6. The Debtor has an interest in, and is engaged in efforts concerning, certain multifamily and related real-estate assets commonly known as the Kulick Portfolio. "Kulick Portfolio" means all actual or contemplated transactions, claims, collateral, properties, equity interests, notes, deeds in lieu, proceeds, and related or ancillary rights arising out of dealings among Interchange and/or YSA, on the one hand, and Marc Kulick and any entity he directly or indirectly owns or owned, controls or controlled, or manages (including Vesta-related entities), on the other hand. That includes, without limitation, matters relating to the loan agreements between

Kulick (or his entities) and YSA dated February 18, 2025, April 9, 2025, July 15, 2025, and July 31, 2025.

7. Nothing in this Application is intended to, or shall, adjudicate ownership of, or the validity, extent, or priority of any interest in, any Subject Property. Employment of Consultant is requested so that the Debtor may obtain real-estate advisory services and testimony in connection with the communities and interests presently at issue in this case.

8. Interchange Claims Group, LLC, a Wyoming limited liability company ("Interchange"), is the sole member of the Debtor. Interchange and PJD Consult LLC, a Florida limited liability company ("Consultant" or "PJD"), have entered into a separate consulting agreement (the "Interchange Agreement") under which Consultant provides related advisory services to Interchange, as sole member, for a contingent fee payable solely by Interchange from non-estate sources. The Interchange Agreement is disclosed in the Declaration and will be made available to the United States Trustee and, as the Court directs, to other parties in interest. Amounts payable under the Interchange Agreement are not obligations of the Debtor or the estate.

**RELIEF REQUESTED AND BRIEF IN SUPPORT**

9. The Debtor seeks entry of an order authorizing the Debtor to employ and retain Consultant as a real estate consultant pursuant to Bankruptcy Code sections 327 and 328, on the terms of the Consulting Agreement as modified by this Application, as applicable.

10. Bankruptcy Code section 327(a) permits a debtor in possession, with court approval, to employ professionals that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the debtor in carrying out the debtor's duties. 11 U.S.C. § 327(a). Bankruptcy Code section 101(14) defines a "disinterested person" as a person that: (a) is not a creditor, an equity security holder, or an insider; (b) is not and was not,

within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

11. Bankruptcy Code section 328(a) authorizes employment of a professional person on any reasonable terms and conditions of employment, including on a retainer, an hourly basis, a fixed or percentage fee basis, or a contingent fee basis. 11 U.S.C. § 328(a).

12. The Debtor requires a real-estate consultant to advise the Debtor and its counsel concerning acquisition, financing, due diligence, transaction structuring, strategy, management, collection, disposition, improvement, and other value-realization matters relating to the Kulick Portfolio; to identify and introduce third-party service providers; and to be available to prepare for and provide declarations, deposition testimony, hearing testimony, and trial testimony on behalf of the Debtor.

13. The anticipated scope of services is set forth in the Consulting Agreement and includes:

a. Consulting and advisory services related to acquisition, financing, due diligence support, transaction structuring, strategy, management, collection, disposition, improvement, and other value-realization matters concerning the Kulick Portfolio.

b. Identifying third parties that may assist the Debtor, introducing such parties to the Debtor or its counsel, and assisting the Debtor in evaluating commercial terms, without authority to bind the Debtor.

c. Operational and process recommendations related to the foregoing.

d. Preparing for and providing declarations, affidavits, deposition testimony, hearing testimony, and trial testimony on behalf of the Debtor, and assisting counsel with related exhibits, reports, and demonstratives. Consultant shall not appear as counsel.

e. Written reporting upon request, not more frequently than monthly.

f. Such other advisory services as the Debtor or its counsel reasonably requests in connection with the Kulick Portfolio, consistent with the Employment Order and any required license.

14. Consultant shall take direction from the Debtor, as debtor in possession, and from the Debtor's bankruptcy counsel with respect to property of the estate. If a direction from Interchange conflicts with a direction from the Debtor or its counsel, or with an order of this Court, the Court's order and the Debtor's lawful instructions control.

15. The Debtor discloses Consultant's separate engagement by Interchange. The Debtor submits that employment remains appropriate because: (a) the estate fee is a modest, fixed monthly amount with no estate contingency and no estate expense reimbursement; (b) Interchange, not the estate, is obligated on the contingent fee and on Consultant's out-of-pocket expenses; (c) Consultant's estate work will be directed by the Debtor and its counsel; (d) Consultant will not bind the Debtor or control estate assets; and (e) the relationship is fully disclosed in the Declaration pursuant to Bankruptcy Rule 2014. The Debtor does not ask the Court to ignore the Interchange relationship. The Debtor asks the Court to approve a limited estate engagement after that disclosure.

16. To the best of the Debtor's knowledge after inquiry, except as disclosed in the Declaration and this Application, Consultant does not hold or represent an interest adverse to the

estate with respect to the matters on which Consultant is to be employed. Whether Consultant is a "disinterested person" under section 101(14) in light of the Interchange relationship is a matter for the Court after disclosure. The Consulting Agreement does not warrant a disinterestedness finding.

17. Subject to this Court's approval, the Consulting Agreement provides that the Debtor shall pay Consultant a fixed fee of Five Thousand Dollars ($5,000) per month (the "Monthly Fee"). The Monthly Fee is the sole compensation payable by the Debtor or the estate. There is no estate-level contingency, success fee, commission, or percentage of sale or recovery. The Debtor and the estate shall not reimburse Consultant's out-of-pocket expenses. Those costs are Interchange's obligation under the Interchange Agreement.

18. The Debtor requests that the Court approve the Monthly Fee as reasonable terms of employment under section 328(a). If the Court instead requires review under section 330, Consultant shall file fee applications as the Court directs, and the Debtor shall pay only the amounts allowed.

19. After entry of an employment order, the Debtor may pay the Monthly Fee in accordance with that order. If the order requires fee applications before payment, Consultant shall file them in the form and on the schedule required by the Court or the Local Rules. No retainer is requested.

20. Consultant shall not seek from the Debtor or the estate any compensation other than the Monthly Fee, including any administrative claim, substantial-contribution claim, surcharge, contingent fee, or payment of amounts due under the Interchange Agreement.

21. The Interchange Agreement is intended to reduce Interchange-side contingent fees dollar-for-dollar by estate compensation paid for the same work, so that Consultant is not paid twice by the two engagements for the same services. Consultant will disclose to Debtor's counsel,

contemporaneously with any fee statement, whether Consultant invoiced or received amounts from Interchange for the same period.

22. Consultant has no agreement with any other entity to share compensation received from the estate, except as disclosed. No promises have been made to Consultant as to compensation from the estate other than as set forth in the Consulting Agreement and this Application.

23. The Debtor submits that the terms described herein are reasonable and in the best interests of the Debtor, its estate, creditors, and parties in interest.

**CONCLUSION**

WHEREFORE, for the reasons stated herein, the Debtor respectfully requests that this Court enter an order authorizing the employment of PJD Consult LLC as real estate consultant on the terms set forth in the Consulting Agreement.

Respectfully submitted,

*/s/ Jason A. Sansone*
Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
Nicholas J. Candido, OBA No. 36069
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 – facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
njcandido@phillipsmurrah.com
**Proposed Attorneys**
**for YSA Investments 1, LLC**

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>YSA INVESTMENTS 1, LLC,<br><br>Debtor. | Case No. 26-12806-SAH<br>Chapter 11 |

**DECLARATION OF PARKER DETWEILER**
**IN SUPPORT OF DEBTOR'S APPLICATION TO EMPLOY**
**PJD CONSULT LLC AS REAL ESTATE CONSULTANT**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, I, PARKER DETWEILER, declare that the following is true to the best of my knowledge, information, and belief:

1. I am Parker Detweiler of PJD Consult LLC ("Consultant" or "PJD"), a Florida limited liability company. As PJD's member, I am authorized to execute this declaration on behalf of Consultant.

2. The facts set forth in this declaration are based upon my personal knowledge, discussions with persons acting under my supervision, and Consultant's business records reviewed by me or at my direction. To the extent any information disclosed in this declaration requires amendment or modification upon further review or as additional information becomes available, a supplemental declaration will be submitted to the Court.

3. The Debtor has contacted Consultant regarding serving as a real estate consultant in connection with the Kulick Portfolio. "Kulick Portfolio" means all actual or contemplated transactions, claims, collateral, properties, equity interests, notes, deeds in lieu, proceeds, and related or ancillary rights arising out of dealings among Interchange and/or YSA, on the one hand, and Marc Kulick and any entity he directly or indirectly owns or owned, controls or controlled, or manages (including Vesta-related entities), on the other hand. That includes, without limitation, matters relating to the loan agreements

between Kulick (or his entities) and YSA dated February 18, 2025, April 9, 2025, July 15, 2025, and July 31, 2025.

4. Consultant is a Florida limited liability company that provides real-estate consulting and advisory services. Consultant is prepared to advise the Debtor and to provide testimony, declarations, and other evidence on behalf of the Debtor as requested.

5. The anticipated scope of services is set forth in the Consulting Agreement attached to the Application as **Exhibit 2**, and includes advisory services, source identification, operational recommendations, reporting, and testimony and evidence on behalf of the Debtor, as more particularly described in the Application and the Consulting Agreement. Consultant shall not bind the Debtor.

6. The Consulting Agreement provides that, subject to Court approval, the Debtor shall pay Consultant a fixed fee of Five Thousand Dollars ($5,000) per month. That monthly fee is the sole compensation payable by the Debtor or the Debtor's estate. There is no contingency, success fee, commission, or percentage of sale or recovery owed to Consultant by the Debtor or the estate. The Debtor and the estate shall not reimburse Consultant's out-of-pocket expenses.

7. In October 2025, Interchange Claims Group, LLC ("Interchange"), whom I understand is the sole member of the Debtor, and PJD entered into a separate verbal consulting agreement (the "Interchange Agreement"). Under the Interchange Agreement, Consultant provides related advisory services to Interchange, as sole member, for a contingent fee payable solely by Interchange from amounts actually received by Interchange, after a $2,500,000 hurdle, at 5%, 10%, or 15% of Interchange's defined Net Recovery, as set forth in the Interchange Agreement. Interchange, not the Debtor or the Debtor's estate, is obligated to reimburse Consultant's out-of-pocket expenses. The Interchange Agreement is not an obligation of the Debtor or the estate. Consultant will not seek payment from the estate of any amount due under the Interchange Agreement.

8. I will disclose to Debtor's counsel and the Office of the United States Trustee, contemporaneously with any fee statement, whether Consultant invoiced or received amounts from Interchange for the same period.

9. Consultant has not received any compensation from the estate prepetition or post-petition. Consultant does not hold a prepetition claim against the Debtor.

10. If employed, Consultant intends to seek compensation from the estate only in the amount of the approved monthly fee, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the employment order.

11. Except as specifically set forth herein, neither I nor Consultant, to the best of my knowledge after reasonable inquiry, represent any other entity in connection with the Debtor's Chapter 11 case. Prior to the Debtor's bankruptcy filing, I and Consultant have had prior business dealings with the Divoroli family that were unrelated to the Debtor. No money is owed to me with respect to those prior business transactions. Except as specifically set forth herein, including the Interchange Agreement and Interchange's status as sole member of the Debtor, neither I nor Consultant is an insider of the Debtor, and neither I nor Consultant has any connection with the Debtor, its affiliated entities, its creditors, other parties in interest, or their respective attorneys and accountants, except as otherwise disclosed herein.

12. Neither I nor Consultant, insofar as I have been able to ascertain after reasonable inquiry, hold or represent an interest adverse to the estate with respect to the matters upon which Consultant is to be engaged.

13. I represent that Consultant is a "disinterested person" within the meaning of Bankruptcy Code section 101(14) without regard to the Interchange relationship. Interchange is the sole member of the Debtor and is a client of Consultant under the Interchange Agreement. That connection is disclosed so that the Court, the United States Trustee, and parties in interest may evaluate employment under section 327. Consultant will take direction from the Debtor on estate matters, and will not use the Debtor's

privileged information for Interchange except as Debtor's counsel authorizes or as required by law or Court order.

14. No promises have been received by Consultant as to compensation or payment from the estate other than in accordance with the Consulting Agreement and the provisions of the Bankruptcy Code. Consultant has no agreement with any other entity to share with such entity any compensation received by Consultant from the estate in connection with the Debtor's Chapter 11 case.

15. I will promptly file a supplemental declaration if additional connections or information become known.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on August 31, 2026

Parker Detweiler

Name: Parker Detweiler

Title: Member

PJD Consult LLC

# EXHIBIT 2

# CONSULTING AGREEMENT

*(Estate Professional Engagement — Subject to Court Approval)*

This CONSULTING AGREEMENT (this "**Agreement**") is made and entered into as of the date of the last signature below, by and between **YSA INVESTMENTS 1, LLC**, a Delaware limited liability company and debtor and debtor in possession in the YSA Bankruptcy Case described below ("**YSA**" or the "**Debtor**"), and **PJD CONSULT LLC**, a Florida limited liability company ("**Consultant**"). YSA and Consultant are referred to individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

**WHEREAS,** YSA filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which case is pending in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court") *as In re YSA Investments 1, LLC*, Case No. 5:26-bk-12806 (the "YSA Bankruptcy Case");

**WHEREAS,** YSA continues in possession of its property and in the management of its affairs as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS,** YSA has an interest in, and is engaged in efforts concerning, certain multifamily and related real-estate assets commonly known as the Kulick Portfolio (also referred to as the Kulik Portfolio), including the properties and interests listed in Section 3 and related claims, proceeds, and ancillary rights (collectively, the "Kulick Portfolio");

**WHEREAS,** YSA requires a real-estate consultant to advise YSA and its counsel, to assist with operational and transactional matters concerning the Kulick Portfolio, and to be available to provide testimony, declarations, and other evidence on behalf of YSA in the YSA Bankruptcy Case and related proceedings;

**WHEREAS,** Interchange Claims Group, LLC, a Wyoming limited liability company ("Interchange"), is the sole member of YSA and has entered into a separate agreement with Consultant (the "Interchange Agreement") under which Consultant provides related advisory services to Interchange, as sole member, for a contingent fee payable solely by Interchange from non-estate sources;

**WHEREAS,** The Parties intend that Consultant be also employed by YSA as a professional person under section 327 of the Bankruptcy Code, on the terms set forth herein, subject to approval of the Bankruptcy Court, and that compensation payable by the estate be limited to the fixed monthly fee described in Section 4; and

**WHEREAS,** Consultant is willing to provide the Services on the terms of this Agreement, and YSA is willing to seek Bankruptcy Court authority to employ and compensate Consultant on those terms.

**NOW, THEREFORE,** in consideration of the foregoing recitals (which are incorporated herein) and the mutual covenants set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. **Bankruptcy Court Approval as a Condition Precedent.** This Agreement is executed in anticipation of YSA's application to the Bankruptcy Court for authority to employ Consultant pursuant to section 327 of the Bankruptcy Code and Bankruptcy Rule 2014, and to compensate Consultant pursuant to sections 328 and/or 330 of the Bankruptcy Code and Bankruptcy Rules 2016 and 2002, on the terms set forth herein (the "**Employment Application**"). YSA shall have no obligation to pay Fees, and Consultant shall have no obligation to provide post-petition Services as an estate professional, unless and until the Bankruptcy Court enters an order reasonably acceptable to the Parties authorizing Consultant's employment and compensation on terms consistent with this Agreement (the **"Employment Order**"). Upon entry of the Employment Order, this Agreement shall be effective as of the date specified in that order (the "**Effective Date**"). If the Bankruptcy Court approves employment on terms that differ from this Agreement, those approved terms control. If the Employment Application is denied, this Agreement terminates automatically, without liability of the estate except as the Bankruptcy Court may otherwise order for services of benefit to the estate, and the Interchange Agreement (if then in effect) remains a separate contract solely between Interchange and Consultant.

2. **Independent Contractor; Estate Employment.** Consultant is an independent contractor and not an employee, partner, or joint venturer of YSA. Consultant is not authorized to manage YSA's affairs, to act in YSA's name, or to bind YSA, except to the limited extent YSA or its counsel expressly authorizes a particular task via email. Notwithstanding the independent-contractor relationship for tax and employment-law purposes, Consultant is to be employed as a professional person of the Debtor under section 327 of the Bankruptcy Code upon entry of the Employment Order.

3. **Services.** Subject to the Employment Order and the direction of YSA and YSA's bankruptcy counsel, Consultant shall provide the following consulting and advisory.

**(a) Advisory services.** Consulting and advisory services related to acquisition process, due diligence support, transaction structuring, strategy, and related operational or business matters concerning the "**Kulick Portfolio**." "Kulick Portfolio" means all actual or contemplated transactions, claims, collateral, properties, equity interests, notes, deeds in lieu, proceeds, and related or ancillary rights arising out of dealings among Interchange and/or YSA, on the one hand, and Marc Kulick and any entity he directly or indirectly owns or owned, controls or controlled, or manages (including Vesta-related entities), on the other hand. That includes, *without limitation*, matters relating to the loan agreements between Kulick (or his entities) and YSA dated February 18, 2025, April 9, 2025, July 15, 2025, and July 31, 2025.

**(b) Source identification.** Identifying third parties that may assist YSA (including brokers, advisors, financing sources, collection firms, and other service providers), introducing such parties to YSA or its counsel, and using commercially reasonable efforts to assist YSA in evaluating commercial terms. Consultant shall not bind YSA to any third-party engagement.

**(c) Operational recommendations.** Recommending operational or process improvements related to the foregoing.

**(d) Testimony and evidence.** Upon request of YSA or its counsel, preparing for and providing declarations, affidavits, deposition testimony, hearing testimony, and trial testimony on behalf of

YSA in the YSA Bankruptcy Case and in related or ancillary proceedings, and assisting counsel in the preparation of related exhibits, reports, and demonstratives. Consultant shall coordinate testimony with YSA's counsel and shall not appear as counsel. Consultant is engaged as a testifying consultant and advisor, not as an attorney.

**(e) Reporting.** Services shall be rendered at mutually agreeable times and places, including remotely. Not more frequently than monthly, Consultant shall provide a written summary of Services rendered promptly following YSA's or counsel's written request.

**(f) Additional advisory work.** Such other advisory services as YSA or its counsel reasonably requests in connection with the Kulick Portfolio, provided the work is consistent with the Employment Order and does not require a license Consultant does not hold.

**(g)** Consultant shall not practice law, act as broker of record, or perform any other regulated activity unless Consultant holds the required license and YSA has authorized that activity in writing. All decisions to bind YSA remain with YSA in its sole discretion, subject to any required Bankruptcy Court approval.

**(h)** In performing Services relating to property of the estate, Consultant shall take direction from YSA (as debtor in possession) and YSA's bankruptcy counsel. If a direction from Interchange conflicts with a direction from YSA or its counsel, or with an order of the Bankruptcy Court, the Bankruptcy Court order and YSA's lawful instructions control. Consultant shall promptly notify YSA's counsel of any such conflict.

**4. Compensation from the Estate.** In exchange for the Services, and subject to the Employment Order and applicable provisions of the Bankruptcy Code, YSA shall compensate Consultant as follows (the "**Fees**").

**(a) Monthly fee.** YSA shall pay Consultant a fixed fee of Five Thousand Dollars ($5,000) per month (the "**Monthly Fee**"). The Monthly Fee is payable for each calendar month (or portion thereof, without proration unless the Employment Order provides otherwise) during which this Agreement is in effect after the Effective Date. The Monthly Fee is the sole compensation payable by YSA or the estate for the Services. There is no estate-level contingency, success fee, commission, or percentage of sale or recovery payable under this Agreement.

**(b) Requested approval under section 328.** The Parties request that the Bankruptcy Court approve the Monthly Fee as reasonable terms of employment under section 328(a) of the Bankruptcy Code. If the Court instead requires review under section 330, Consultant shall file fee applications as the Court directs, and YSA shall pay only the amounts allowed. Nothing in this Agreement limits the Court's authority under section 328(a) to allow different compensation if the approved terms later prove improvident in light of developments not capable of being anticipated at the time of approval.

**(c) Payment mechanics.** After entry of the Employment Order, YSA may pay the Monthly Fee in accordance with that order. If the Employment Order requires fee applications before payment,

Consultant shall file them in the form and on the schedule the Court or local rules require. No retainer is required under this Agreement.

**(d) No other estate payment.** Consultant shall not seek from YSA or the estate any compensation other than the Monthly Fee, including any administrative claim, substantial-contribution claim, surcharge, or contingent fee. YSA and the estate shall not reimburse Consultant's out-of-pocket expenses. Those costs are Interchange's obligation under the Interchange Agreement. Consultant shall not seek payment or reimbursement from YSA for any cost that Interchange has paid or is obligated to pay, or that Consultant has submitted or will submit to Interchange.

**(e) Coordination with the Interchange Agreement; no double payment.** The Interchange Agreement remains a separate contract solely between Interchange and Consultant. Amounts payable under the Interchange Agreement are not obligations of YSA or the estate. The Parties acknowledge that the Interchange Agreement is intended to reduce Interchange-side contingent fees dollar-for-dollar by estate compensation paid for the same work. Consultant shall disclose to YSA's counsel, contemporaneously with any fee statement, whether Consultant invoiced or received amounts from Interchange for the same period.

**5. Term and Termination**. The term of this Agreement (the "**Term**") begins on the Effective Date and continues until the earliest of (a) completion of the Services, (b) dismissal of the YSA Bankruptcy Case or conversion to a case under chapter 7, (c) the effective date of a confirmed chapter 11 plan, unless YSA and Consultant agree in writing, with any required Court approval, to continue the engagement, or (d) termination under this Section 5.

**(a) Termination by YSA.** YSA may terminate this Agreement at any time, with or without cause, upon written notice to Consultant, subject to any notice required by the Employment Order. The estate shall pay the Monthly Fee earned through the effective date of termination, as allowed by the Bankruptcy Court.

**(b) Termination by Consultant.** Consultant may terminate this Agreement upon fifteen (15) days' written notice if YSA materially breaches this Agreement, including failure to pay allowed Fees when due after entry of the Employment Order, and fails to cure within that period, or immediately if the Bankruptcy Court enters an order prohibiting performance.

**(c) Effect.** Upon termination, Consultant shall reasonably cooperate in an orderly transition, including return of YSA property and files as YSA's counsel directs, and shall remain available for a reasonable period, at the Monthly Fee prorated on a 30-day basis or such other rate as the Court allows, to complete testimony already noticed if YSA so requests.

**6. Direction, Conflicts, and Disinterestedness Disclosure.** Consultant acknowledges that Interchange is the sole member of YSA and that Consultant has a separate contractual relationship with Interchange. Consultant shall, contemporaneously with the Employment Application, execute a verified statement pursuant to Bankruptcy Rule 2014 disclosing all known connections with YSA, Interchange, creditors, any official committee, the United States Trustee, and other parties in interest, including the

Interchange Agreement and the contingent-fee arrangement. Consultant shall promptly supplement that statement if additional connections become known.

Consultant represents that, except for the Interchange relationship disclosed herein and in the Rule 2014 statement, Consultant does not hold or represent an interest adverse to the estate with respect to the matters on which Consultant is to be employed. Consultant shall immediately notify YSA's counsel in writing if an actual conflict arises between Interchange's interests and the estate's interests on a matter within the scope of the Services. In that event, Consultant shall follow YSA's and counsel's instructions with respect to estate property and testimony on behalf of YSA, and shall not disclose YSA's privileged information to Interchange except as YSA's counsel authorizes or as required by law or Court order.

The Parties acknowledge that the Interchange relationship may be scrutinized in connection with the Employment Application. Consultant shall not, by this Agreement, warrant that the Bankruptcy Court will find Consultant disinterested under section 101(14) of the Bankruptcy Code. Approval is in the Court's discretion after disclosure.

**7. Confidentiality; Testimony.** Consultant shall keep confidential all non-public information concerning YSA, the estate, the Kulick Portfolio, and the YSA Bankruptcy Case that Consultant obtains in performing the Services ("**Estate Confidential Information**"), and shall use it only to perform the Services or as YSA's counsel directs. Estate Confidential Information does not include information that is or becomes public other than through Consultant's fault, that Consultant lawfully possessed before this engagement from a source other than YSA, or that Consultant independently develops without use of Estate Confidential Information.

Consultant may disclose Estate Confidential Information (a) to YSA's counsel and other estate professionals, (b) as required by the Employment Order, a Rule 2014 or 2016 disclosure, or other Court order, (c) in testimony or a declaration given on behalf of YSA at counsel's direction, and (d) as otherwise required by law, after prompt notice to YSA's counsel to the extent legally permitted. This Section does not prevent Consultant from performing the Interchange Agreement, provided Consultant does not use Estate Confidential Information or YSA privileged information for Interchange except as YSA's counsel authorizes.

**8. Work Product.** Subject to the rights of the estate and applicable privilege, work product Consultant creates for YSA in performing the Services ("**Estate Work Product**") is the property of YSA. Consultant assigns to YSA all right, title, and interest in Estate Work Product. Materials created solely for Interchange under the Interchange Agreement are not Estate Work Product. If a document serves both engagements, Consultant shall identify it to YSA's counsel so counsel can determine privilege, use, and production.

**9. Representations of Consultant.** Consultant represents and warrants that:

**(a)** Consultant is a Florida limited liability company duly organized, validly existing, and in good standing, with authority to execute and perform this Agreement;

**(b)** this Agreement is a valid and binding obligation of Consultant, subject to entry of the Employment Order and to applicable bankruptcy law;

**(c)** execution and performance do not conflict with Consultant's governing documents or any other agreement binding Consultant, except that performance is subject to the Interchange Agreement as disclosed herein;

**(d)** Consultant will perform the Services in compliance with applicable law and will not perform regulated activity for which Consultant lacks a required license;

**(e)** Consultant is not, as of the date of this Agreement, employed as a professional of the YSA estate except pursuant to this Agreement and the Employment Order; and

**(f)** the disclosures to be set forth in Consultant's Rule 2014 verified statement will be true and complete in all material respects to Consultant's knowledge after reasonable inquiry.

**10. Assignment.** Consultant may not assign this Agreement without YSA's prior written consent and any required Bankruptcy Court approval, except to an affiliate that assumes Consultant's obligations in writing and is disclosed in a supplemental Rule 2014 statement. YSA may assign this Agreement to a trustee, plan administrator, or successor authorized by the Bankruptcy Court that assumes YSA's obligations. An assignment in violation of this Section is void.

**11. Governing Law; Jurisdiction.** This Agreement shall be governed by the Bankruptcy Code and, to the extent not inconsistent, the laws of the State of Delaware, without regard to conflicts principles. During the YSA Bankruptcy Case, the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of this Agreement, the Employment Order, or Consultant's employment or compensation, and each Party consents to that forum. The Parties waive any right to arbitration of disputes under this Agreement. After closing of the YSA Bankruptcy Case, disputes may be brought in a state or federal court of competent jurisdiction in Oklahoma or Delaware.

**12. Notices.** Notices under this Agreement shall be delivered by email to the addresses on the signature page, with a copy to YSA's bankruptcy counsel as designated in writing, and if required by law to be sent by physical mail, by certified or registered mail, return receipt requested. A Party may change its notice details by written notice; the change is effective three (3) days after receipt.

**13. Severability.** If any provision is held invalid, the remaining provisions shall continue in effect.

**14. Amendment.** This Agreement may be amended only by a writing signed by both Parties. Any amendment that changes Consultant's compensation or the scope of estate employment is effective only if consistent with the Employment Order or a further order of the Bankruptcy Court.

**15. Waiver.** No waiver of a breach is a waiver of any other breach. A waiver must be in writing and signed by the waiving Party.

**16. Entire agreement as to YSA.** This Agreement is the entire agreement between YSA and Consultant concerning the Services and supersedes all prior negotiations between YSA and Consultant concerning estate employment. It does not amend or supersede the Interchange Agreement, which remains solely between Interchange and Consultant.

**17. Construction.** Headings are for convenience only. This Agreement shall be construed as jointly drafted, without presumption against either Party.

**18. Counterparts; electronic signatures.** This Agreement may be executed in counterparts, including by electronic signature, each of which is deemed an original, with the same effect as manual signatures under the federal ESIGN Act and applicable Uniform Electronic Transactions Act provisions.

**19. No third-party beneficiaries.** Except for the Bankruptcy Court, the United States Trustee, and any official committee to the extent of disclosure and compensation-review rights under the Bankruptcy Code, this Agreement creates no third-party beneficiary rights. Interchange is not a third-party beneficiary of this Agreement and has no right to direct the Services.

**20. Survival.** Sections 4(d), 4(e), 6, 7, 8, 10, 12, and 13 survive termination or expiration.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date of the last signature below, subject to entry of the Employment Order.

**YSA:**
**YSA INVESTMENTS 1, LLC**
a Delaware limited liability company
Debtor and Debtor in Possession

By: [signature]
Title: Manager
Address: 8 The Green, Suite A
Dover, Delaware 19901
Email: ad@investdig.com
Date: 08/31/2026

**CONSULTANT:**
**PJD CONSULT LLC**
a Florida limited liability company

By: Parker Detweiler
Title: Manager
Address: 200 SE 15th Rd Apt 11i Miami FL 33129
Email: ParkerDetweiler@gmail.com
Date: 8/31/2026