**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>YSA INVESTMENTS 1, LLC.,<br>Debtor. | Case No. 26-12806-SAH<br>Chapter 11 |

**OBJECTION OF UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR ENTRY OF ORDER RATIFYING THE APPOINTMENT OF INDEPENDENT MANAGER AND AUTHORIZING THE PAYMENT OF FEES**

The United States Trustee, Ilene J. Lashinsky ("**UST**") objects to Debtor's motion seeking to ratify the appointment of STG, LLC, as "co-manager and Independent Manager of the Debtor [Doc. 192] (the "**Independent Manager Motion**").

## I. Introductory remarks.

Debtor filed this case on July 28, 2026. Eight days later, Aharon Diveroli, as Manager of the Debtor, hired STG, LLC ("**STG**") to act as "Independent Manager" for all of Debtor's "Major Decisions." Debtor fails to say why Mr. Diveroli cannot either be trusted or be burdened with making Debtor's Major Decisions. As STG will not be a part of Debtor's day-to-day management, its monthly $10,000.00 fee is unreasonable for the limited scope of its services.

## II. Background facts.

1. On July 28, 2026 (the "**Petition Date**"), Debtor filed a "bare-bone" Chapter 11 voluntary petition with the United States Bankruptcy Court for the District of Delaware.

2. Prior to the Petition Date, STG had no relationship or affiliation with the Debtor or with any officer, director, affiliate, or insider of the Debtor. [Doc. 192, p. 3, ¶ 9.]

3. Eight days post-petition, Debtor entered into the "Independent Manager Agreement" it wishes the Court to "ratify" (the "**IMA**") [Doc. 192, pps. 9 – 14.]

4. Effectiveness of the IMA is expressly conditioned upon bankruptcy court approval. [Doc. 192, p. 2, ¶ 7; p. 6, sixth unenumerated paragraph; p. 6, seventh unenumerated paragraph.]

5. Debtor's bankruptcy is the "but for" of STG's proposed involvement; thus, the UST believes STG is a bankruptcy professional whose employment must be approved by the Court.

6. Typically, a debtor requesting to hire a post-petition agent to help with management gives that agent a ceiling under which his spending and authority must stay; he is prohibited from executing transactions above the ceiling amount.

7. Here Debtor proposes the opposite. STG is given a floor beneath which it may not interfere, but no ceiling is placed on its spending abilities, and it appears Debtor could not stop STG from executing any transaction above its proposed $100,000.00 threshold to act.

## III. Debtor fails to adequately justify why it needs STG's involvement.

8. Debtor argues that the Court must not deny the Independent Manager Motion if a good business reason exists for the retention of STG.

9. Debtor says that employing STG as Independent Manager of all Major Decisions "will improve oversight of the Debor and the administration of this Chapter 11 case, while assuring appropriate safeguards for this case's stakeholders." [Doc. 192, p. 4.]

10. Although the above justification sounds good at a surface level, it (i) begs several questions, and (ii) represents a conclusory assertion without the mooring of a factual foundation.

### A. Debtor failed to provide one concrete fact explaining why Debtor needs a quasi-Chapter 11 Trustee for its Major Decisions.

11. STG is to be given sole authority over all Major Decisions, a term defined as:

> … any decision of the Company to: (i) make any expenditure or payment, or any series of related expenditures or payments, in excess of $100,000; (ii) sell, transfer or otherwise dispose of any asset of the Company outside of the ordinary course of business, regardless of amount; (iii) borrow money or otherwise incur any indebtedness, or guarantee any indebtedness or grant any lien or security interest securing any indebtedness, in an amount of $100,000 or more, including any debtor-in possession financing or loan; or (iv) take any other action that the LLC Agreement or an order of the Bankruptcy Court expressly conditions upon the approval of the Independent Manager.

12. But why? The motion seeks to divest Manager Aharon Diveroli from any Major Decision to "improve oversight" and "assur[e] appropriate safeguards" are available to protect stakeholders from Mr. Diveroli during Debtor's Chapter 11 case.

13. If the presence (and added cost) of a third party is required to ensure proper oversight and safeguards are present, a Chapter 11 Trustee is the appropriate party to fulfill that role.

### B. Debtor does not state why it must add an additional administrative expense to improve oversight and ensure appropriate safeguards.

14. The Motion does not explain why STG should receive $10,000.00 each month.

15. While courts do regularly defer to a debtor's business judgment on business matters, that judgment must be reasonably based on actual existing circumstances.

16. The Motion does not explain with any concrete facts *why* Mr. Diveroli is unable to ensure oversight and safeguards without STG.

## IV. Limiting STG' role to Major Decisions does not protect the estate.

17. STG would have sole discretion of all financial decisions in excess of $100,000.00, but zero input on day-to-day management or any financial decision below that amount:

> AND BE IT FURTHER RESOLVED, that the authority of the Independent Manager shall consist of and be limited to the consideration and approval of the Major Decisions, and the Independent Manager shall have no authority over, and shall not be required to approve, the day to-day operations of the Company, which shall continue to be managed and conducted by the Manager and the officers,

> Authorized Persons and other authorized representatives of the Company without the need for the approval of the Independent Manager; and…
>
> [Doc. 192, p. 7.]

18. Debtor tries to paint a picture of STG as being in control of all important matters, but that image is illusory.

19. A thousand poor decisions and misguided transactions costing $99,999.99 or less could be made that crater Debtor's ability to reorganize; STG would not have input on these.

20. Further, the cumulative effect of poor but smaller financial decisions could place STG in an impossible position of having only bad choices among Major Decisions, again, not of STG's doing.

21. If Mr. Diveroli cannot be trusted with Major Decisions, he cannot be trusted with minor decisions.

## V. Paying STG a monthly $10,000.00 non-refundable fee plus expenses is not in the estate's best interests.

22. Again, STG would have sole discretion of financial decisions above $100,000.00, but zero input on day-to-day management or any financial decisions below that amount.

23. The UST questions what true involvement STG will truly have in this case outside of plan discussions.

24. It is doubtful that STG's services and input will come close to meeting or exceeding the total amount it is to receive during this case.

25. Moreover, Debtor is already financing this case with a proposed post-petition loan. It cannot afford STG, especially considering STG's limited role.

## VI. The UST questions whether STG's actions to date have any effect.

26. As stated above, Debtor expressly conditioned STG's authority to act upon bankruptcy court approval of its employment. [Doc. 192, p. 2, ¶ 7; p. 6, sixth unenumerated paragraph; p. 6, seventh unenumerated paragraph.]

27. Despite that condition, Debtor has relied on STG's Declaration to support its request for post-petition financing and its request to use cash collateral. [Doc. 56-2.]

28. Debtor did not seek Court approval of the IMA until August 21, 2026, 16 days after the IMA was signed and 11 days after Debtor relied on STG to support its post-petition financing needs.

29. With the question of STG's authority not even set for hearing yet, the UST believes its actions in the case are a nullity.

## VII. Conclusion.

30. Debtor has not articulated facts showing that retention of STG is a reasonable business decision, or that STG's proposed monthly $10,000.00 non-refundable fee is reasonable.

31. If Mr. Diveroli cannot be trusted to adequately oversee the Debtor or to safeguard stakeholders' rights, he should be replaced by a Chapter 11 Trustee.

32. The Court should deny the Independent Manager Motion.

Respectfully submitted,

ILENE J. LASHINSKY
UNITED STATES TRUSTEE

s/ Jeffrey E. Tate
Marjorie J. Creasey, OBA #17819
Jeffrey E. Tate, OBA #17150

OFFICE OF THE UNITED STATES TRUSTEE
215 Dean A. McGee, Fourth Floor
Oklahoma City, OK 73102
(202) 603-5228 | (405) 231-5958 [fax]
Marjorie.Creasey@usdoj.gov
Jeff.Tate@usdoj.gov