**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>YSA Investments 1, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-12806 |

**MOTION OF SILVER HILL CAPITAL, LLC FOR RELIEF FROM THE AUTOMATIC STAY COMBINED WITH NOTICE OF OPPORTUNITY FOR HEARING AND BRIEF IN SUPPORT**

**NOTICE OF OPPORTUNITY FOR HEARING**

**Your rights may be affected. You should read this Document carefully and consult your attorney about your rights and the effect of this Document.** If you do not want the Court to grant the motion, or you wish to have your views considered, you must file a written response to the motion with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than 14 days from the date of filing of the motion. You should also serve a file stamped copy of the response to the undersigned [and others who are required to be served] and file a certificate or affidavit of service with the Court.

**[Note – this is a flat fourteen (14) days regardless of the manner of service.]**

Silver Hill Capital, LLC ("**Silver Hill**"), through counsel, files this motion for relief from the automatic stay (this "**Motion**") pursuant to sections 105 and 362(d)(1), and (2) of the Bankruptcy Code to proceed with its pending judicial foreclosure action over certain properties in which the above captioned debtor, YSA Investments 1, LLC ("**YSA**"), claims an interest. In support, Silver Hill states as follows:

**PRELIMINARY STATEMENT**

1. Silver Hill is the holder and assignee of certain loan agreements, notes, first-priority mortgages, and other related documents and agreements (collectively, the "**Loan Documents**")

over four multifamily apartment complexes in Oklahoma County, Oklahoma, including: (a) Bryan Hill Apartments, (b) Summer Oaks Apartments, (c) Springdale Village Apartments, and (d) Tuscany Village Apartments (the "**Silver Hill Properties**"). Silver Hill is caught in the middle of a bitter dispute between two purported owners of the Silver Hill Properties: Marc Kulick and YSA. On information and belief, Mr. Kulick controls and manages a portfolio of over 30 multifamily real estate properties in the states of Oklahoma, Arkansas, and Kansas (the "**Vesta Portfolio**") through his management company Vesta Realty, LLC ("**Vesta Realty**"). On information and belief, YSA is a lending entity owned and controlled by Efraim Diveroli that made certain high interest loans to one of Mr. Kulick's personal investment vehicles, Asset Holder, LLC, with another of Mr. Kulick's personal investment vehicles, Vesta Holdings LLC, serving as pledgor. As a result of these loans, YSA purported to record second liens on properties in the Vesta Portfolio, including the Silver Hill Properties, and then purported to transfer at least certain of these properties to itself via special warranty deeds in lieu of foreclosure through an alleged power of attorney from Mr. Kulick.

2. Silver Hill files this Motion in order to enforce its rights under the Loan Documents and proceed with its pending judicial foreclosure action for the Silver Hill Properties. The borrowers are in default under the Loan Documents, and the Silver Hill Properties are in deteriorating condition. There is no equity in the Silver Hill Properties to administer for the benefit of unsecured creditors. Thus, regardless of any ownership dispute between Mr. Kulick and YSA, the Court should lift the automatic stay to allow Silver Hill to proceed with the foreclosure proceedings.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory bases for the relief requested herein 11 U.S.C. §§ 105 and 362(d) and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

6. Silver Hill consents to the entry by the bankruptcy court of final orders and judgment regarding the matters that are the subject of this Motion.

## BACKGROUND

### I. THE LOAN DOCUMENTS[1]

#### A. Bryan Hill

7. On or about August 4, 2022, Bryan Hill TIC 1, LLC, Bryan Hill TIC 2, LLC, Bryan Hill TIC 3, LLC and Bryan Hill's Best Living LLC, as Borrower (the "**Original Bryan Hill Borrower**") executed and delivered that certain Loan Agreement (the "**Bryan Hill Loan Agreement**") and Promissory Note (the "**Bryan Hill Note**") to Oceanview Life and Annuity Company (the "**Original Lender**"), evidencing a loan in the original principal amount of up to $12,697,000.00 (the "**Bryan Hill Loan**").

8. Also on or about August 4, 2022, the Original Bryan Hill Borrower executed and delivered that certain Mortgage, Assignment of Leases and Rents and Security Agreement (the "**Bryan Hill Mortgage**") to the Original Lender to secure payment of the Bryan Hill Loan, which mortgage was recorded August 5, 2022, in Book 15234, Page 1243 in the Office of the County Clerk of Oklahoma County, Oklahoma, and which mortgaged the property described therein (the "**Bryan Hill Property**").

---

[1] Silver Hill will file copies of the Loan Documents with this Court.

9. Each of the documents and agreements set forth above, as well as each and every document and agreement executed by the Original Bryan Hill Borrower and the Original Lender in connection with the documents set forth above, including but not limited to, any and all uniform commercial code financing statements filed by or on behalf of the Original Lender or Silver Hill, shall be collectively referred to herein as the "**Bryan Hill Loan Documents**."

10. On or about May 5, 2023, Bryan Hill's Best Living LLC (the "**Bryan Hill Borrower**") became the sole borrower under the Bryan Hill Loan Documents, as evidenced by that certain Assumption, Consent and Ratification of Loan dated May 5, 2023.

11. On or around June 22, 2026, Silver Hill became the owner and holder of the Bryan Hill Loan Documents by reason of certain assignments, including the following documents:

a. Allonge to Promissory Note dated June 22, 2026, transferring the Bryan Hill Note from the Original Lender to Silver Hill;

b. Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement dated June 22, 2026, transferring the Bryan Hill Mortgage from the Original Lender to Silver Hill; and

c. Omnibus Assignment and Assumption of Loan Documents dated June 22, 2026, transferring the Bryan Hill Loan Agreement and other loan documents from the Original Lender to Silver Hill.

12. The Bryan Hill Loan Documents are in default because, among other reasons, and without limitation: (a) the failure to pay the full amount due and owing on the Bryan Hill Loan on the maturity date; (b) the recording of junior liens and encumbrances on the Bryan Hill Property, including but not limited to mechanic's liens, a special warranty deed and a second mortgage without prior written consent; (c) the failure to comply with the cash management provisions of

the Bryan Hill Loan Agreement; (d) the filing of an action by a borrower party seeking relief including, but not limited to, the imposition of a receiver; (e) the failure to maintain liability insurance coverage for the Bryan Hill Property in accordance with the requirements of Section 6.1 of the Bryan Hill Loan Agreement; and (f) the material physical waste to the Bryan Hill Property.

13. Silver Hill is entitled to recovery of its attorneys' fees and costs incurred in enforcing its rights under the terms of the Bryan Hill Loan Documents.

14. As of September 9, 2026, Silver Hill is due the following amounts under the Bryan Hill Loan Documents, exclusive of attorney fees and costs: unpaid principal balance in the amount of $11,847,459.01, together with interest in the amount of $1,552,800.39, default interest in the amount of $898,432.26, late fees in the amount of $84,427.20, exit fees in the amount of $95,227.50, and protective advances in the amount of $86,188.83. After applying certain credits, the total amount due under the Bryan Hill Loan Documents through September 9, 2026 is $14,164,766.41.

**B. Summer Oaks**

15. On or about August 4, 2022, Summer Oaks TIC 1, LLC, Summer Oaks TIC 2, LLC, Summer Oaks TIC 3, LLC and Summer Oaks Best Living, LLC, as Borrower, (the "**Original Summer Oaks Borrower**") executed and delivered that certain Loan Agreement (the "**Summer Oaks Loan Agreement**") and Promissory Note (the "**Summer Oaks Note**") to the Original Lender, evidencing a loan in the original principal amount of up to $10,715,000.00 (the "**Summer Oaks Loan**").

16. Also on or about August 4, 2022, the Original Summer Oaks Borrower executed and delivered that certain Mortgage, Assignment of Leases and Rents and Security Agreement (the "**Summer Oaks Mortgage**") to the Original Lender to secure payment of the Summer Oaks Loan,

which mortgage was recorded August 5, 2022, in Book 15234, Page 1457 in the Office of the County Clerk of Oklahoma County, Oklahoma and which mortgaged the property described therein (the "**Summer Oaks Property**").

17. Each of the documents and agreements set forth above, as well as each and every document and agreement executed by the Original Summer Oaks Borrower and the Original Lender in connection with the documents set forth above, including but not limited to, any and all uniform commercial code financing statements filed by or on behalf of the Original Lender or Silver Hill, shall be collectively referred to herein as the "**Summer Oaks Loan Documents**."

18. On or about May 5, 2023, Summer Oaks's Best Living LLC (the "**Summer Oaks Borrower**") became the sole borrower under the Summer Oaks Loan Documents, as evidenced by that certain Assumption, Consent and Ratification of Loan dated May 5, 2023.

19. On or around June 22, 2026, Silver Hill became the owner and holder of the Summer Oaks Loan Documents by reason of certain assignments, including the following documents:

a. Allonge to Promissory Note dated June 22, 2026, transferring the Summer Oaks Note from the Original Lender to Silver Hill;

b. Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement dated June 22, 2026, transferring the Summer Oaks Mortgage from the Original Lender to Silver Hill; and

c. Omnibus Assignment and Assumption of Loan Documents dated June 22, 2026, transferring the Summer Oaks Loan Agreement and other loan documents from the Original Lender to Silver Hill.

20. The Summer Oaks Loan Documents are in default because, among other reasons, and without limitation: (a) the failure to pay the full amount due and owing on the Summer Oaks Loan on the maturity date; (b) the recording of junior liens and encumbrances on the Summer Oaks Property, including but not limited to mechanic's liens, a special warranty deed and a second mortgage without prior written consent; (c) the failure to comply with the cash management provisions of the Summer Oaks Loan Agreement; (d) the filing of an action by a borrower party seeking relief including, but not limited to, the imposition of a receiver; and (e) the material physical waste to the Summer Oaks Property.

21. Silver Hill is entitled to recovery of its attorneys' fees and costs incurred in enforcing its rights under the terms of the Summer Oaks Loan Documents.

22. As of September 9, 2026, Silver Hill is due the following amounts under the Summer Oaks Loan Documents, exclusive of attorney fees and costs: unpaid principal of $10,340,440.00, interest in the amount of $1,355,281.24, default interest in the amount of $784,150.06, late charges in the amount of $82,710.88, exit fees of $80,362.50, and protective advances in the amount of $23,980.41. After applying certain credits, the total amount due under the Summer Oaks Loan Documents through September 9, 2026 is $12,070,438.45.

**C. Springdale Village**

23. On or about August 4, 2022, Springdale Village TIC 1, LLC, Springdale Village TIC 2, LLC, Springdale Village TIC 3, LLC and Springdale Village's Best Living, LLC, as Borrower, (the "**Original Springdale Borrower**") executed and delivered that certain Loan Agreement (the "**Springdale Loan Agreement**") and Promissory Note (the "**Springdale Note**") to the Original Lender evidencing a loan in the original principal amount of up to $6,530,000.00 (the "**Springdale Loan**").

24. Also on or about August 4, 2022, the Original Springdale Borrower executed and delivered that certain Mortgage, Assignment of Leases and Rents and Security Agreement (the "**Springdale Mortgage**") to the Original Lender to secure payment of the Springdale Loan, which mortgage was recorded August 5, 2022, in Book 15234, Page 1382 in the Office of the County Clerk of Oklahoma County, Oklahoma and which mortgaged the property described therein (the "**Springdale Property**").

25. Each of the documents and agreements set forth above, as well as each and every document and agreement executed by the Original Springdale Borrower and the Original Lender in connection with the documents set forth above, including but not limited to, any and all uniform commercial code financing statements filed by or on behalf of the Original Lender or Silver Hill, shall be collectively referred to herein as the "**Springdale Loan Documents**."

26. On or about May 5, 2023, Springdale Village's Best Living LLC (the "**Springdale Borrower**") became the sole borrower under the Springdale Loan and Springdale Loan Documents, as evidenced by that certain Assumption, Consent and Ratification of Loan dated May 5, 2023.

27. On or around June 22, 2026, Silver Hill became the owner and holder of the Springdale Loan Documents by reason of certain assignments, including the following documents:

a. Allonge to Promissory Note dated June 22, 2026, transferring the Springdale Note from the Original Lender to Silver Hill;

b. Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement dated June 22, 2026, transferring the Springdale Mortgage from the Original Lender to Silver Hill; and

c. Omnibus Assignment and Assumption of Loan Documents dated June 22, 2026, transferring the Springdale Loan Agreement and other loan documents from the Original Lender to Silver Hill.

28. The Springdale Loan Documents are in default because, among other reasons, and without limitation: (a) the failure to pay the full amount due and owing on the Springdale Loan on the maturity date; (b) the recording of junior liens and encumbrances on the Springdale Property, including but not limited to mechanic's liens, a special warranty deed and a second mortgage without prior written consent; (c) the failure to comply with the cash management provisions of the Springdale Loan Agreement; (d) the filing of an action by a borrower party seeking relief including, but not limited to, the imposition of a receiver; and (e) the material physical waste to the Springdale Property.

29. Silver Hill is entitled to recovery of its attorneys' fees and costs incurred in enforcing its rights under the terms of the Springdale Loan Documents.

30. As of September 9, 2026, Silver Hill is due the following amounts under the Springdale Loan Documents, exclusive of attorney fees and costs: unpaid principal balance in the amount of $6,012,342.18, interest in the amount of $832,073.08, default interest in the amount of $481,822.41, late charges in the amount of $46,468.66, an exit fee of $48,975.00, and protective advances in the amount of $68,768.52. After applying certain credits, the total amount due under the Springdale Loan Documents through September 9, 2026 is $7,416,960.68.

31. In conjunction with the execution of the Bryan Hill, Summer Oaks and Springdale Loan Documents (collectively, the "**OKC 3 Pack Loan Documents**") on August 4, 2022, the Bryan Hill, Summer Oaks and Springdale Borrower (collectively, the "**OKC 3 Pack Borrowers**") executed and delivered that certain Cross-Default, Cross-Collateralization and Contribution

Agreement pursuant to which, among other things, the OKC 3 Pack Borrowers acknowledged and agreed that an event of default under any of the Bryan Hill, Summer Oaks and Springdale Loan Documents constitutes an event of default under all of them and that the Bryan Hill, Summer Oaks and Springdale Mortgages (collectively, the "**OKC 3 Pack Mortgages**") and the Bryan Hill, Summer Oaks and Springdale Properties (collectively, the "**OKC 3 Pack Properties**") secured performance under all of the OKC 3 Pack Loan Documents in the aggregate principal amount of $29,942,000.00. The total amount due and owing as of September 9, 2026 on the OKC 3 Pack Loan Documents is $33,652,165,54.

**D. Tuscany Village**

32. On or about December 14, 2021, Tuscany Village Best Living, LLC, as Borrower, (the "**Tuscany Borrower,**" and collectively with the OKC 3 Pack Borrowers, the "**Borrowers**") executed and delivered that certain Loan Agreement (the "**Tuscany Loan Agreement**") and Promissory Note (the "**Tuscany Note**") to the Original Lender evidencing a loan in the original principal amount of $16,000,000.00 (the "**Tuscany Loan**").

33. Also on or about December 14, 2021, the Tuscany Borrower executed and delivered that certain Mortgage, Assignment of Leases and Rents and Security Agreement (the "**Tuscany Mortgage**") to the Original Lender to secure payment of the Tuscany Loan, which mortgage was recorded December 15, 2021, in Book 15001, Page 495 in the Office of the County Clerk of Oklahoma County, Oklahoma and which mortgaged the property described therein (the "**Tuscany Property**").

34. Each of the documents and agreements set forth above, as well as each and every document and agreement executed by the Tuscany Borrower and the Original Lender in connection with the documents set forth above, including but not limited to, any and all uniform commercial

code financing statements filed by or on behalf of the Original Lender or Silver Hill, shall be collectively referred to herein as the "**Tuscany Loan Documents**."

35. On or around May 13, 2022, Auto-Owners Reinsurance Trust 2020-1 ("**AORT**") became the owner and holder of the Tuscany Loan Documents by reason of certain assignments, including the following documents:

a. Allonge to Promissory Note dated May 13, 2022, transferring the Tuscany Note from the Original Lender to AORT;

b. Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement dated May 13, 2022, transferring the Tuscany Mortgage from the Original Lender to AORT; and

c. Omnibus Assignment and Assumption of Loan Documents dated May 13, 2022, transferring the Tuscany Loan Agreement and other loan documents from the Original Lender to AORT.

36. On or around October 24, 2025, Silver Hill became the owner and holder of the Tuscany Loan Documents by reason of certain assignments, including the following documents:

a. Allonge to Promissory Note dated October 24, 2025, transferring the Tuscany Note from AORT to Silver Hill;

b. Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement dated October 24, 2025, transferring the Tuscany Mortgage from AORT to Silver Hill; and

c. Omnibus Assignment and Assumption of Loan Documents dated October 24, 2025, transferring the Tuscany Loan Agreement and other loan documents from AORT to Silver Hill.

37. The Tuscany Loan Documents are in default because, among other reasons, and without limitation: (a) the failure to pay the full amount due and owing on the Tuscany Loan on the maturity date; (b) the recording of junior liens and encumbrances on the Tuscany Property, including but not limited to mechanic's liens, a special warranty deed and a second mortgage without prior written consent; (c) the failure to comply with the cash management provisions of the Tuscany Loan Agreement; (d) the filing of an action by a borrower party seeking relief including, but not limited to, the imposition of a receiver; and (e) the material physical waste to the Tuscany Property.

38. Silver Hill is entitled to recovery of its attorneys' fees and costs incurred in enforcing its rights under the terms of the Tuscany Loan Documents.

39. As of September 9, 2026, Plaintiff is due the following amounts under the Tuscany Loan Documents, exclusive of attorney fees and costs: unpaid principal balance in the amount of $13,355,233.02, interest in the amount of $1,891,284.88, default interest in the amount of $1,127,775.24, late charges in the amount of $135,733.75, an exit fee of $80,000.00, and protective advances in the amount of $374,474.29. After applying certain credits, the total amount due under the Tuscany Loan Documents through September 9, 2026 is $16,728,315.51.

## II. DEFAULTS AND FORECLOSURE

40. On November 26, 2025, the Original Lender sent notices of default to each of the OKC 3 Pack Borrowers notifying them of certain defaults under the OKC 3 Pack Loan Documents, including (a) the failure to pay the full amount owed on each of the OKC 3 Pack Loan Documents upon the maturity date, and (b) the recording of second mortgages on each of the OKC 3 Pack Properties by YSA on October 31, 2025 without the consent of the Original Lender.

41. On May 27, 2026, the Original Lender sent second notices of default to each of the OKC 3 Pack Borrowers notifying them of certain defaults under the OKC 3 Pack Loan Documents, including the failure to maintain insurance on the OKC 3 Pack Properties.

42. On June 1, 2026, Silver Hill sent a notice of default to the Tuscany Borrower notifying it of certain defaults under the Tuscany Loan Documents, including (a) the failure to pay the full amount owed on the Tuscany Loan on the maturity date, and (b) the encumbering of the Tuscany Property by certain mechanic's liens and by that certain Guaranty and ROFO by and between Mr. Kulick and YSA.

43. On June 22, 2026, YSA recorded special warranty deeds in lieu of foreclosure on all four of the Silver Hill Properties, purporting to transfer these properties to itself.

44. On June 25, 2026, John Upperman, Illini Holdings, LLC, Thrive Realestate, LLC, Wildwood Assets, LLC, TU Properties, LLC, Oak Street Capital, LLC, and 12 Oak Lending, LLC filed a complaint (the "**Upperman Complaint**") in the Northern District of Oklahoma against Mr. Kulick, Vesta Realty, Vesta Holdings, LLC, Louis Investments, LLC ("**Louis Investments**"), and Asset Holder, LLC for, among other things, RICO, fraud, and the appointment of a federal equity receiver over all properties in the Vesta Portfolio, including the Silver Hill Properties (the "**Upperman Proceedings**").

45. On July 14, 2026, Silver Hill filed a complaint against, among other defendants, the Borrowers, Mr. Kulick, Mr. Upperman, Louis Investments, and YSA for (a) foreclosure on the Bryan Hill Mortgage, Summer Oaks Mortgage, Springdale Mortgage, and Tuscany Mortgage (the "**Mortgages**"); (b) breach of guaranty agreements; and (c) appointment of a receiver over the Silver Hill Properties.

46. On July 24, 2026, Silver Hill moved to intervene in the Upperman Proceedings. The filing of the Upperman Complaint constitutes a default under the Loan Documents, as it seeks the appointment of a receiver over the Silver Hill Properties.

47. The total indebtedness due and owing under the Loan Documents as of September 9, 2026 is $50,380,481.05. The Borrowers have provided broker's opinions of value for the OKC 3 Pack Properties dated April 13, 2026 and the Tuscany Property dated April 17, 2026 (the "**Borrower BOVs**"). True and correct copies of the Borrower BOVs are attached to this Motion as **Exhibit A**. The charts below display (a) the premium, strike, and market valuations for the Silver Hill Properties from the Borrower BOVs, and (b) the estimated equity, or lack thereof, in the Silver Hill Properties based on the total indebtedness and the Borrower BOVs.

48. As demonstrated by the charts below, there is no equity in any of the Silver Hill Properties under a premium, strike, or market valuation.

**Valuations from Borrower BOVs**

| Valuations | Bryan Hill | Summer Oaks | Springdale | **OKC 3 Total** | Tuscany | **Grand Total** |
|---|---|---|---|---|---|---|
| Premium | $13,920,000.00 | $11,820,000.00 | $7,040,000.00 | **$32,780,000.00** | $12,640,000.00 | **$45,420,000.00** |
| Strike | $13,108,000.00 | $10,835,000.00 | $6,720,000.00 | **$30,663,000.00** | $11,060,000.00 | **$41,723,000.00** |
| Market | $12,296,000.00 | $9,850,000.00 | $6,400,000.00 | **$28,546,000.00** | $9,480,000.00 | **$38,026,000.00** |

**Estimated Equity based on Total Indebtedness and Borrower BOVs**

| Estimated Equity | Bryan Hill | Summer Oaks | Springdale | **OKC 3 Total** | Tuscany | **Grand Total** |
|---|---|---|---|---|---|---|
| Premium | ($244,766.41) | ($250,438.45) | ($376,960.68) | **($872,165.54)** | ($4,088,315.51) | **($4,960,481.05)** |
| Strike | ($1,056,766.41) | ($1,235,438.45) | ($696,960.68) | **($2,989,165.54)** | ($5,668,315.51) | **($8,657,481.05)** |
| Market | ($1,868,766.41) | ($2,220,438.45) | ($1,016,960.68) | **($5,106,165.54)** | ($7,248,315.51) | **($12,354,481.05)** |

## III. BANKRUPTCY FILINGS

49. On July 10, 2026, Louis Investments filed a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas (the "**Texas Bankruptcy Court**").

50. On July 20, 2026, Louis Investments filed its *Complaint Against Defendant YSA Investments 1, LLC* [Case No. 26-03074, Adv. Pro. Doc. No. 1] (the "**Louis Investments Complaint**") and *Emergency Motion for Temporary Restraining Order* [Case No. 26-03074, Adv. Pro. Doc. No. 3] (the "**TRO Motion**") in the Louis Investments bankruptcy case. The Louis Investments Complaint alleges that on July 20, 2026, YSA took forcible possession of ten properties in Mr. Kulick's portfolio. Three of these properties were the subject of chapter 11 cases that at the time were pending before the Texas Bankruptcy Court. On information and belief, YSA has not taken possession of the Silver Hill Properties.

51. Commencing on July 27, 2026 and continuing on July 28, 2026, a hearing was held on the TRO Motion in the Texas Bankruptcy Court (the "**TRO Hearing**"). At 4:59 p.m. at the end of the second day of the TRO Hearing on July 28, 2026 (the "**Petition Date**"), after two full days of testimony, just minutes before Mr. Diveroli was to testify before Judge Jernigan, Marcus Helt of Dechert LLP, who represented YSA at the TRO Hearing, advised Judge Jernigan that YSA filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**") while the TRO Hearing was ongoing.

52. On August 14, 2026, the Delaware Bankruptcy Court entered the *Order Transferring Venue* [Docket No. 118] transferring venue of this chapter 11 case to this Court.

53. On August 17, 2026, the Texas Bankruptcy Court entered an order transferring the venue of all cases related to the Vesta Portfolio, including Louis Investments, to this Court.

54. On August 25, 2026, YSA filed its *Submission of Schedules and Statements of Financial Affairs* [Docket No. 237] (the "**Schedules**"). YSA listed the loans secured by the Silver Hill Properties on Schedule D, item numbers 2.8 through 2.11.[2] YSA lists the value of the Tuscany Property as $14,225,127.00, the value of the Bryan Hill Property as $10,948,581.00, the value of the Springdale Property as $12,724,563.00, and the value of the Summer Oaks Property as $12,183,272.00. The basis of YSA's valuations of the Silver Hill Properties is unclear, but at a hearing in this chapter 11 case on August 27, 2026, counsel for YSA stated that the valuations in the Schedules were based on information from YSA's "authorized representative" and "consultant"—Parker Detweiler (i.e., not based on any broker's opinion of value or appraisal). With the exception of the Bryan Hill Property, each of YSA's valuations significantly exceeds the premium valuations from the Borrower BOVs. Silver Hill disputes the validity of these valuations.

## RELIEF REQUESTED

55. Silver Hill requests entry of an order pursuant to 11 U.S.C. § 362(d)(2), granting Silver Hill relief from the automatic stay pursuant to sections 105 and 362(d)(1) and (2) of the Bankruptcy Code to permit Silver Hill to exercise all of its rights and remedies under the Loan Documents and applicable law with respect to the Silver Hill Properties, including proceeding with the pending judicial foreclosure action.

## BASIS FOR RELIEF

### I. THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY BECAUSE THERE IS NO EQUITY IN THE SILVER HILL PROPERTIES

56. Section 362(d)(2) of the Bankruptcy Code provides:

[2] The creditor name listed on the Schedules for the Silver Hill Properties is Community Loan Servicing, LLC. Community Loan Servicing, LLC changed its name to Silver Hill Capital, LLC on June 16, 2025.

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> …
>
> (2) with respect to a stay of an act against property under section (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization…

11 U.S.C. § 362(d)(2).

57. Termination of the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code is appropriate in this case because, regardless of who is the true owner of the Silver Hill Properties, the indebtedness owed to Silver Hill secured by the Silver Hill Properties exceeds the value of the Silver Hill Properties. Thus, there is no equity in the Silver Hill Properties, and the Silver Hill Properties are not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2); *see also In re Steffens*, 275 B.R. 570, 577-78 (Bankr. D. Colo. 2002) (relief from automatic stay will be granted when, among other things, debtor has no equity in property and property is not necessary for an effective reorganization). Silver Hill only bears the burden of proving that YSA lacks equity in the Silver Hill Properties. *See* 11 U.S.C. § 362(g)(1).

58. The Bankruptcy Code does not define the term "equity." However, courts in the Tenth Circuit have held that equity is "determined . . . by comparing the value that can be realized from the sale of the property in the bankruptcy case with the aggregate amount of all secured claims against the property." *In re Jacobs*, 2021 WL 2098921, at *7 (Bankr. D.N.M. May 24, 2021); *In re Miller*, 656 B.R. 281, 291 (Bankr. D. Kan. 2023). "All of the liens against the property must be considered in determining whether the Debtors have equity in the property under § 362(d)(2)(A)." *Steffens*, 275 B.R. at 577.

59. As demonstrated by the Borrower BOVs and the demonstrative charts in this Motion, even taking into account solely the value of Silver Hill's first priority liens, there is no equity in any of the Silver Hill Properties. The amount of the indebtedness owed to Silver Hill exceeds the premium, strike, and market valuations for each of the Silver Hill Properties from the Borrower BOVs. Even assuming YSA would be able to pursue a sale of the Silver Hill Properties in this chapter 11 case, which Silver Hill disputes, the proceeds of such sale would almost certainly not generate enough revenue to pay Silver Hill's secured claim in full, let alone pay the claims of any junior lienholders.

60. In order for property to be found necessary for an effective reorganization under Section 362(d)(2)(B) of the Bankruptcy Code, a debtor must demonstrate both that the property is indispensable to its reorganization efforts and that there is a "reasonable possibility of successful reorganization within a reasonable time." *United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-376 (1988).

61. At status conferences before both the Texas Bankruptcy Court and Delaware Bankruptcy Court, YSA has indicated that (a) YSA filed this chapter 11 case to "stop the bleeding" from the multijurisdictional litigation between YSA and Kulick related entities, (b) YSA intends to pursue sales of the properties in the Vesta Portfolio over which it claims an ownership interest, and (c) YSA will agree to stay relief for properties in which there is no equity. Thus, based on YSA's own statements, properties in which there is no equity are not necessary for its "reorganization" efforts, such as they are. As such, the Silver Hill Properties are not necessary for YSA's reorganization because there is no equity in the Silver Hill Properties.

62. Therefore, the Court should grant Silver Hill relief from the automatic stay with respect to the Silver Hill Properties under Section 362(d)(2) of the Bankruptcy Code.

## II. THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY BECAUSE CAUSE EXISTS UNDER 11 U.S.C. § 362(D)(1)

63. Section 362(d)(1) of the Bankruptcy Code provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(2).

64. The Bankruptcy Code cites "lack of adequate protection" as an example of "cause" justifying relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code. Lack of adequate protection may be shown by "an erosion of the creditor's position or threatened erosion." *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001). "The erosion may be shown through evidence of declining property values, increasing amount of the secured debt through interest accruals or otherwise ... or other factors that may jeopardize the creditor's present position." *Id*.

65. Even though section 362(d)(1) of the Bankruptcy Code references lack of adequate protection as cause for lifting the automatic stay, cause is not limited to a lack of adequate protection. *In re Busch*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003). "Because 'cause' is not further defined in the Bankruptcy Code, relief from stay for cause is a discretion determination made on a case by case basis." *Id.*; *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."). Relief from stay, under section 362(d)(1), is appropriate when the debtor has filed a case in bad faith. *In re Nursery Land Dev., Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996).

66. Silver Hill is already undersecured, as the amount of the indebtedness owed to Silver Hill exceeds the value of the Silver Hill Properties. Further, the value of the Silver Hill Properties is declining or at severe risk of declining due to the material physical waste to the Silver Hill Properties, including the neglect of basic upkeep and failure to maintain the Silver Hill Properties in good repair and marketable condition. The continued deterioration of the Silver Hill Properties will likely result in escalating repair costs and further erosion of the value of Silver Hill's first mortgage position. This failure to maintain the Silver Hill Properties constitutes both lack of adequate protection and independent cause under Section 362(d)(1) of the Bankruptcy Code, and YSA has not proposed to provide Silver Hill with any form of adequate protection to protect Silver Hill against the declining value of its collateral.

67. Therefore, the Court should grant Silver Hill relief from the automatic stay with respect to the Silver Hill Properties under Section 362(d)(1) of the Bankruptcy Code.

## WAIVER

68. Silver Hill respectfully requests that the fourteen (14) day stay provided in Federal Rule of Bankruptcy Procedure 4001(a)(3) be waived to enable Silver Hill to immediately enforce and implement the terms of the proposed order.

## CONCLUSION

For all of the reasons set forth in this Motion, the Bank respectfully requests that this Court grant Silver Hill (a) immediate relief from the automatic stay to exercise all of its rights and remedies against the Silver Hill Properties in accordance with the Loan Documents and applicable non-bankruptcy law, including proceeding with its pending foreclosure action; and (b) such other and further relief as this Court deems appropriate under the circumstances.

*[signature page follows]*

Dated: September 2, 2026

**FBT GIBBONS LLP**

/s/ *Mark A. Platt*
Mark A. Platt (admitted *pro hac vice*)
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone: (214) 580-5852
Facsimile: (214) 545-3473
Email: mplatt@fbtgibbons.com

-and-

Heather Pieper McMutry (admitted *pro hac vice*)
150 3rd Avenue South Suite 1900
Nashville, TN 37201
Telephone: (615) 251-5590
Facsimile: (615) 251-5551
Email: hmcmutry@fbtgibbons.com

-and-

Ross A. Plourde, OBA #7193
MCAFEE & TAFT A PROFESSIONAL CORPORATION
8th Floor South, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
405/235-9621; 405/235-0439 (FAX)
ross.plourde@mcafeetaft.com

*Counsel for Silver Hill Capital, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 2, 2026, a true and correct copy of the foregoing was served electronically on all parties registered to receive notice of filings in this case via this Court's ECF notification system.

*/s/ Mark A. Platt*
Mark A. Platt