**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>YSA INVESTMENTS 1, LLC,<br><br>Debtor. | Case No. 26-12806-SAH<br>Chapter 11 |

**DEBTOR'S RESPONSE TO FAIRFAX BEST LIVING, LLC'S AND WOODLAND OAKS BEST LIVING, LLC'S NOTICE OF DEFAULT AND NONCOMPLIANCE WITH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL**

Debtor, YSA Investments 1, LLC, ("Debtor"), by and through the undersigned counsel, respectfully files this Response to the *Notice of Default and Noncompliance with Interim Order Authorizing Debtor's Use of Cash Collateral* filed by Fairfax Best Living, LLC ("Fairfax") and Woodland Oaks Best Living, LLC ("Woodland") (the "Notice of Default") (Doc. 292). In support thereof, the Debtor would show the Court as follows:

1. Debtor has complied with the Interim Order and has provided account access to every lender that identified a viewer. Thus, contrary to Fairfax's and Woodland's allegations, YSA's filings do not warrant the appointment of a Chapter 11 Trustee.

**Paragraph Five of the Interim Order**

2. Paragraph five of the Interim Order required Debtor to file "an itemized accounting of all funds received and expended by Capital Assets for the Properties since the Petition Date" including "the date, amount, recipient/vendor, and purpose" (Doc. 263). Said accounting was prepared by Capital Assets and was timely filed with the Court (Doc. 281).

3. Paragraph five also asked Debtor to disclose the amount paid for any property expenses covered by someone other than Capital Assets, including a disclosure of who made any such payment. This was likewise complied with. *See* Declaration of Aharon Diveroli at ¶ 5 (stating

that other than the utilities deposit paid by Kingbird Ventures, LLC, and the money advanced by Capital Assets, "no other expenses have been paid by any other third parties") (Doc. 278).

4. The Debtor therefore fully complied with the requirements of paragraph five of the Interim Order.

**Paragraph Six of the Interim Order**

5. Paragraph six of the Interim Order asked the Debtor to "file an itemized accounting of all amounts paid post-petition to any manager, member, affiliate, consultant, or professional of Debtor."

6. An accounting is a "method of recording and reporting business transactions in monetary terms in order to provide information about an entity's operations and financial position." 7 Business Organizations with Tax Planning § 96.01 (2026). It is "the art of recording, classifying, and summarizing in a significant manner and in terms of money, transactions and events which are, in part at least, of a financial character and the results therefrom." Comprehensive Tax Guides § 10:2.01 (2026).

7. Debtor has filed the Diveroli Declaration stating that the amount of such payments is $0 (D.E. 278 at ¶ 4). That statement is the itemized accounting—there are no line items because no such payments occurred. There are thus no further transactions to record, classify, and summarize these (non-existent) transactions. Thus, Mr. Diveroli's Declaration sufficiently complies with paragraph six of the Interim Order.

**Paragraph Seven of the Interim Order**

8. Paragraph seven of the Interim Order required the Debtor to provide to each and every Prepetition Secured Lender real-time access to view each bank account containing its Cash Collateral.

9. Said access was provided to all the secured lenders before 5:00 p.m. C.S.T. on Monday, August 31, 2026, with the exception of the secured lenders for Riverpark at Kensington and Thrive Jenks (G. Wright Decl. filed concurrently herewith at ¶ 5). This was not through any fault of the Debtor.

10. More specifically, on August 31, 2026, Capital Assets emailed Ross Plourde and Kiran Phansalkar of McAfee & Taft, among others, requesting wire instructions and the names of the persons designated to receive real-time account access for each first-lien lender, including the lender on Riverpark at Kensington. *Id.* at ¶ 6. To the best of Debtor's knowledge at the time, Mr. Plourde and Mr. Phansalkar were the contact persons for Riverpark at Kensington. While Mr. Plourde provided the necessary information for other properties, Debtor received no response as to Riverpark at Kensington. *Id.* Then on the morning of September 2, Capital Assets was told that the contact persons for Riverpark at Kensington were Matt Trent and Gatlin Squires from McAfee and Taft. *Id.* Later on, in the afternoon of September 2, 2026, Mr. Phansalkar asked Debtor to provide access to Mr. Phansalkar, Preston Sullivan, Michael Schuster, and Nick Griebel (counsel for Axonic), as well as Axonic's business representative, Colin McLinden. *Id.* After being informed that only two people could be added, Mr. Phansalkar asked Capital Assets to allow access to Mr. McLinden and Mr. Sullivan only. *Id.* The requested access was immediately provided to these representatives. *Id.*

11. Debtor has also not been able to provide said access to the secured lender of Thrive Jenks because this secured lender, Berkadia Servicer HUD ("Berkadia"), has not responded to Debtor's repeated requests for a contact person, which is necessary to provide them access to the account. *Id.* at ¶ 7.

12. Mr. Wright's Declaration demonstrates that Debtor took all necessary steps to comply with the Court's Interim Order. To the extent access was given to McAfee and Taft after the deadline, this was notwithstanding Debtor's best efforts. Importantly, McAfee and Taft has not alleged any noncompliance with the Interim Order.

13. Similarly, Berkadia's failure to take any actions to secure said access cannot be imputed on the Debtor. The Debtor complied with the Interim Order by completing all steps necessary on its end to provide said access.

WHEREFORE, for the reasons stated herein, the Debtor respectfully represents that the Debtor has thus far complied with the requirements of the Interim Order such that the appointment of a Chapter 11 Trustee is not merited.

Respectfully submitted,

*/s/ Jason A. Sansone*

Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
Nicholas J. Candido, OBA No. 36069
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 – facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
njcandido@phillipsmurrah.com
**Proposed Attorneys**
**for YSA Investments 1, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>YSA INVESTMENTS 1, LLC,<br><br>Debtor. | Case No. 26-12806-SAH<br>Chapter 11 |

**DECLARATION OF GREG WRIGHT IN SUPPORT OF DEBTOR'S RESPONSE TO FAIRFAX BEST LIVING, LLC AND WOODLAND OAKS BEST LIVING, LLC NOTICE OF DEFAULT AND NONCOMPLIANCE WITH INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL**

I, Greg Wright, as President of Capital Assets, Inc. ("Capital Assets"), hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am over eighteen years of age, have personal knowledge of the facts set forth in this Declaration, and if called as a witness could and would testify competently thereto.

2. I am authorized to make this Declaration based on my personal knowledge and my role as President of Capital Assets, the property manager currently handling funds generated by certain properties subject to this bankruptcy estate, namely: Thrive Jenks, Lakeside Place, Villas at Midtown, Village Creek, Barcelona Apartments, Shoreline, 727 Lofts, One Eton Square, Riverpark at Kensington, and 23 East.

3. I have reviewed the *Interim Order Authorizing Use of Cash Collateral*, Doc. 263 (the "Interim Order"), including the terms and conditions governing Debtor's interim use of Cash Collateral, and I understand that any failure to comply with those terms and conditions may result in the immediate appointment of a chapter 11 trustee *sua sponte*.

4. I understand that the Interim Order required Debtor to provide to each and every Prepetition Secured Lender real-time access to view each bank account containing its Cash Collateral on or before 5:00 p.m. C.S.T. on Monday, August 31, 2026.

5. Said access was provided to all the secured lenders before 5:00 p.m. C.S.T. on Monday, August 31, 2026, with the exception of the secured lenders for Riverpark at Kensington and Thrive Jenks. This failure was outside Capital Assets' or the Debtor's control.

6. More specifically, on August 31, 2026, I emailed Ross Plourde and Kiran Phansalkar of McAfee and Taft, among others, to obtain the wire information and appropriate contact persons in order to give the appropriate account access to the appropriate representatives of the first lien lenders for all the properties, including Riverpark at Kensington. To the best of my knowledge, Mr. Plourde and Phansalkar were the contact persons for Riverpark at Kensington. While Mr. Plourde provided the necessary information for other properties, I received no response as to Riverpark at Kensington. Then on the morning of September 2, I was told that the contact persons for Riverpark at Kensington were Matt Trent and Gatlin Squires from McAfee and Taft. Later on, in the afternoon of September 2, 2026, Mr. Phansalkar asked me to provide access to Mr. Phansalkar, Preston Sullivan, Michael Schuster and Nick Griebel (counsel for Axonic), as well Axonic's business representative, Colin McLinden. After being informed that only two people could be added, Mr. Phansalkar asked me to allow access to McLinden and Mr. Sullivan only. The requested access was immediately provided.

7. Debtor has not been able to provide said access to the secured lender of Thrive Jenks because this secured lender, Berkadia Servicer HUD, has not responded to my repeated and daily requests for a contact person since entry of the Interim Order, which is necessary to provide them access to the account. To date, I have received no response to my inquiries.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 2, 2026.

**Greg Wright**
President
Capital Assets, Inc.