# COLLATERAL PLEDGE AND SECURITY AGREEMENT

This Collateral Pledge and Security Agreement (this "**Agreement**") is made as of October 29, 2024 by and between **GENERAL HOLDING LLC** ("**Lender**") and **VESTA HOLDINGS, LLC**, an Oklahoma limited liability company ("**Pledgor**").

## RECITALS

A. Concurrently herewith, Lender is making a loan (the "**Loan**") to Pledgor and Marc Kulick, an individual (collectively, "**Borrower**"). The Loan is evidenced by documents that include a Promissory Note of even date herewith by Borrower in favor of Lender (as same may be amended, renewed, extended, substituted for, amended and restated, or otherwise modified from time to time, the "**Note**").

B. Pledgor holds the following rights, title, and interests (collectively, the "**Interest**") in and to each of the following entities (each, an "**Entity**"): (1) a membership interest in WoodScape Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Four Hundred Thousand Dollars ($400,000); (2) a membership interest in Barcelona Best Living, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Three Hundred Thousand Dollars ($300,000); (3) a membership interest in Riverpark Best Living Investors, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Eighty-Nine Thousand Three Hundred Dollars ($189,300); (4) a membership interest in Montgomery Vesta Investors, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (5) a membership interest in Fairfax Holding Company, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (6) a membership interest in OKC3 Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (7) a membership interest in Eton Investor, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (8) a membership interest in Eaton Place Investor, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (9) a membership interest in W.O. Holding Co., LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Thousand Dollars ($100,000); (10) a membership interest in Regency Holdings, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Thousand Dollars ($100,000); (11) a membership interest in Woodland Manor Holdings, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of One Hundred Thousand Dollars ($100,000); (12) a membership interest in 727-Classen Best Living Investors, LLC, a Delaware limited liability company, which includes (*inter alia*) a capital contribution of Fifty Thousand Dollars ($50,000); and (13) a membership interest in Muntage Vesta Investors, LLC, a Kansas limited liability company, which includes (*inter alia*) a capital contribution of Forty-Nine Thousand Two Hundred Seventy-Five Dollars ($49,275).

C. In connection with the Loan, Pledgor has agreed to pledge the Interest to Lender on the terms and conditions herein.

## AGREEMENTS

NOW, THEREFORE, for and in consideration of the direct benefits to be realized by Borrower (including Pledgor) from the Loan, the mutual covenants hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor and Lender hereby agree as written below.

1. PLEDGE.

1.1 SECURITY INTEREST. Pledgor pledges, grants, and assigns to Lender a security interest in and lien upon the Collateral (defined below) to secure the payment and the performance of the Obligations (defined below). "**Collateral**" shall mean the Interest and any and all other interests in any Entity that are now owned or hereafter acquired by Pledgor in or to any Entity, together with (i) all additional membership interests or other equity interests in any Entity now or hereafter

EXHIBIT B

acquired by Pledgor, and (1) all options, warrants, and other rights now or hereafter acquired by Pledgor in respect of such membership interests or other equity interests in any Entity (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of such Entity or otherwise), and (2) all other property, rights or instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests or other equity interests in any Entity; (ii) any certificates, instruments, or other writings representing or evidencing membership interests or other ownership interests in any Entity now or hereafter acquired by Pledgor, and all accounts and general intangibles arising out of, or in connection with, the membership interests in any Entity now or hereafter acquired by Pledgor; (iii) any and all monies or property due and to become due to Pledgor now or in the future in respect of its membership interests or other ownership interests in any Entity, or to which Pledgor may now or in the future be entitled in its capacity as a member or other equity holder of any Entity, whether by way of a dividend, distribution, return of capital or otherwise; (iv) all other claims that Pledgor now has or may in the future acquire in its capacity as a member, partner, shareholder, or other equity holder of any Entity against such Entity and its property; and (v) all rights of Pledgor under any Entity's organizational documents (and all other agreements, if any, to which Pledgor is a party from time to time which relate to its ownership of the membership interests or other ownership interests in any Entity), including all voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the membership interests or other equity interests in any Entity (provided, however, that any time an Event of Default (defined below) does not exist, Pledgor may exercise all rights of Pledgor under each Entity's organizational documents, including all voting rights).

1.2 ATTACHMENT. The foregoing security interest shall attach automatically to any interests in any Entity that Pledgor may at any time in the future acquire without any further action by Pledgor or Lender; provided, however, that as a condition to Lender's consent to any such transfer, Lender may require Pledgor to execute a modification to this Agreement or a supplementary collateral pledge and security agreement.

1.3 PRIORITY. It is acknowledged that (1) Borrower has entered, is entering, or will enter into loans (each, an "**Other Loan**") from other lenders (each, an "**Other Lender**") on terms that include pledging, granting, and assigning to each Other Lender a security interest in and lien upon (each, an "**Other Lien**") the Collateral to secure the payment and the performance of Borrower's obligations under each Other Loan, and (2) Lender and each Other Lender are to have equal priority to the Collateral. Accordingly—and notwithstanding anything to the contrary at law, in equity, or otherwise—the security interest in and lien upon the Collateral created by this Agreement ("**This Lien**") shall be equal in priority to each Other Lien, whether any such Other Lien (a) was created before the creation of This Lien or (b) is created after the creation of This Lien.

## 2. OBLIGATIONS.

2.1 SECURITY. The following obligations (the "**Obligations**") are secured by this Agreement: (i) all payment and performance duties, liabilities, and obligations of Borrower under the Note; and (ii) all reasonable costs incurred by Lender to obtain, preserve, perfect, and enforce this Agreement and security interest, collect the Obligations, and maintain, preserve, collect, and enforce the Collateral, including taxes, assessments, insurance premiums, attorneys' fees and legal expenses, and expenses of sale.

2.2 DIRECT. The obligations of Pledgor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against any other person or entity (including the other entities that comprise Borrower) nor against the security or liens or encumbrances available to Lender. Pledgor waives any right to require that an action be brought against any other person or entity or to require that resort be had to any security or to any balance of any account or credit on the books of Lender in favor of any other person or entity prior to any

exercise of rights or remedies hereunder. No renewal or extension of or any other indulgence with respect to the Obligations or any part thereof, no release of any security, no release of any person (including any maker, endorser, guarantor or surety) liable on the Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Lender under this Agreement, applicable law, or any other agreement pertaining to security for the Obligations. Pledgor (i) waives any right to the benefit of, or to require or control application of, any other security or proceeds thereof, and (ii) agrees that Lender shall have no duty or obligation to Pledgor to apply to the Obligations any such other security or proceeds thereof.

3. REPRESENTATIONS AND WARRANTIES. Pledgor represents and warrants as follows:

3.1 FINANCING STATEMENTS. No financing statement covering the Collateral is or will be on file in any public office.

3.2 OWNERSHIP. Subject to §1.3, Pledgor owns the Collateral absolutely and free of any setoff, claim, restriction, lien, security interest, or encumbrance except for the security interest hereunder. Pledgor has the right to pledge the Collateral. No consent or approval of any governmental authority or other person that has not been obtained was or is necessary to the validity of this pledge or the enforcement of Lender's rights and remedies hereunder.

3.3 POWER AND AUTHORITY. Pledgor has the full power and authority to make and deliver this Agreement. This Agreement constitutes the valid and legally binding obligation of Pledgor, and is enforceable in accordance with its terms.

3.4 MEMBERSHIP INTERESTS. The Collateral constitutes "general intangibles," as defined in the Uniform Commercial Code as in effect in the State of Oklahoma (the "**UCC**"), and this Agreement constitutes a security agreement under the UCC.

4. COVENANTS. Pledgor shall promptly perform all of its covenants in this Agreement, including the covenants in this section.

4.1 OWNERSHIP OF COLLATERAL. Except as provided in §1.3, (i) Pledgor shall not further transfer, sell, pledge, assign, or encumber any of the Collateral, and (ii) Pledgor shall keep the Collateral free from any liens, claims, encumbrances, or security interests other than This Lien, and shall preserve the priority of This Lien. Lender shall have no duty to preserve such security but may do so at the expense of Pledgor without waiving any default hereunder.

4.2 COSTS. Pledgor shall pay all costs that are reasonably necessary to obtain, preserve, perfect, defend, and enforce the security interests created by this Agreement, and to preserve, defend, enforce, and collect the Collateral.

4.3 RIGHT OF LENDER TO NOTIFY OTHERS. While an Event of Default exists, Lender may (subject to §1.3) (i) notify persons obligated on any Collateral to make payments directly to Lender, and (ii) take control of all proceeds of any Collateral. Until Lender elects to exercise such rights, Pledgor, as trustee for the benefit of Lender (subject to §1.3), shall collect and enforce all payments owed on the Collateral pledged by Pledgor.

4.4 POWER OF ATTORNEY. Pledgor appoints Lender as its/his/her attorney-in-fact with full power in Pledgor's name and behalf to do every act that Pledgor is obligated to do or may be required to do hereunder; however, nothing in this section shall be construed to obligate Lender to take any action hereunder. The power of attorney hereby created is a power coupled with an interest, and shall be irrevocable. Notwithstanding the foregoing, Lender shall not exercise the foregoing power of attorney unless an Event of Default exists and only as long as an Event of Default exists.

4.5 NO WAIVER BY LENDER. No renewal or extension of or any other indulgence with respect to the Obligations or any part thereof, no release of any security, no release of any person (including any maker, endorser, guarantor or surety) liable on the Obligations, no delay in enforcement of payment, and no delay or omission or lack of diligence or care in exercising any right or power with respect to the Obligations or any security therefor or guaranty thereof or under this Agreement shall in any manner impair or affect the rights of Lender under the law, hereunder or under any other agreement pertaining to security for the Obligations. Pledgor waives any right to the benefit of or to require or control application of any other security or proceeds thereof, and agrees that Lender shall have no duty or obligation to Pledgor to apply to the Obligations any such other security or proceeds thereof.

4.6 INDEMNIFICATION. In addition to any other indemnifications expressly provided for herein, Pledgor will save, indemnify, and hold Lender harmless from and against all actual expenses, losses, or damages suffered by reason of any (a) wrongful interference (i.e., interference in bad faith) by Pledgor with the exercise of any rights or remedies by Lender under this Agreement, or (b) Event of Default. The foregoing obligation of Pledgor to indemnify Lender shall not extend to any suit, proceeding, or action arising out of the gross negligence or willful misconduct of Lender or anyone claiming by, through, or under Lender. Additionally (and notwithstanding anything to the contrary above), Pledgor shall not indemnify Lender as to any matters that arise from and after the conveyance of the Collateral pledged by Pledgor (whether by a foreclosure, a conveyance in lieu of foreclosure, or otherwise) or the discharge of the pledge that is the subject of this Agreement.

5. DEFAULT.

5.1 EVENTS OF DEFAULT. Each of the following shall be an "**Event of Default**" hereunder:

(a) a levy on, seizure, or attachment of the Collateral by any third party, and same is not fully removed within thirty (30) days thereafter;

(b) Pledgor defaults in the performance or observance of any of its covenants in this Agreement, and such default is not cured within thirty (30) days after Lender notifies Pledgor thereof (provided, however, that if such default is of a nature that it reasonably cannot be cured within thirty (30) days, then as long as Pledgor is proceeding diligently and in good faith to cure such default, Pledgor shall have up to ninety (90) days total to cure such default);

(c) Pledgor breaches any of its representations or warranties in this Agreement and does not cure such breach within five (5) business days after Lender notifies Pledgor thereof;

(d) Pledgor makes a general assignment for the benefit of its creditors, or Pledgor consents to an application for the appointment of a trustee, receiver, or other custodian for Pledgor, or the institution of any proceeding by Pledgor under any federal or state laws providing for the relief of debtors or otherwise alleging that Pledgor is insolvent, bankrupt, or unable to pay its debts generally as they become due, and same is not dismissed within ninety (90) days of filing; or

(e) an Event of Default occurs under the Note.

5.2 REMEDIES UPON DEFAULT. While an Event of Default exists, Lender may, without notice or demand to Pledgor, enforce payment of the Obligations then due (whether due by acceleration in whole or part or otherwise), and may exercise any rights under the UCC, rights and remedies of Lender under this Agreement, or otherwise. Without limiting the foregoing, Lender may conduct a private sale as written below.

(a) Pledgor recognizes that Lender may be unable to effect a public sale of any or all of the Collateral, by reason of certain prohibitions contained in the Securities Act of 1933, as amended (the "**Securities Act**"), and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers who will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. Pledgor (i) acknowledges and agrees that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale, and (ii) notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale. Lender shall be under no obligation to delay a sale of any of the Collateral for the period of time necessary to permit any Entity or Pledgor to register such securities for public sale under the Securities Act, or under applicable state securities laws, even if such Entity or Pledgor would agree to do so.

(b) Further, Pledgor shall use commercially reasonable efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Collateral pursuant to this section valid and binding and in compliance with any and all other requirements of applicable law. Pledgor further agrees that a breach of any of the covenants contained in this section will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breach, and, as a consequence, that each and every covenant contained in this section shall be specifically enforceable against Pledgor; and Pledgor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred, or any defense relating to Lender's willful misconduct or gross negligence.

(c) Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market. Pledgor hereby waives any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Obligations, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

(d) It is acknowledged that the UCC states that a lender is able to purchase collateral only if it is sold at a public sale. Lender has advised Pledgor that Securities and Exchange Commission ("**SEC**") staff personnel have issued various No-Action Letters describing procedures that, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for purposes of Article 9 of the UCC, yet not public for purposes of §4(2) of the Securities Act. It is also acknowledged that the UCC permits Pledgor to agree on the standards for determining whether a lender has complied with its obligations under Article 9 of the UCC. Pursuant to the UCC, Pledgor specifically agrees that (x) it shall not raise any objection to Lender's purchase of the Collateral (through bidding on the obligations or other commercially reasonable means), and (y) a sale conducted in conformity with the principles set forth in the No-Action Letters (i) shall be considered to be a "public" sale for purposes of the UCC, (ii) will be considered commercially reasonable notwithstanding that Lender has not registered or sought to register the Collateral under the Securities Laws, even if Pledgor or any Entity agrees to pay all costs of the registration process, and (iii) shall not be considered to be commercially unreasonable solely because Lender purchases the Collateral at such a sale.

(e) Pledgor agrees that Lender shall not have any general duty or obligation to make any

effort to obtain or pay any particular price for any Collateral sold by Lender pursuant to this Agreement. Lender, in its sole discretion, may decide to approach or not to approach any potential purchasers provided that the method of sale is commercially reasonable. Without in any way limiting Lender's right to conduct a sale in any manner that is considered commercially reasonable, Pledgor hereby agrees that any sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives any right to contest any such sale:

(i) Lender conducts the sale in the State of Oklahoma;

(ii) the sale is conducted in accordance with the laws of the State of Oklahoma;

(iii) at least ten (10) days in advance of the sale, Lender notifies Pledgor of the time and place of the sale;

(iv) the sale is conducted by an auctioneer licensed in the State of Oklahoma on any Business Day between the hours of 9:00 a.m. and 5:00 p.m. Central Time;

(v) the notice of the date, time and location of the sale is published in the auction section of the Sunday edition of a local newspaper at least five (5) days prior to the date of the sale; and

(vi) Lender sends notification of the sale to all secured parties identified as a result of a search of the UCC financings statements in the filing offices located in the state(s) of residence of Pledgor(s) conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date.

(f) Upon a sale of the Collateral, Pledgor hereby gives his, her, or its consent to the admission of the purchaser of the Collateral as a member of the applicable Entity, notwithstanding any provision of the operating agreement of such Entity to the contrary. Such consent shall be irrevocable as long as any Obligation remains unpaid.

6. MISCELLANY.

6.1 CONFIDENTIALITY. Each party hereto shall keep confidential the existence of the Loan and the terms of this Agreement and the other Loan Documents, except in each case to the extent that disclosing such information may be (a) required by law or other governmental requirement or (b) reasonably required in connection with entering into or enforcing the Loan, including disclosures to a party's owners (whether direct or indirect), service professionals (including lawyers, accountants, advisors, and consultants), and lenders.

6.2 PARTIES BOUND. Lender's rights and interests hereunder shall inure to the benefit of its successors and assignees (and any subsequent successor or assignee). In the event of any assignment or transfer of any of the Obligations or the Collateral, the assignor or transferor, as applicable, shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but the assignor or transferor, as applicable, shall retain all rights and powers hereby given with respect to any of the Obligations or Collateral not so assigned or transferred. All representations, warranties, and agreements of Pledgor shall be binding upon its successors and assignees. Time is of the essence of this Agreement.

6.3 WAIVER. No delay of Lender in exercising any power or right shall operate as a waiver or modification thereof, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right. No waiver by Lender of any right hereunder or of any default by Pledgor shall be binding upon Lender unless in writing, and no failure by Lender to exercise any power or right hereunder or waiver of any default by

Pledgor shall operate as a waiver of any other or further exercise of such right or power or of any further default.

6.4 TERMINATION OF SECURITY INTEREST. Upon the full and indefeasible payment of all of the Obligations, Lender shall release the security interests granted herein.

6.5 CHOICE OF LAW. This Agreement shall in all respects be governed by and enforced in accordance with the laws of the State of Oklahoma. Each party hereto waives trial by jury in any action, proceeding, or claim pertaining to this Agreement. In connection with any claim, action, or proceeding that is against a party hereto and pertains to this Agreement (including any document or agreement executed in connection herewith), the substantially prevailing party therein shall be entitled to receive, and shall be awarded, all its court costs, collection costs, and reasonable attorneys' fees.

6.6 ADDITIONAL WAIVERS. PLEDGOR EXPRESSLY AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY LENDER ON THIS AGREEMENT, ANY AND EVERY RIGHT HE, SHE OR IT MAY HAVE TO (i) INTERPOSE ANY COUNTERCLAIM THEREIN UNLESS UNDER THE APPLICABLE RULES OF COURT SUCH COUNTERCLAIM MUST BE ASSERTED IN SUCH PROCEEDING, OR (ii) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING UNLESS UNDER THE APPLICABLE RULES OF COURT SUCH SUIT, ACTION OR PROCEEDING MUST BE CONSOLIDATED WITH THE PROCEEDING BROUGHT BY LENDER.

6.7 MODIFICATIONS. No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Pledgor and Lender. No modification or limitation may be accomplished by course of conduct, usage of trade, or by the law merchant.

6.8 SEVERABILITY. In the event any provision (or any part of any provision) contained in this Agreement shall for any reason be finally held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision, or application of the provision to other circumstances) but this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein, but only to the extent it is invalid, illegal or unenforceable.

6.9 FURTHER ASSURANCES. Pledgor shall execute and deliver, or cause to be executed and delivered, such further assurances, including financing statements, as Lender from time to time may reasonably request, to accomplish the provisions of, and carry out the intent of, this Agreement.

6.10 LIMITATIONS OF LAW. If any law prohibits or limits any charge or expense provided for in this Agreement in connection with any Obligations secured hereby, then such charge or expense will not be made or incurred in connection with such Obligations beyond the limits permitted by such law.

6.11 NOTICES. Any notice, request, demand, approval, consent, and other communication that pertains to this Agreement shall be delivered in accordance with the Note.

6.12 INTERPRETATION. Whenever the context of any provisions hereof shall require it, words in the singular shall include the plural, words in the plural shall include the singular, and pronouns of any gender shall include the other gender. Captions and headings in this Agreement are for convenience only and shall not affect the construction of the Agreement. All references in this Agreement to Schedules, articles, sections, subsections, paragraphs, and subparagraphs refer to the respective subdivisions of this Agreement, unless such reference specifically identifies

another document. The terms "herein," "hereof," "hereto," "hereunder" and similar terms refer to this Agreement and not to any particular section or subsection of this Agreement. The terms "include" and "including" shall be interpreted as if followed by the words "without limitation." All references in this Agreement to sums denominated in dollars or with the symbol "$" refer to the lawful currency of the United States of America unless such reference specifically identifies another currency. For purposes of this Agreement, "person" or "persons" shall include firms, associations, partnerships (including limited partnerships), joint ventures, trusts, corporations, limited liability companies, and other legal entities, including governmental bodies, agencies, or instrumentalities, as well as natural persons. Provisions of this Agreement, unless by their terms exclusive, shall be in addition to other agreements between the parties. Unless the context indicates otherwise, definitions in the UCC apply to words and phrases in this Agreement; if UCC definitions conflict, then Chapter 9 definitions shall apply.

6.13 EXECUTION AND STORAGE.

(a) This Agreement may be executed in counterpart signature pages. Electronic and other non-original signatures on this Agreement shall be permitted, shall be deemed to be original signatures, and shall be as effective as originals for all purposes. Without limiting the foregoing, this Agreement may be executed, accepted, and/or agreed to through the use of an electronic signature in accordance with the Electronic Signatures in Global and National Commerce Act, Title 15, United States Code, §§7001 et seq., the Uniform Electronic Transaction Act, and any applicable state law. Any Agreement that is executed, accepted, and/or agreed to in conformity with such laws shall be binding on the parties hereto as though such Agreement had been physically executed using so-called "wet ink" signatures.

(b) A copy of this Agreement may be stored by each party using any electronic or digital storage method or process, and each party may destroy any original Agreement so stored. All parties hereto agree and stipulate that any reproduction of this Agreement that has been electronically or digitally stored shall be admissible in evidence as the original itself in any judicial, arbitration, or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made by each party in the regular course of business), and that any further reproduction of such reproduction shall likewise be admissible in evidence.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the first date written above.

**PLEDGOR**

**VESTA HOLDINGS, LLC**, an Oklahoma limited liability company

Signed by:

By: Marc Kulick

Name: Marc Kulick

Title: Manager

**LENDER**

**GENERAL HOLDING LLC**

DocuSigned by:

By: Brandon Yasgur

Name: Brandon Yasgur

Title: Member

**United Corporate Services, Inc.**

*Excellent Service in Extraordinary Times*

## PROJECT SUMMARY

Prepared For: **BRANDON YASGUR**

**YRC Management**

Client Matter #:

Project Manager: **Allen Wong** Project ID: **VESTA71037**

| Search/Filing Type | Jurisdiction - Recording Office | Thru Date | File Date |
|---|---|---|---|
| **Debtor: VESTA HOLDINGS, LLC** | | | |
| UCC-1 Financing Statement | OK - Oklahoma County - County Clerk of Oklahoma County | | 9/5/2025 |
| *Results: Filed* | *Comments: File#: 2025090502094473* | | |

This summary is a compilation of information obtained from public records maintained by government officials. United Corporate Services, Inc. ("UCS") makes no representation or warranty as to the accuracy or completeness of such records. UCS shall not be liable for failure to find public records indexed under names you did not request, even if such records are determined to apply to the person, entity, or property you intended to search, or for public records located in offices or indexes for which you did not request a search. The liability of UCS with respect to this report and any related transaction shall be limited to the amount of the service fee(s) charged by UCS for the preparation and delivery of this report. For purposes of conducting and reporting UCC searches, reports shall contain copies of all Active, Lapsed and Terminated filings filed after the effective date of RA9 thru a financing statements natural lapse date unless specifically instructed by the client not to do so.



EXHIBIT C

[redacted]

20250905020944 73
09/05/2025 02:43:12 PM Pgs: 3
Fee: $ 10.00
Maressa Treat, County Clerk
Oklahoma County - State of Oklahoma

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>VESTA HOLDINGS, LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>6911 S. 66th E. Ave., Suite 100 | CITY<br>Tulsa | STATE<br>OK | POSTAL CODE<br>74133 | COUNTRY<br>US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>GENERAL HOLDING LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>231 Central Avenue, 3rd Floor | CITY<br>White Plains | STATE<br>NY | POSTAL CODE<br>10606 | COUNTRY<br>US |

4. COLLATERAL: This financing statement covers the following collateral:

See attached collateral description.

3

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Oklahoma

All rights, title, and interests and any and all other interests in any Entity that are now owned or hereafter acquired by Debtor in or to any Entity, together with (i) all additional membership interests or other equity interests in any Entity now or hereafter acquired by Debtor, and (1) all options, warrants, and other rights now or hereafter acquired by Debtor in respect of such membership interests or other equity interests in any Entity (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of such Entity or otherwise), and (2) all other property, rights or instruments of any description at any time issued or issuable as an addition to or in substitution for such membership interests or other equity interests in any Entity; (ii) any certificates, instruments, or other writings representing or evidencing membership interests or other ownership interests in any Entity now or hereafter acquired by Pledgor, and all accounts and general intangibles arising out of, or in connection with, the membership interests in any Entity now or hereafter acquired by Debtor; (iii) any and all monies or property due and to become due to Debtor now or in the future in respect of its membership interests or other ownership interests in any Entity, or to which Debtor may now or in the future be entitled in its capacity as a member or other equity holder of any Entity, whether by way of a dividend, distribution, return of capital or otherwise; (iv) all other claims that Debtor now has or may in the future acquire in its capacity as a member, partner, shareholder, or other equity holder of any Entity against such Entity and its property; and (v) all rights of Debtor under any Entity's organizational documents (and all other agreements, if any, to which Debtor is a party from time to time which relate to its ownership of the membership interests or other ownership interests in any Entity), including all voting and consent rights of Debtor arising thereunder or otherwise in connection with Pledgor's ownership of the membership interests or other equity interests in any Entity.

Entity shall mean (1) a membership interest in WoodScape Investors, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of Four Hundred Thousand Dollars ($400,000); (2) a membership interest in Barcelona Best Living, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of Three Hundred Thousand Dollars ($300,000); (3) a membership interest in Riverpark Best Living Investors, LLC, a Kansas limited liability company, which includes (inter alia) a capital contribution of One Hundred Eighty-Nine Thousand Three Hundred Dollars ($189,300); (4) a membership interest in Montgomery Vesta Investors, LLC, a Kansas limited liability company, which includes (inter alia) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (5) a membership interest in Fairfax Holding Company, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (6) a membership interest in OKC3

Investors, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (7) a membership interest in Eton Investor, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (8) a membership interest in Eaton Place Investor, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of One Hundred Fifty Thousand Dollars ($150,000); (9) a membership interest in W.O. Holding Co., LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of One Hundred Thousand Dollars ($100,000); (10) a membership interest in Regency Holdings, LLC, a Kansas limited liability company, which includes (inter alia) a capital contribution of One Hundred Thousand Dollars ($100,000); (11) a membership interest in Woodland Manor Holdings, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of One Hundred Thousand Dollars ($100,000); (12) a membership interest in 727-Classen Best Living Investors, LLC, a Delaware limited liability company, which includes (inter alia) a capital contribution of Fifty Thousand Dollars ($50,000); and (13) a membership interest in Muntage Vesta Investors, LLC, a Kansas limited liability company, which includes (inter alia) a capital contribution of Forty-Nine Thousand Two Hundred Seventy-Five Dollars ($49,275).