**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| YSA Investments 1, LLC, | ) | |
| | ) | Case No. 26-12806 (SAH) |
| | ) | |
| Debtor. | ) | |

**OBJECTION TO DEBTOR'S PROOF OF INSURANCE**
(Relates to Docket No's 303, 304, and 373)

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COMES NOW, Auerbach Opportunity Fund I, LP, Auerbach Opportunity Fund III, LP, and Auerbach Opportunity Fund IV, LP (collectively, the "Movants") and parties, in interests by and through undersigned counsel, and file this Objection to Debtor's Notary Insurance [Docket Status Report], and respectfully shows the Court as follows:

1. **The debtor provided insurance evidence of only 7 of 31 properties**
   a. Of the policies filed with the Court, only two contain actual location schedules — the general liability and the equipment breakdown. Both list the same seven addresses in Tulsa and Jenks.

   b. Twenty-four properties do not appear on any filed schedule. These twenty-four properties comprise $539,278,870 of YSA's own sworn value from its SOFA filings, which results in 70.5% of its claimed assets being either underinsured or completely uninsured.

   c. The General Liability Policy was rated on 2,402 apartment units. This covers seven complexes, not thirty-one, as is reflected in the Debtor's schedules.

d. The Total Insured Value of $268,958,280 reconciles against the seven scheduled properties and nothing else.

e. The insurance production is incomplete. In Debtor's Initial Report, Palms Specialty Insurance Company, Inc is listed as the primary insurer on 7 properties: Thrive Jenks, One Eton Square Apartments, Riverpark at Kensington, Lakeside Place Apartments, Shoreline Apartments, 23 East Apartments, and Villas at Midtown [Docket 373, page 11]. None of the other properties apparently have insurance. The Court's August 28, 2026 Interim Order Authorizing Debtor's Use of Cash Collateral mandated that "on or before 11:59 p.m. CST, Wednesday, September 2, 2026, Debtor shall obtain insurance for each of the properties and shall file with the Court proof of insurance" [Docket 263, ¶ 10].

2. **The primary policy fails to identify the amount of monthly premium**

a. The property premium produced totals $292,052 across 2,402 units — **$121.59 per unit against a market rate near $550.** A complete insurance program costs approximately $1,321,100.

b. Roughly $1,029,000 of premium is unaccounted for, and it is the single largest line in the program. The Debtor has thus far failed to disclose that it was either (i) paid post-petition without disclosure, which is a cash collateral Order violation, or (ii) it was not paid, in which case the portfolio is bare.

c. The Debtor's Initial Report fails to provide an updated budget that would address this deficiency.

3. **The wrong entities are insured**

a. Every declarations page names YSA Investments I LLC. None of the disputed title-holding entities appears anywhere. Failure to name the title holding entities leaves the secured lenders in a potential untenable position.

b. The insurance information fails to establish that entities holding title to the properties are named movants.

4. **Interchange Claims Group LLC is a named insured on various coverages**

a. Interchange Claims Group LLC is a named insured on the general liability policy, a named insured on the equipment breakdown policy, and by endorsement issued September 8, 2026, a loss payee on one of the property layers.

b. Per YSA's Statement of Financial Affairs, items 28 and 31, Interchange is the Debtor's sole member at 100% and its tax parent. Mr. Diveroli is listed as Manager with 0%.

c. In the event of a claim, the equity holder is positioned to collect insurance proceeds on estate property, ahead of every creditor. This is improper.

5. **Unrepaired damage may be excluded, and the condition of the buildings is unknown**

a. One endorsement excludes "all buildings with outstanding damage" and states "Contact the underwriter if a waiver is needed." Nothing produced suggests a waiver was obtained. Thus, unreported damage appears to have no coverage.

b. Another excess insurance layer excludes loss caused directly or indirectly by unrepaired damage predating inception on September 1, 2026.

c. The upper layers of insurance coverage were also bound subject to a no-known-loss letter, and the concealment clause voids rather than reduces coverage for a material misrepresentation.

d. Upon information and belief, no loss runs, no underwriting submission and no statement of values were produced by the Debtor. It is thus unknown which properties carry unrepaired damage. Remington Ranch is one documented example, with roughly $2 million of water damage from approximately September 2025.

6. **There is a six-week absence of coverage, and the ordered information was not produced on time**

a. All coverage was incepted September 1, 2026. YSA took possession of the properties on July 20, 2026. No produced documents covers the interval. This renders the properties uninsured during that time.

b. The Court's August 28, 2026 Interim Order authorizing Debtor's use of cash collateral [Docket 263], required insurance obtained and proof filed by September 2, 2026. The produced policies were issued September 3, 4 and 8, 2026, and were not filed until September 14, 2026, and the Initial Report was filed on September 18, 2026.

c. The filings regarding insurance remain incomplete.

7. **Debtor's inaction regarding insurance is a clear violation of judge's Orders and a trustee should be appointed *sua sponte***

a. Paragraph 10 of the August 28, 2026 Interim Order Authorizing Debtor's use of cash collateral [Docket 263] required insurance for each of the Properties, with proof filed by 11:59 p.m. on September 2, 2026.

b. The first page of the Order [Docket 263] states, in bold and underlined text, that if the Debtor fails to comply with any term or condition, the Court will immediately appoint a Chapter 11 trustee *sua sponte*.

c. Failure to maintain appropriate insurance is separately enumerated as cause under 11 U.S.C. § 1112(b)(4)(C), and further highlights gross mismanagement under § 1104(a)(1).

d. An equity holder placed in the loss-payment chain for proceeds on estate property is a § 1104(a)(1) conflict on its own terms.

**8. Movants contend that the Debtor has failed to fully comply with Court's Order regarding providing proof of the nature and extent of coverage.**

Wherefore, all premises considered, Auerbach Opportunity Fund I, LP, Auerbach Opportunity Fund III, LP, and Auerbach Opportunity Fund IV, LP hereby objects to the Debtor's Proof of Insurance and further requests that because of the violation of the Interim Order Authorizing Debtor's Use of Cash Collateral [Docket 263], a Chapter 11 Trustee be appointed *sua sponte.*

Dated: September 23, 2026.

Respectfully submitted,

/s/Bret Davis
Bret Davis, OBA #15079
LAMUN MOCK CUNNYNGHAM & DAVIS, P.C.
5621 N. Classen Blvd.
Oklahoma City, OK 73118
(405) 840-5900 Fax (405) 842-3132
bdavis@lamunmock.com
Attorney for Auerbach Opportunity Fund I, LP, Auerbach Opportunity Fund III, LP, and Auerbach Opportunity Fund IV, LP

CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2026, a true and correct copy of the Objection to Debtor's Proof of Insurance was electronically served via email pursuant to the Court's ECF system upon those parties receiving electronic notice in this case.

/s/Bret Davis
Bret Davis, OBA #15079