Exhibit A

# SECURED PROMISSORY NOTE

**$3,375,000.00**

**June 13, 2025**

FOR VALUE RECEIVED, the undersigned, **AUERBACH-VESTA LLC, PUTNAM GREEN TIC INTEREST, LLC, WOODLAND MANOR TIC 1, LLC , WOODLAND MANOR'S BEST LIVING, LLC, RIDGE BEST LIVING, LLC, SHORELINES BEST LIVING INVESTORS, LLC AND LOUIS INVESTMENTS, LLC** ("Maker"), promises to pay to the order of **TOVAL VENTURES, LLC** (together with all subsequent holders of this Note, "Payee"), the amount of **$3,375,000.00** in good and sufficient U.S. funds.

**1.** Payments. The principal plus accrued interest of this Note shall be paid by Maker through fifty-two **52 consecutive weekly** payments in the amount of **$89,567.30** each. The first such payment shall be made on or before **June 20, 2025** and each subsequent payment shall be made each succeeding **Friday** until the principal plus any accrued interest is paid in full. **(Maturity Date: June 12, 2026)**

2. Interest. Interest shall accrue on the principal amount of this Note commencing from the date of execution hereof through Maturity, at the rate of **38% simple interest** per annum, taking into account at any given point in time the reduction of principal of this Note through any payments or prepayments.

3. Security.

a. Grant of Mortgage. As additional security for the full and timely payment and performance of all obligations under this Agreement and any related documents, Maker hereby agrees to execute and deliver to Payee one or more mortgage instruments (each, a "Mortgage") encumbering the real property owned by Maker, including but not limited to the properties known as Putnam Green Apartments, Woodland Manor, and Ridge, as applicable. **See Schedule A for complete legal description.**

b. Each Mortgage shall grant Lender a valid, perfected lien, subject only to permitted encumbrances, and shall be in form and substance reasonably acceptable to Lender. Borrower shall promptly execute, deliver, and record such Mortgage(s), and shall take all actions reasonably requested by Lender to evidence, perfect, and maintain the lien granted therein.

c. All amounts owing under this Note, including all principal, accrued and unpaid and unforgiven interest, and fees and costs of collection, are secured by all assets of the Debtors.

4. Pre-Payment. If Maker prepays all or any portion of the outstanding principal balance of this Note prior to the date that is six (6) months from the date of this Note, whether

voluntarily, by acceleration, or otherwise, then Maker shall, in addition to paying all accrued and unpaid interest and other sums due under this Note, pay to Payee a prepayment premium equal to six (6) months' interest on the original principal amount of this Note at the stated interest rate. Such prepayment premium shall be due and payable concurrently with any such prepayment, and shall not be subject to refund, rebate, or proration.

For the avoidance of doubt, the prepayment premium shall apply even if prepayment occurs as a result of acceleration following an Event of Default, or through sale, refinance, or any other means of early satisfaction.

5. Event of Default. An "Event of Default" under this Note shall consist of: (i) the failure to make any payment as provided for in this Note; (ii) failure to pay any attorney's fees or costs payable under this Note prior to acceleration or Maturity; (iii) the filing of any bankruptcy case by Maker or the filing of any involuntary bankruptcy case against Maker that is granted; (iv) the appointment of a receiver for Maker; (v) the dissolution or termination of Maker's corporate existence; or (vi) an uncured default under the Mortgage.

6. Cure and Default. Upon the occurrence of any Event of Default, Payee may provide notice of such Event of Default to Maker. If the Event of Default is a monetary default capable of being cured with payment, Maker shall have **FIVE (5) business** days after the transmission of said notice to cure such monetary Event of Default. If such monetary Event of Default is not timely cured, or if the Event of Default is a nonmonetary one, Maker shall be in default of this Note (the "Default") either on the next day upon the expiration of such cure period or upon the date that the notice of nonmonetary Event of Default is transmitted. Payee shall be required to give notice of a monetary Event of Default with ability to cure for the **first** monetary Events of Default. Upon the **second** monetary Event of Default, there shall be no opportunity to cure the same, and the Default shall occur on the day that notice of such fourth monetary Event of Default is transmitted.

7. Acceleration. At any time after a Default, the Payee may accelerate this Note through written notice of the same to the Maker, whereafter, immediately, all unpaid principal and accrued interest shall become immediately due and payable. For the avoidance of doubt, upon such acceleration, there shall be no forgiveness of interest.

In addition to any remedies expressly set forth herein, upon the occurrence and during the continuance of any Event of Default under this Note, Payee shall be entitled to exercise any and all rights and remedies available to it under that certain Mortgage, Assignment of Leases and Rents dated as of the date hereof (the "Mortgage"), including, without limitation, the right to foreclose on any collateral, appoint a receiver, collect rents, enforce assignments, and exercise any other remedies provided by law, in equity, or in any Loan Document (as defined in the Mortgage). All such remedies shall be cumulative and may be exercised concurrently or separately in Payee's sole discretion, and no remedy conferred upon Payee herein or in the Mortgage shall be deemed to be exclusive of any other remedy.

8. Waiver. Maker, liable for the payment of any sum of money payable on this Note, waives demand, presentment, protest, notice of nonpayment, notice of intention to accelerate, notice of protest, notice of acceleration and any and all lack of notice or diligence or any delay in collection or the filing of suit hereon which may occur, and agrees that liability on this Note shall not be affected by any renewal or extension in the time of payment hereof.

9. Costs of Collection. Upon Default, acceleration, or Maturity, whichever occurs first, and in addition to all principal and interest then due under this Note, the Maker shall pay to the Payee all costs of collecting this Note, including realizing on any collateral under the Mortgage, which costs of collection shall include all filing expenses, foreclosure expenses, litigation fees and expenses, and reasonable attorney's fees.

10. Attorney's Fees and Expenses. In the event that any action of a third party challenging, contesting, or otherwise attempting to defeat Payee's rights under this Note or the Mortgage reasonably cause Payee to incur attorney's fees and expenses to defend its right(s), then, in addition to all other amounts payable under this Note, Maker shall pay to Payee the reasonable amount of such attorney's fees and expenses no later than thirty (30) days after a demand for payment of the same is transmitted, which demand shall include appropriate supporting documents, which may be redacted solely for privilege. In the event of any dispute regarding the reasonableness of the foregoing, 120% of the asserted amount shall be tendered to Payee, who shall hold it in trust, as a condition precedent to curing any resulting Event of Default and seeking any legal redress regarding such dispute.

11. Waiver of Jury Rights. Maker hereby waives any and all right to a jury it may have with respect to this Note or any claim, cause of action, defense, or issue related to or arising under this Note, including any of the foregoing arising before or after the execution of this Note or with respect to the collection of this Note.

12. Governing Law. This Note and any dispute arising under or related to this Note shall be governed by the laws of the State of Oklahoma.

13. Venue. Maker and Payee irrevocably agree and consent to the jurisdiction and venue of any federal or state court in the state of Oklahoma.

14. Notices. Any notice under this Note shall be sent by overnight mail (FedEx, UPS, USPS etc.), and shall be considered transmitted when so sent, to the following:

Maker: Marc Kulick

Payee: ____________

15. Successors and Assigns. All of the covenants, stipulations, promises and agreements in this Note contained by or on behalf of Maker shall bind its successors and assigns, whether so expressed or not; provided, however, that Maker may not, without the prior written consent of

Payee, assign any rights, duties, or obligations under this Note. Without the consent of Maker, Payee may, in its sole discretion, at any time or from time to time while any portion of the indebtedness evidenced hereby remains unpaid, transfer, sell, assign or pledge this Note (or any portion thereof) and the Mortgage, but subject in any such instance to all other terms and provisions of this Note.

16. No Usury Intended; Usury Savings Clause. In no event shall interest contracted for, charged or received hereunder, plus any other charges in connection herewith which constitute interest, exceed the maximum interest permitted by applicable law. The amounts of such interest or other charges previously paid to the holder of the Note in excess of the amounts permitted by applicable law shall be applied by the holder of the Note to reduce the principal of the indebtedness evidenced by the Note, or, at the option of the holder of the Note, be refunded. To the extent permitted by applicable law, determination of the legal maximum amount of interest shall at all times be made by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the loan and indebtedness, all interest at any time contracted for, charged or received from the Borrower hereof in connection with the loan and indebtedness evidenced hereby, so that the actual rate of interest on account of such indebtedness is uniform throughout the term hereof.

17. Personal Guarantee. To induce and in consideration of Payee's acceptance of this Agreement, the undersigned (herein referred to as "Guarantor") jointly and severally guarantee performance of the Borrower's obligations under this Agreement and payment of all sums due hereunder. Guarantor hereby waive the benefit of 12 Okla. Stat. § 686 and 15 Okla. Stat. §§ 334, 335, 338, 340, 341, 379, 383, and 384, and any amendments thereof, and any other legal and equitable defenses available to a guarantor or surety.

18. Waiver of Service of Process. Each of the Borrowers, Guarantor, and Corporate Guarantors hereby waives any requirement of formal service of process in connection with any action or proceeding arising out of or relating to this Agreement, the Note, or any related instrument. Service of process may be made by delivering a copy of the applicable pleading, notice, or other document:

a. by certified or first-class mail, postage prepaid, to the address of record provided by the Party in this Agreement; or

b. by electronic mail (email) to the email address provided in writing by the Party for purposes of notice under this Agreement.

Each Party agrees that such service shall be deemed valid, effective, and binding to the same extent as if served by formal methods permitted under applicable law or the rules of the forum court, and hereby waives any objection to such service based on lack of personal jurisdiction or insufficiency of process.

[SIGNATURES ON FOLLOWING PAGE]

Executed: June 16th, 2025.

**RIDGE BEST LIVING, LLC**
**"Borrower"**

**Marc Louis Kulick**
Title: Authorized Signor
[redacted]
Email for Notices:
marc@vestarealproperty.com

**Address:**
4920 E 113th Street Tulsa OK 74137

**MARC LOUIS KULICK**
**"Guarantor"**

**Marc Louis Kulick**
*Individually*
[redacted]
Email for Notices:
marc@vestarealproperty.com

**Address:**
4920 E 113th Street Tulsa OK 74137

**WOODLAND MANOR'S BEST LIVING, LLC "Borrower"**

**Marc Louis Kulick**
Title: Authorized Signor
[redacted]
Email for Notices:
marc@vestarealproperty.com

**Address:**
4920 E 113th Street Tulsa OK 74137

**SHORELINES BEST LIVING INVESTORS, LLC**

**Marc Louis Kulick**
Title: Authorized Signor
[redacted]
Email for Notices:
marc@vestarealproperty.com
com
**Address:**
4920 E 113th Street Tulsa OK 74137

**PUTNAM GREEN TIC INTEREST, LLC**
**"Borrower"**

**Marc Louis Kulick**
Title: Authorized Signor
[redacted]
Email for Notices:
marc@vestarealproperty.com

**Address:**
4920 E 113th Street Tulsa OK 74137

**AUERBACH-VESTA, LLC**
**"Borrower"**

**Marc Louis Kulick**
*Individually*
[redacted]
Email for Notices:
marc@vestarealproperty.com

**Address:**
4920 E 113th Street Tulsa OK 74137

**LOUIS INVESTMENTS, LLC**
**"Borrower"**

**Marc Louis Kulick**
Title: Authorized Signor
[redacted]
Email for Notices:
marc@vestarealproperty.com

**Address:**
4920 E 113th Street Tulsa OK 74137

**WOODLAND MANOR TIC 1, LLC**
**"Borrower"**

**Marc Louis Kulick**
Title: Authorized Signor
[redacted]
Email for Notices:
marc@vestarealproperty.com

**Address:**
4920 E 113th Street Tulsa OK 74137

**Agreed and authorized by Louis Investments, LLC**

**By.**
**Name: Marc Louis Kulick**
**Title: Manager of:**
**Putnam Green TIC Interest, LLC,**
**Woodland Manor Tic 1, LLC, and**
**Ridge Best Living, LLC**

# SCHEDULE A

1. <u>RIDGE BEST LIVING, LLC</u>
   **LEGAL DESCRIPTION:**

   Blocks FIFTEEN (15) and SIXTEEN (16), in REPLAT OF RIDGEVIEW HEIGHTS, to Midwest City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

2. <u>PUTNAM GREEN APARTMENTS</u>
   **LEGAL DESCRIPTION:**

   <u>Tract 1</u>

   All of Lot ONE (1), of Block SEVEN (7), AND A part of Lot TWO (2), of Block FOUR (4), in KNIGHT LAKE ADDITION, an Addition to the City of Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof, being more particularly described as follows: Beginning at the Southeast corner of Lot 1, Block 7, Knight Lake Addition; thence North 19°15'11" East, along the East line of said Lot 1, Block 7, Knight Lake Addition, a distance of 286.12 feet to the Northeast corner of said Lot 1, Block 7, Knight Lake Addition; thence South 61°13'56" East a distance of 250.65 feet to a point on the East line of said Lot 2, Block 4, Knight Lake Addition; thence along a curve to the left whose radius is 330.00 feet along the East line of said Lot 2, Block 4, Knight Lake Addition a distance of 186.49 feet; thence South 45°00'00" West a distance of 35.36 feet; thence along a curve to the right whose radius is 570.00 feet along the South line of said Lot 2, Block 4, Knight Lake Addition a distance of 248.71 feet, more or less, to the Point of Beginning.

   <u>Tract 2</u>

   Lot FOUR (4), of Block THREE (3), in KNIGHT LAKE ADDITION, an Addition to the City of Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof.

3. **WOODLAND MANOR TIC 1, LLC**
   **LEGAL DESCRIPTION:**

The Land referred to herein below is situated in the County of Tulsa, State of Oklahoma, and is described as follows:

TRACT 1 (FEE TRACT)

A TRACT OF LAND THAT IS PART OF LOT 1, BLOCK 1, MEMORIAL SOUTH CENTER, AN ADDITION TO THE CITY OF TULSA, TULSA COUNTY, STATE OF OKLAHOMA, ACCORDING TO THE RECORDED PLAT NO. 2678, RECORDED NOVEMBER 10, 1965, SAID TRACT OF LAND BEING DESCRIBED AS FOLLOWS, TO-WIT:

COMMENCING AT A POINT THAT IS THE SOUTHEAST CORNER OF LOT 1, BLOCK 1, MEMORIAL SOUTH CENTER;

THENCE NORTH 89°59'55" WEST AND ALONG THE SOUTHERLY LINE OF SAID BLOCK 1 FOR A DISTANCE OF 374.71 FEET;

THENCE NORTH 00°00'05" EAST FOR A DISTANCE OF 90.00 FEET TO A POINT OF CURVE;

THENCE NORTHERLY AND NORTHWESTERLY ALONG A CURVE TO THE LEFT WITH A CENTRAL ANGLE OF 45°00'00" AND A RADIUS 250.00 FEET FOR A DISTANCE OF 196.35 FEET TO A POINT OF TANGENCY;

THENCE NORTH 44°59'55" WEST ALONG SAID TANGENCY FOR A DISTANCE OF 120.45 FEET TO A POINT OF CURVE;

THENCE NORTHWESTERLY AND NORTHERLY ALONG A CURVE TO THE RIGHT WITH A CENTRAL ANGLE OF 26°37'07" AND A RADIUS OF 500.00 FEET FOR A DISTANCE OF 232.29 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUING NORTHWESTERLY AND NORTHERLY ALONG A CURVE TO THE RIGHT WITH A CENTRAL ANGLE OF 5°52'40" AND A RADIUS OF 500.00 FEET FOR A DISTANCE OF 51.29 FEET TO A POINT OF TANGENCY;

THENCE NORTH 12°30'08" WEST ALONG SAID TANGENCY FOR A DISTANCE OF 64.86 FEET TO A POINT OF CURVE;

THENCE NORTHERLY AND NORTHWESTERLY ALONG A CURVE TO THE LEFT WITH A CENTRAL ANGLE OF 21°23'15" AND A RADIUS OF 250.00 FEET FOR A DISTANCE OF

93.32 FEET;

THENCE NORTH 26°00'00" EAST FOR A DISTANCE OF 243.22 FEET;

THENCE NORTH 73°00'00" EAST FOR A DISTANCE OF 195.00 FEET;

THENCE 00°00'08" WEST FOR A DISTANCE OF 250.00 FEET TO A POINT ON THE NORTHERLY LINE OF SAID BLOCK 1; THENCE NORTH 89°59'52" EAST ALONG SAID NORTHERLY LINE FOR A DISTANCE OF 421.94 FEET TO THE NORTHEAST CORNER OF SAID BLOCK 1;

THENCE SOUTH 00°08'45" EAST ALONG THE EASTERLY LINE OF SAID LOT 1 FOR A DISTANCE OF 1069.35 FEET;

THENCE NORTH 35°09'14" WEST FOR A DISTANCE OF 277.35 FEET;

THENCE NORTH 84°33'37" WEST FOR A DISTANCE OF 80.80 FEET;

THENCE NORTH 44°16'58" WEST FOR A DISTANCE OF 187.68 FEET;

THENCE SOUTH 72°16'01" WEST FOR A DISTANCE OF 78.65 FEET;

THENCE NORTH 58°16'10" WEST FOR A DISTANCE OF 88.50 FEET;

THENCE SOUTH 70°55'52" WEST FOR A DISTANCE OF 139.84 FEET TO THE POINT OF BEGINNING.

TRACT 2 (FEE TRACT)

A TRACT OF LAND THAT IS PART OF LOT 1, BLOCK 1, MEMORIAL SOUTH CENTER, AN ADDITION TO THE CITY OF TULSA, TULSA COUNTY, STATE OF OKLAHOMA, ACCORDING TO THE RECORDED PLAT NO. 2678, RECORDED NOVEMBER 10, 1965, SAID TRACT OF LAND BEING DESCRIBED AS FOLLOWS, TO-WIT;

BEGINNING AT A POINT THAT IS THE SOUTHEAST CORNER OF LOT 1, BLOCK 1, MEMORIAL SOUTH CENTER;

THENCE NORTH 89°59'55" WEST AND ALONG THE SOUTHERLY LINE OF SAID BLOCK 1 FOR A DISTANCE OF 374.71
FEET;

THENCE NORTH 00°00'05" EAST FOR A DISTANCE OF 90.00 FEET TO A POINT OF CURVE;

THENCE NORTHERLY AND NORTHWESTERLY ALONG A CURVE TO THE LEFT WITH A CENTRAL ANGLE 45°00'00" AND A RADIUS OF 250.00 FEET FOR A DISTANCE OF 196.35 FEET TO A POINT OF TANGENCY;

THENCE NORTH 44°59'55" WEST ALONG SAID TANGENCY FOR A DISTANCE OF 120.45 FEET TO A POINT OF CURVE;

THENCE NORTHWESTERLY AND NORTHERLY ALONG A CURVE TO THE RIGHT WITH A CENTRAL ANGLE OF 26°37'07" AND A RADIUS OF 500.00 FEET FOR A DISTANCE OF 232.29 FEET;

THENCE NORTH 70°55'52" EAST FOR A DISTANCE OF 139.84 FEET;

THENCE SOUTH 58°16'10" EAST FOR A DISTANCE OF 88.50 FEET;

THENCE NORTH 72°16'01" EAST FOR A DISTANCE OF 78.65 FEET;

THENCE SOUTH 44°16'58" EAST FOR A DISTANCE OF 187.68 FEET;

THENCE SOUTH 84°33'37" EAST FOR A DISTANCE OF 80.80 FEET;

THENCE SOUTH 35°09'14" EAST FOR A DISTANCE OF 277.35 FEET TO A POINT ON THE EASTERLY LINE OF SAID BLOCK 1;

THENCE SOUTH 00°08'45" EAST ALONG SAID EASTERLY LINE FOR A DISTANCE OF 202.16 FEET TO THE POINT OF BEGINNING.