**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br>YSA INVESTMENTS 1, LLC,<br>Debtor. | Case No. 26-12806-SAH<br>Chapter 11 |

**DEBTOR'S APPLICATION TO EMPLOY CBRE, INC., AS BROKER, EFFECTIVE AS OF SEPTEMBER 28, 2026, AND NOTICE OF OPPORTUNITY FOR HEARING**

**NOTICE OF OPPORTUNITY FOR HEARING**

**Your rights may be affected. You should read this Document carefully and consult your attorney about your rights and the effect of this Document.** If you do not want the Court to grant the motion, or you wish to have your views considered, you must file a written response to the motion with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean McGee Avenue, Oklahoma City, OK 73102 no later than 14 days from the date of filing of the motion. You should also serve a file-stamped copy of the response to the undersigned [and others who are required to be served] and file a certificate or affidavit of service with the Court.

**[Note – this is a flat fourteen (14) days regardless of the manner of service.]**

Debtor, YSA Investments 1, LLC (the "Debtor"), by and through the undersigned counsel, respectfully files this *Debtor's Application to Employ CBRE, Inc. as Broker, Effective as of September 28, 2026* (the "Application"). In support of this Application, the Debtor submits the Declaration of Jeremy McGown (the "Declaration") attached hereto as **Exhibit 1**, which is hereby incorporated by reference. In further support of this Application, the Debtor would show the Court as follows:

## JURISDICTION AND STATUTORY AUTHORITY

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The statutory predicates for the relief requested are sections 105, 327, and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the Western District of Oklahoma (the "Local Rules").

## BACKGROUND

4. On July 28, 2026 (the "Petition Date"), the Debtor filed a voluntary petition with the United States Bankruptcy Court for the District of Delaware pursuant to Chapter 11 of the Bankruptcy Code.

5. On August 14, 2026, this case was transferred to this Court.

6. Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtor has retained possession of its assets as a debtor in possession and is continuing to operate its business.

7. No trustee, examiner, or committee has been appointed in this Chapter 11 case.

8. On September 18, 2026, the Debtor filed an *Application For Entry of an Order Shortening Time for Objection Deadline and for Expedited Hearing of (A) Debtor's Expedited Motion for Entry of an Order (I) Approving Bid Procedures in Connection with the Sale of the Debtor's Interests in the 727 Lofts Property, (II) Authorizing and Approving the Sale of Debtor's Property Free and Clear of Liens, Claims and Encumbrances and (III) Granting Related Relief, (B) Debtor's Expedited Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Approval of Settlement Agreement between the Debtor and ACRE Q018 Retention Holder LLC, and (C) Debtor's Application to Employ CBRE, Inc. as Broker, Effective as of September 18, 2026* [Doc. 370] (the "Motion to Shorten"), which details the Agreement by and efforts of the Debtor,

ACRE, and the chapter 11 trustee for the 727 Lofts Cases to market and sell the 727 Lofts Property.[1]

9. Pursuant to the Agreement and to meet the milestones set forth therein, the Debtor seeks authority to retain CBRE, Inc. ("CBRE") to act as broker for the 727 Lofts Property. A copy of the Exclusive Sales Listing Agreement between CBRE, the Debtor, and the 727 Lofts Cases (together with the Debtor, "Sellers") is attached hereto as **Exhibit 2** (the "Listing Agreement").

## RELIEF REQUESTED AND BRIEF IN SUPPORT

10. This Application seeks authorization for the employment of CBRE pursuant to Bankruptcy Code sections 327 and 328 to serve as broker for the Sellers in conjunction with the marketing and sale of the 727 Lofts Property.

11. CBRE is a commercial real estate services and investment firm, with corporate headquarters in Dallas, Texas, and global financial headquarters at Lever House in Midtown Manhattan. CBRE is the world's largest commercial real estate services and investment firm based on 2025 revenue. CBRE serves approximately ninety of the companies on the Fortune 100.

12. CBRE has brokers located in the Tulsa and Oklahoma City, Oklahoma, marketplaces. CBRE and the Sellers contemplate Tulsa serving as lead broker throughout the engagement with the Sellers.

13. The anticipated scope of services to be provided by CBRE to the Sellers are as follows:

(a) CBRE will serve as the exclusive broker, to market and list for sale the 727 Lofts Property;

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion to Shorten and the Debtor's filings related to the 727 Lofts Property.

> (b) CBRE will market the 727 Lofts Property using such advertising, canvassing, solicitation of brokers representing prospective purchasers, and other promotional and marketing activities as CBRE and Sellers may agree upon;
>
> (c) Sellers will refer to CBRE all inquiries it receives relating to the 727 Lofts Property, and CBRE will handle all negotiations on Seller's behalf, at Seller's direction; and,
>
> (d) CBRE will present to Sellers all bona fide offers and assist Sellers with analyzing each offer and developing and negotiating counteroffers.

14. Bankruptcy Code section 327(a) permits a debtor in possession, with court approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the debtor in carrying out the debtor's duties. 11 U.S.C. § 327(a). Bankruptcy Code section 101(14) defines a "disinterested person" as a person that:

> (a) is not a creditor, an equity security holder, or an insider;
>
> (b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (c) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

15. Bankruptcy Code section 328(a) authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer . . . ." 11 U.S.C. § 328(a).

16. Sellers will require substantial assistance with the marketing and sale process for the 727 Lofts Property. It is necessary for the Sellers to retain outside professionals to assist with

that process. Doing so will help in maximizing the value received for the Debtor's estate and ensure that a full and complete marketing and sale process is accomplished.

17. To the best of the Debtor's knowledge, CBRE is (a) a disinterested person as defined by Bankruptcy Code section 101(14), (b) does not hold or represent an interest adverse to the Debtor or its estate with respect to matters as to which CBRE is to be employed, and (c) has no connection to the Debtor, its creditors, or related parties, other than as may be disclosed in the Declaration.

18. The Listing Agreement provides, in part, that the Sellers agree to pay CBRE a flat commission of $100,000.00, inclusive of all out-of-pocket expenses incurred by CBRE in connection with the marketing and sale process for the 727 Lofts Property.[2]

19. Subject to approval by the Bankruptcy Court, CBRE intends to charge as set forth in the Listing Agreement.

20. CBRE intends to apply for compensation for its professional services rendered to the Debtor in this Chapter 11 Case in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

21. The Debtor submits that the terms and conditions of CBRE's retention, as described herein, are reasonable and in the best interests of the Debtor, its estate, and all parties in interest.

[2] The following summary is intended to be illustrative and not a complete representation of all terms and conditions of the Listing Agreement. To the extent this paragraph is inconsistent with the Listing Agreement, the terms of the Listing Agreement shall control. Further, for the avoidance of doubt, CBRE's compensation pursuant to the Listing Agreement is for one flat fee to market and sell the 727 Lofts Property, irrespective of whether CBRE is retained in the YSA case and/or 727 Lofts case. Upon information and belief, the chapter 11 trustee for the 727 Lofts Cases is or will be seeking to employ CBRE as broker for the 727 Lofts Property in the 727 Lofts cases.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the Debtor respectfully requests that this Court enter an order, effective as of the date of filing this Application, authorizing the employment of CBRE as broker for the 727 Lofts Property. A proposed order granting this Application is attached hereto as **Exhibit 3**.

Respectfully submitted,

*/s/ Jason A. Sansone*

Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
Nicholas J. Candido, OBA No. 36069
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 – facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
njcandido@phillipsmurrah.com
**Proposed Attorneys**
**for YSA Investments 1, LLC**

**CERTIFICATE OF SERVICE**

This is to certify that on the 28th day of September, 2026, true and correct copies of the above and foregoing were mailed by first class mail, postage prepaid, to all parties on the attached Service List.

*/s/ Jason A. Sansone*
Jason A. Sansone, OBA No. 30913

**SERVICE LIST**

ACRE Q018 Retention Holder LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Axonic Capital LLC
390 Park Avenue, 15th Floor
New York, NY 10022

Bancorp Bank, NA
1200 South Pine Island Road
Plantation, FL 33324

Berkadia Commercial Mortgage LLC
323 Norristown Rd., Suite 300
Ambler, PA 19002

BMO
320 South Canal Street
Chicago, IL 60606

Cohen + Company
3 Columbus Circle, 24th Floor
New York NY 10019

Community Loan Servicing LLC
4425 Ponce de Leon Blvd, Suite 300
Miami, FL 33146

CREO QRS NP LLC
CREO QRS VC LLC
251 Little Falls Drive
Wilmington, DE 19808

Federal National Mortgage Assn
1100 15th Street NW
Washington, DC 20005

First United Bank and Trust Co
1400 West Main
Durant, OK 74701

Legacy Bank
123 East Chicago Ave
Colwich, KS 67030

Newmark (Newmark Knight Frank)
125 Park Avenue
New York, NY 10017

NorthMarq
3500 American Blvd W, Suite 500
Bloomington, MN 55431

SG Capital Partners LLC
750 Washington Blvd, Suite 1050
Stamford, CT 06901

Stride Bank
324 West Broadway Avenue
Enid, OK 73701

YSA Investments 1, LLC
848 Brickell Ave., Suite PH5
Miami, FL 33131

727 Lofts Best Living LLC
850 New Burton Rd 201
Dover, DE 19904

727 Lofts Holdings
850 New Burton Rd 201
Dover, DE 19904

A-V 23 East Owner LLC
251 Little Falls Drive
Wilmington, DE 19808

A-V Classen Owner LLC
251 Little Falls Drive
Wilmington, DE 19808

A-V Village Creek Owner LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

ACRE Q018 Retention Holder LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

American Fiduciary Services LLC
10845 Griffith Peak Dr, Suite 200A
Las Vegas, NV 89135

Asset Holder LLC
691 South 66th East Ave 100
Tulsa, OK 74133

Auerbach-Vesta LLC
251 Little Falls Drive
Wilmington, DE 19808

Axonic Multifamily Bridge SPV
(BC) Trust c/o Axonic Capital LLC
520 Madison Avenue
New York, NY 10022

Axonic Capital LLC
390 Park Avenue, 15th Floor
New York, NY 10022

B&J Woodscape/Oklahoma City LLC
6911 South 66th Avenue 100
Tulsa, OK 74133

Barcelona Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Bartlesville Best Living LLC
6911 South 66th East Ave 100
Tulsa, OK 74133

Boomar Remodeling LLC
3009 SW 54th Street
Oklahoma City, OK 73119

Bryan Hills Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

City of Stillwater Oklahoma
723 South Lewis Street
Stillwater, OK 74074

Copperfield Apartments LP
6911 South 66th East Avenue 100
Tulsa, OK 74133

CREO QRS NP LLC
251 Little Falls Drive
Wilmington, DE 19808

Dechert LLP
2929 Arch Street
Philadelphia, PA 19104

Drexel Flats Acquisition TIC LLC
300 Creek View Road 209
Newark, DE 19711

Drexel Flats Acquisition LLC
300 Creek View Road 209
Newark, DE 19711

Eaton Place Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Eaton Place TIC 1 LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Federal National Mortgage Assn
1100 15th Street NW
Washington, DC 20005

GableGotwals
BOK Park Plaza, Suite 2200
499 West Sheridan Ave.
Oklahoma City, OK 73102

Jenks Best Living LLC
5251 West 116th Place 200
Leawood, KS 66211

Greenberg Traurig, LLP
One Vanderbilt Ave., Suite 400
New York, NY 1017

Hofland Lollman PLLC
401 South Boston Ave., Suite 500
Tulsa, OK 74103

KDL Discovery
9023 Columbine Road
Eden Prairie, MN 55347

Lofts at North Penn Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Lakeside Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Louis Investments LLC
5251 West 116th Place 200
Leawood, KS 66211

Marc Kulick
4920 East 113th Street
Tulsa, OK 74137

Montgomery Apartments Holdings
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Muntage Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Ready Capital Mort Financing
2023 FL 12
251 Little Falls Drive
Wilmington, DE 19808

One Eton Square LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

One Eton TIC 1 LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Putnam Green TIC Interest LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Remington Rach's Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Ridge Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Riverpark Best Living LLC
300 Creek View Road 209
Newark, DE 19711

Springdale Village's Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Summer Oaks Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Ten Seven Security
4870 South Lewis Avenue #207
Tulsa, OK 74105

Term Fund III MRA Seller LLC
251 Little Falls Drive
Wilmington, DE 19808

TRDWind Capitol LLC
1999 Bryan Street 900
Dallas, TX 75201

TU Properties LLC
511 Oak Street
Kansas City, MO 64106

Tuscany Village Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Vesta Holdings LLC
6911 South 66th East Ave 100
Tulsa, OK 74133

Vesta-Seminole Ridge LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Villas at Midtown Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Westlake Hardware Inc
14000 Marshall Drive
Lanexa, KS 66215

Woodland Manor's Best Living LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Woodland Manor TIC 1 LLC
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Internal Revenue Service
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101

Oklahoma Employment Security
Commission / Service of Process
PO Box 52003
Oklahoma City, OK 73152-2003

Oklahoma Tax Commission
Oklahoma City, OK 73194

Delaware State Treasury
820 Silver Lake Blvd., Suite 100
Dover, DE 19904-2464

Empire Protection Services LLC
14083 SH 51
Coweta OK 74429

Rasa Floors and Carpet Cleaning LLC
Reynolds Ridings Vogt Robertson PLLC
101 Park Avenue Suite 1010
Oklahoma City OK 73102

Rasa Floors and Carpet Cleaning LLC
PO Box 110067
Carrollton TX 75011

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **727 LOFTS BEST LIVING, LLC,**[1] ***et al.*** | § | **CASE NO. 26-12825-SAH** |
| | § | |
| **Debtors.** | § | |

**DECLARATION OF JEREMY MCGOWN**
**IN SUPPORT OF TRUSTEE'S APPLICATION TO EMPLOY**
**CBRE, INC. AS BROKER, EFFECTIVE AS OF SEPTEMBER 18, 2026**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, I, Jeremy McGown, declare that the following is true to the best of my knowledge, information, and belief:

1. I am Managing Executive Director for CBRE, Inc. ("CBRE"), which maintains an office at 521 East 2nd Street, Suite 700, Tulsa, OK 74120, and I am authorized to execute this affidavit (the "Affidavit") on behalf of CBRE. CBRE is an indirect subsidiary of CBRE Group, Inc., which is a commercial real estate services and investment firm headquartered in Dallas, Texas.

2. The facts set forth in this declaration are based upon my personal knowledge, discussions with other CBRE employees, and CBRE's business records that were reviewed by me or other CBRE employees acting under my supervision and direction. Except to the extent otherwise noted, I have personal knowledge of the matters set forth herein. To the extent any information disclosed in this declaration requires amendment or modification upon CBRE's completion of further review or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended and modified information.

[1] The Debtors in these chapter 11 cases being jointly administered and their respective case numbers are: 727 Lofts Best Living, LLC (Case No. 26-12825-SAH) and 727 Lofts Holdings, LLC (Case No. 26-12826-SAH).

3. CBRE has been contacted by Daniel J. Sherman, the chapter 11 trustee appointed in the above-captioned cases (the "Trustee") regarding serving as broker for the estates in conjunction with a proposed sale of the 727 Lofts Property.[2]

4. CBRE and its affiliates comprise the world's largest commercial real estate services and investment firm. CBRE serves clients through four business segments: (i) advisory (leasing, sales, debt origination, mortgage servicing, and valuations); (ii) building operations (facilities management, property management, and flex space); (iii) project management (program management, project management, and cost consulting); and (iv) real estate investments (investment management and development). Through its diversified and comprehensive business segments, CBRE evaluates and advises clients on a wide variety of commercial real estate matters throughout the country, and it provides extensive brokerage services in all major U.S. markets. CBRE serves approximately ninety of the companies on the Fortune 100.

5. CBRE has brokers located in the Tulsa and Oklahoma City, Oklahoma, marketplaces. CBRE and the Sellers contemplate Tulsa serving as lead broker throughout the engagement with the Sellers.

6. The anticipated scope of services to be provided by CBRE to the Sellers are as follows:

(a) CBRE will serve as the exclusive broker to market and list for sale the 727 Lofts Property;

(b) CBRE will market the 727 Lofts Property using such advertising, canvassing, solicitation of brokers representing prospective purchasers, and other promotional and marketing activities as CBRE and Sellers may agree upon;

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the *Trustee's Application to Employ CBRE, Inc. as Broker, Effective as of September 18, 2026* and contemporaneous filings related to the 727 Lofts Property.

(c) Sellers will refer to CBRE all inquiries it receives relating to the 727 Lofts Property, and CBRE will handle all negotiations on Seller's behalf, at Seller's direction; and,

(d) CBRE will present to Sellers all bona fide offers and assist Sellers with analyzing each offer and developing and negotiating counteroffers.

7. The Listing Agreement, attached to the *Trustee's Application to Employ CBRE, Inc. as Broker, Effective as of September 18, 2026* as Exhibit 2, provides, in part, that the Sellers agree to pay CBRE a flat commission of $100,000.00, inclusive of all out-of-pocket expenses incurred by CBRE in connection with the marketing and sale process for the 727 Lofts Property.[3]

8. Subject to approval by the Court, CBRE intends to charge as set forth in the Listing Agreement. I believe that the compensation terms summarized above and detailed in the Listing Agreement are fair in all respects and are comparable to terms charged by similarly situated real estate firms for comparable engagements. Further, these compensation terms are consistent with CBRE's normal and customary compensation terms for engagements of similar size, scope, and complexity as this one.

9. CBRE intends to apply for compensation for its professional services rendered to the Trustee and the estates in this Chapter 11 Case in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

[3] The following summary is intended to be illustrative and not a complete representation of all terms and conditions of the Listing Agreement. To the extent this paragraph is inconsistent with the Listing Agreement, the terms of the Listing Agreement shall control. Further, for the avoidance of doubt, CBRE's compensation pursuant to the Listing Agreement is for one flat fee to market and sell the 727 Lofts Property, irrespective of whether CBRE is retained in the YSA case and/or 727 Lofts cases. Upon information and belief, YSA is or will be seeking to employ CBRE as broker for the 727 Lofts Property in YSA Bankruptcy Case.

10. In connection with the proposed retention of CBRE in this case, the Trustee provided CBRE with a list of interested parties in their case, and CBRE undertook to determine whether it had any connections with those parties in accordance with Fed. R. Bankr. P. 2014(a).

11. Specifically, CBRE undertook a comprehensive review of the interested parties through searches on the client databases of CBRE and the domestic affiliates of CBRE to determine whether they had any connections with those interested parties. However, CBRE did not perform searches on the client databases of its foreign affiliates because (i) the businesses of those foreign affiliates are operated separately from the domestic operations of CBRE, (ii) the foreign affiliates maintain separate client data bases that CBRE cannot directly access, and (iii) requiring searches on the foreign data bases would be unduly burdensome and costly to CBRE under the circumstances of its anticipated engagement in this case.

12. Except as specifically set forth herein, neither I nor CBRE, to the best of my knowledge, represents any other entity in conjunction with either Debtor's Chapter 11 case. In addition, except as specifically set forth herein, to the best of my knowledge, neither I nor CBRE is an insider of either Debtor, nor has any connection with either Debtor, any of its affiliated entities, its creditors, or any other parties in interest herein, or its respective attorneys and accountants, except as otherwise disclosed herein.

13. Neither I nor CBRE, insofar as I have been able to ascertain, holds or represents any interest adverse to the estates with respect to the matters upon which CBRE is to be engaged.

14. CBRE is and has been involved in numerous sales and participates in transactions that involve many different parties. While CBRE may have been involved in prior or current transactions involving certain parties in interest in either Debtor's Chapter 11 case, to the best of

my knowledge, none of these relationships create interests materially adverse to the estates in matters upon which CBRE is to be employed, and none are in connection with this case.

15. CBRE and its principals: (i) are not equity security holders, or insiders of either Debtor or its bankruptcy estate; (ii) are and were not, within two years before the date of the filing of the petition, directors, officers, or employees of either Debtor; and (iii) do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, either Debtor, or for any other reason, except as specifically disclosed and described herein.

16. Neither I nor CBRE, insofar as I have been able to ascertain, holds or represents any interest adverse to the estate with respect to the matters upon which CBRE is to be engaged. I believe that the facts reflected above do not indicate an actual or apparent conflict of interest with respect to such matters.

17. I believe CBRE is a "disinterested person" within the meaning of Bankruptcy Code section 101(14).

18. No promises have been received by CBRE as to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code. CBRE has no agreement with any other entity to share with such entity any compensation received by CBRE in connection with either Debtor's Chapter 11 case.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on September 28, 2026

Jeremy McGown

Jeremy McGown

# EXHIBIT 2

CBRE

# EXCLUSIVE SALES LISTING AGREEMENT

This Exclusive Sales Listing Agreement ("Agreement") is entered into as of September 25, 2026 ("Effective Date"), by and between CBRE, Inc., ("CBRE"), YSA Investments 1, LLC ("YSA"), and Daniel J. Sherman, solely in his capacity as Chapter 11 bankruptcy trustee of 727 Lofts Best Living, LLC ("Trustee" and together with YSA, collectively, "Seller"). In consideration of the mutual covenants and agreements contained in this Agreement, CBRE and Seller agree as follows:

1. The Agreement begins on the Effective Date and ends six (6) months thereafter (the "Term"). Thereafter, the Term continues for an additional six months unless terminated by either party on thirty (30) days' prior written notice.

2. Seller appoints CBRE, during the Term, as its exclusive broker with the exclusive right to list and market for sale the property located at 727 E Main Pl., Jenks, OK 74037, 727 Lofts ("Property") (which includes portions thereof).

3. One or more CBRE brokers will be designated to assist in the sale of the Property (the "Listing Team").

4. CBRE will market the Property using such advertising, canvassing, solicitation of brokers representing prospective purchasers, including CBRE brokers not members of the Listing Team (collectively, "Outside Brokers"), and other promotional and marketing activities as CBRE and Seller may agree upon, and Seller will reimburse CBRE for actual, pre-approved out-of-pocket expenses incurred in connection therewith up to a maximum amount of Zero Dollars ($0.00). CBRE is permitted to place its marketing signs on the Property during the Term as CBRE deems appropriate.

5. Seller will refer to CBRE all inquiries it receives relating to the Property, and CBRE will handle all negotiations on Seller's behalf, at Seller's direction. CBRE will present to Seller all bona fide offers and assist Seller with analyzing each offer and developing and negotiating counteroffers. All business and legal decisions must be made solely by Seller and all binding agreements must be executed and delivered solely by Seller. Seller agrees that it and/or its legal and tax professionals are solely responsible for evaluating the tax consequences, offers, and creditworthiness of prospective purchasers. All final business and legal decisions must be made solely by Seller.

6. If, during the Term, Seller enters into a contract for the Sale (as hereinafter defined) of all or any portion of the Property with a purchaser, whether procured by CBRE, Seller, an Outside Broker, or anyone else, and such Sale closes (whether during or after the Term), Seller will pay CBRE a commission at closing (i.e., upon the passing of title (or equivalent final and binding transactional documents)) of One-Hundred Thousand Dollars ($100,000). If an Outside Broker procures a purchaser, Seller and CBRE will jointly require the Outside Broker to obtain its compensation solely from its own client, not from Seller or CBRE.

   a. "Sale" also includes, in addition to a conventional sale of a fee simple interest, joint ventures, swaps, and any other transaction, however characterized, by which Seller's equity in the Property is transferred to a third party for consideration.

7. If, within one hundred eighty (180) days following the expiration of the Term or earlier termination of the Agreement (the "Post-Term"), Seller enters into a contract for the Sale of all or any portion of the Property with a prospective purchaser who either submitted an offer or received an offer at Seller's request, to purchase the Property during the Term ("Existing Prospect"), and such Sale closes (whether during or after the Term), Seller will pay CBRE a commission in accordance with Section 6 above if and when such Sale closes. If, at the expiration of the Post-Term, a contract of sale is out for signature or being actively negotiated, the Post-Term will be automatically extended with respect to such Existing Prospect(s) for as long as negotiations are ongoing. CBRE will submit to Seller a list of such Existing Prospects no later than fifteen (15) business days following the expiration or termination of the Term, provided, however, that CBRE will not be required to include Existing Prospects who have executed a term sheet or letter of intent or are actively negotiating a contract of sale for the

Property.

8. The Listing Team are Seller's designated agents to the exclusion of CBRE's other licensees. Seller acknowledges that CBRE is an international brokerage firm and may represent prospective purchasers for the Property. In such instances, CBRE will implement its usual internal safeguards to assure confidentiality to both Seller and the prospective purchaser and will make disclosures as may be required under governing law.

9. Seller acknowledges that CBRE and its affiliates provide a wide range of real estate services and certain CBRE affiliates (including employees), may: (a) assist with the sale of the Property; (b) represent clients who have competing interests in such transaction(s), including assisting prospective purchasers with the financing or valuation of the Property, and (c) pay and/or receive referral fees and other compensation relating to the foregoing, including to and from CBRE.

10. . If either party initiates a legal proceeding against the other party relating to this Agreement, the prevailing party will recover from the non-prevailing party all its (i) reasonable attorneys' fees and costs, (ii) expert-related fees and costs, and (iii) other related expenses. Neither party will be entitled to punitive, special and/or consequential damages, and each party waives all rights to and claims for relief other than for compensatory damages. **TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY KNOWINGLY AGREES TO WAIVE ANY AND ALL RIGHTS TO HAVE ANY DISPUTE RELATING TO OR ARISING FROM THIS AGREEMENT DETERMINED BY A JURY.** The parties hereby agree, understand, and acknowledge that any and all legal proceedings arising out of a dispute as to the meaning of or performance under this Agreement shall be filed and maintained only in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court"), and that such court will have exclusive jurisdiction over any legal proceeding arising out of or concerning any term, part or provision of this Agreement.

11. CBRE has the right to enter the Property, upon appointment, at any time during regular business hours for the purpose of showing the Property to prospective purchasers. Seller will cooperate with CBRE to effect a sale of the Property as contemplated hereby including, but not limited to, providing CBRE promptly on request with relevant documents, information, and materials concerning the Property, the improvements thereon, leases, financing, and other matters, as well as a recent plat or survey of the Property, and current evidence of Seller's good and marketable title to the Property.

12. Seller acknowledges that CBRE is not obligated to and has made no independent investigation of the physical conditions of the Property including, but not limited to, the condition of all structures (exterior and interior) on the Property, the electrical and mechanical systems thereof, the fixtures, personal property, and equipment therein, or of any environmental matters with respect thereto, or of hazardous substances thereon, if any (collectively, the "Physical Conditions"). All documents and materials, investigations, reports and information with respect to the Physical Conditions are to be prepared by or for Seller and Seller agrees to disclose any such information in Seller's possession to CBRE and prospective purchasers. CBRE is authorized to furnish such information to prospective purchasers on Seller's behalf, and Seller (as between Seller and CBRE) will be solely responsible for same.

13. Seller represents and warrants that it (i) is the fee owner of the Property, and (ii) has the full authority to enter into this Agreement without violating any other agreement or contractual obligation.

14. State Required Disclosures:

   a. The initial list price for the Property shall be unpriced, which may be modified or adjusted by Seller.

   b. Seller acknowledges that, prior to the execution of the Agreement, Seller received the Disclosure to Seller or Buyer of Brokerage Duties, Responsibilities and Services promulgated by the Oklahoma Real Estate Commission, the contents of which are hereby incorporated as material terms into this Agreement. (59 OK 858-353)

15. CBRE may use aggregated, anonymized data from Seller's use of CBRE's services to enhance performance, generate innovative insights, and develop new products and offerings. Artificial intelligence (AI) technologies may be applied in these processes, including for industry benchmarking and research, without identifying individual clients. CBRE agrees that all data collection, use, and disclosure, including any AI-driven activities, will comply with applicable confidentiality requirements, data protection laws, and AI regulations.

16. This Agreement: (i) expresses the parties' entire agreement with respect to the matters covered by this Agreement; (ii) supersedes all prior understandings between them on such matters, oral or written; (iii) is governed by the laws of the state in which the Property is located (without regard to its conflict of laws principles); (iv) will be binding on their lawful representatives, successors, designees, and assigns; and (v) may not be altered, or terminated except in a writing signed by each. This Agreement may be executed in one or more counterparts, which will be deemed effective and binding on both sides when completed and exchanged. Digital and other electronic signatures and copies of electronic and manual signatures of this Agreement transmitted by portable document format (PDF) or email are binding and fully effective as provided by governing law.

17. . This effectiveness of this Agreement and each party's rights and obligations hereunder are conditioned in all respects on the approval of this Agreement by the Bankruptcy Court. If any part of this Agreement is not approved by the Bankruptcy Court for any reason, this Agreement will be null and void and of no further force and effect.

**AGREED:**

**CBRE, INC.**

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

**YSA INVESTMENTS 1, LLC**

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

**DANIEL J. SHERMAN, CHAPTER 11 TRUSTEE OF 727 LOFTS BEST LIVING, LLC**

By: Daniel J Sherman

Name: DANIEL J. SHERMAN

Title: Chapter 11 Trustee

Date: 9/25/26

**AGREED:**

**CBRE, INC.**

By: ________________________________

Name: ________________________________

Title: ________________________________

Date: ________________________________

**YSA INVESTMENTS 1, LLC**

By: ________________________________

Name: Aharon Diveroli

Title: Manager

Date: 09/25/2026

**DANIEL J. SHERMAN, CHAPTER 11 TRUSTEE OF 727 LOFTS BEST LIVING, LLC**

By: ________________________________

Name: ________________________________

Title: ________________________________

Date: ________________________________

13. Seller represents and warrants that it (i) is the fee owner of the Property, and (ii) has the full authority to enter into this Agreement without violating any other agreement or contractual obligation.

14. State Required Disclosures:

a. The initial list price for the Property shall be unpriced, which may be modified or adjusted by Seller.

b. Seller acknowledges that, prior to the execution of the Agreement, Seller received the Disclosure to Seller or Buyer of Brokerage Duties, Responsibilities and Services promulgated by the Oklahoma Real Estate Commission, the contents of which are hereby incorporated as material terms into this Agreement. (59 OK 858-353)

15. CBRE may use aggregated, anonymized data from Seller's use of CBRE's services to enhance performance, generate innovative insights, and develop new products and offerings. Artificial intelligence (AI) technologies may be applied in these processes, including for industry benchmarking and research, without identifying individual clients. CBRE agrees that all data collection, use, and disclosure, including any AI-driven activities, will comply with applicable confidentiality requirements, data protection laws, and AI regulations.

16. This Agreement: (i) expresses the parties' entire agreement with respect to the matters covered by this Agreement; (ii) supersedes all prior understandings between them on such matters, oral or written; (iii) is governed by the laws of the state in which the Property is located (without regard to its conflict of laws principles); (iv) will be binding on their lawful representatives, successors, designees, and assigns; and (v) may not be altered, or terminated except in a writing signed by each. This Agreement may be executed in one or more counterparts, which will be deemed effective and binding on both sides when completed and exchanged. Digital and other electronic signatures and copies of electronic and manual signatures of this Agreement transmitted by portable document format (PDF) or email are binding and fully effective as provided by governing law.

17. . This effectiveness of this Agreement and each party's rights and obligations hereunder are conditioned in all respects on the approval of this Agreement by the Bankruptcy Court. If any part of this Agreement is not approved by the Bankruptcy Court for any reason, this Agreement will be null and void and of no further force and effect.

**AGREED:**

**CBRE, INC.**

By: Jeremy McGown

Name: Jeremy McGown

Title: Executive Managing Director

Date: September 28, 2026

**YSA INVESTMENTS 1, LLC**

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

**DANIEL J. SHERMAN, CHAPTER 11 TRUSTEE OF 727 LOFTS BEST LIVING, LLC**

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

## OKLAHOMA REAL ESTATE COMMISSION

## DISCLOSURE TO SELLER OR BUYER OF BROKERAGE DUTIES, RESPONSIBILITIES AND SERVICES

**This notice** may be part of or attached to any of the following:

- ☐ Buyer Brokerage Agreement
- ☑ Listing Brokerage Agreement
- ☐ Option Agreement
- ☐ Sales Agreement
- ☐ Exchange Agreement
- ☐ Other ____________________

**1. Duties and Responsibilities.** A Broker who provides Brokerage Services to one or both parties shall describe and disclose in writing the Broker's duties and responsibilities prior to the party or parties signing a contract to sell, purchase, option, or exchange real estate.

A Broker shall have the following duties and responsibilities which are mandatory and may not be abrogated or waived by a Broker, whether working with one party, or working with both parties:

A. treat all parties to the transaction with honesty and exercise reasonable skill and care;

B. unless specifically waived in writing by a party to the transaction:

1) receive all written offer and counteroffers;
2) reduce offers or counteroffers to a written form upon request of any party to a transaction; and
3) present timely all written offers and counteroffers.

C. inform, in writing, the party for whom the Broker is providing Brokerage Services when an offer is made that the party will be expected to pay certain closing costs, Brokerage Service costs and the approximate amount of the costs;

D. keep the party for whom the Broker is providing Brokerage Services informed regarding the transaction;

E. timely account for all money and property received by the Broker;

F. keep confidential information received from a party or prospective party confidential. The confidential information shall not be disclosed by a Broker without the consent of the party disclosing the information unless consent to the disclosure is granted in writing by the party or prospective party disclosing the information, the disclosure is required by law, or the information is made public or becomes public as the result of actions from a source other than the Broker. The following information shall be considered confidential and shall be the only information considered confidential in a transaction:

1) that a party or prospective party is willing to pay more or accept less than what is being offered,
2) that a party or prospective party is willing to agree to financing terms that are different from those offered,
3) the motivating factors of the party or prospective party purchasing, selling, optioning or exchanging the property, and
4) information specifically designated as confidential by a party unless such information is public.

G. disclose information pertaining to the Property as required by Residential Property Condition Disclosure Act;

H. comply with all requirements of the Oklahoma Real Estate Code and all applicable statutes and rules;

I. when working with one party or both parties to a transaction, the duties and responsibilities set forth in this section shall remain in place for both parties.

**2. Brokerage Services provided to both parties to the transaction.** The Oklahoma broker relationships law (Title 59, Oklahoma Statutes, Section 858-351 – 858-363) allows a real estate Firm to provide brokerage services to both parties to the transaction. This could occur when a Firm has contracted with a Seller to sell their property and a prospective Buyer contacts that same Firm to see the property. If the prospective Buyer wants to make an offer on the property, the Firm must now provide a written notice to both the Buyer and Seller that the Firm is now providing brokerage services to both parties to the transaction. The law states that there are mandatory duties and responsibilities that must be performed by the broker for each party.

**3. Broker providing fewer services.** If a Broker intends to provide fewer Brokerage Services than those required to complete a transaction, the Broker shall provide written disclosure to the party for whom the Broker is providing services. The disclosure shall include a description of those steps in the transaction that the Broker will not provide and state that the Broker assisting the other party in the transaction is not required to provide assistance with these steps in any manner.

**4. Confirmation of disclosure of duties and responsibilities.** The duties and responsibilities disclosed by the Broker shall be confirmed in writing by each party in a separate provision, incorporated in or attached to the contract to purchase, option or exchange real estate.

**I understand and acknowledge that I have received this notice on** 25th **day of** September, 20 26.

**(Print Name)** DANIEL J. SHERMAN, Trustee **(Signature)** Daniel J. Sherman, Trustee

**(Print Name)** ______________________ **(Signature)** ______________________

## OKLAHOMA REAL ESTATE COMMISSION

## DISCLOSURE TO SELLER OR BUYER OF BROKERAGE DUTIES, RESPONSIBILITIES AND SERVICES

**This notice** may be part of or attached to any of the following:

☐ Buyer Brokerage Agreement ☐ Listing Brokerage Agreement ☐ Option Agreement
☐ Sales Agreement ☐ Exchange Agreement ☐ Other ____________________

**1. Duties and Responsibilities.** A Broker who provides Brokerage Services to one or both parties shall describe and disclose in writing the Broker's duties and responsibilities prior to the party or parties signing a contract to sell, purchase, option, or exchange real estate.

A Broker shall have the following duties and responsibilities which are mandatory and may not be abrogated or waived by a Broker, whether working with one party, or working with both parties:

A. treat all parties to the transaction with honesty and exercise reasonable skill and care;
B. unless specifically waived in writing by a party to the transaction:
   1) receive all written offer and counteroffers;
   2) reduce offers or counteroffers to a written form upon request of any party to a transaction; and
   3) present timely all written offers and counteroffers.
C. inform, in writing, the party for whom the Broker is providing Brokerage Services when an offer is made that the party will be expected to pay certain closing costs, Brokerage Service costs and the approximate amount of the costs;
D. keep the party for whom the Broker is providing Brokerage Services informed regarding the transaction;
E. timely account for all money and property received by the Broker;
F. keep confidential information received from a party or prospective party confidential. The confidential information shall not be disclosed by a Broker without the consent of the party disclosing the information unless consent to the disclosure is granted in writing by the party or prospective party disclosing the information, the disclosure is required by law, or the information is made public or becomes public as the result of actions from a source other than the Broker. The following information shall be considered confidential and shall be the only information considered confidential in a transaction:
   1) that a party or prospective party is willing to pay more or accept less than what is being offered,
   2) that a party or prospective party is willing to agree to financing terms that are different from those offered,
   3) the motivating factors of the party or prospective party purchasing, selling, optioning or exchanging the property, and
   4) information specifically designated as confidential by a party unless such information is public.
G. disclose information pertaining to the Property as required by Residential Property Condition Disclosure Act;
H. comply with all requirements of the Oklahoma Real Estate Code and all applicable statutes and rules;
I. when working with one party or both parties to a transaction, the duties and responsibilities set forth in this section shall remain in place for both parties.

**2. Brokerage Services provided to both parties to the transaction.** The Oklahoma broker relationships law (Title 59, Oklahoma Statutes, Section 858-351 – 858-363) allows a real estate Firm to provide brokerage services to both parties to the transaction. This could occur when a Firm has contracted with a Seller to sell their property and a prospective Buyer contacts that same Firm to see the property. If the prospective Buyer wants to make an offer on the property, the Firm must now provide a written notice to both the Buyer and Seller that the Firm is now providing brokerage services to both parties to the transaction. The law states that there are mandatory duties and responsibilities that must be performed by the broker for each party.

**3. Broker providing fewer services.** If a Broker intends to provide fewer Brokerage Services than those required to complete a transaction, the Broker shall provide written disclosure to the party for whom the Broker is providing services. The disclosure shall include a description of those steps in the transaction that the Broker will not provide and state that the Broker assisting the other party in the transaction is not required to provide assistance with these steps in any manner.

**4. Confirmation of disclosure of duties and responsibilities.** The duties and responsibilities disclosed by the Broker shall be confirmed in writing by each party in a separate provision, incorporated in or attached to the contract to purchase, option or exchange real estate.

**I understand and acknowledge that I have received this notice on** 25 **day of** September**, 20**26**.**

**(Print Name)** Aharon Diveroli **(Signature)** [signature]

**(Print Name)** ____________________ **(Signature)** ____________________

# EXHIBIT 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br>YSA INVESTMENTS 1, LLC,<br>Debtor. | Case No. 26-12806-SAH<br>Chapter 11 |

**ORDER GRANTING DEBTOR'S APPLICATION TO EMPLOY CBRE, INC. AS BROKER, EFFECTIVE AS OF SEPTEMBER 28, 2026**

This matter comes on for consideration based on the *Debtor's Application to Employ CBRE, Inc. as Broker, Effective as of September 28, 2026* [Doc. ___] (the "Application") filed by Debtor YSA Investments 1, LLC (the "Debtor").[1] The Court has jurisdiction to consider the Application, has considered the arguments regarding the Application, and finds that the relief requested in the Application is in the best interests of the Debtor and its estate, that the Debtor's notice and opportunity for a hearing were appropriate under the circumstances, that no other notice

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Application.

need be provided, and that based on the current record, CBRE, Inc. ("CBRE") does not hold or represent any interest adverse to the Debtor's estate and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and sufficient cause appearing therefor:

IT IS HEREBY ORDERED THAT:

1. The Application is GRANTED as set forth herein, effective as of September 28, 2026, being the date of filing the Application.

2. Pursuant to sections 327(a) of the Bankruptcy Code, the Debtor is authorized to retain and employ CBRE as its broker in this chapter 11 case on the terms and conditions set forth in the Listing Agreement, except as expressly modified herein.

3. The Listing Agreement is approved pursuant to section 327(a) of the Bankruptcy Code, and the Debtor is authorized to pay and indemnify CBRE pursuant to section 328(a) in accordance with the terms and conditions of the Listing Agreement, except as expressly modified herein.

4. All compensation owed to CBRE under the Listing Agreement shall be subject to review only pursuant to the standard of review set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code or any other standard of review.

5. The Debtor is authorized to retain and employ CBRE as investment banker to provide the following services:

(a) CBRE will serve as the exclusive broker, to market and list for sale the 727 Lofts Property;

(b) CBRE will market the 727 Lofts Property using such advertising, canvassing, solicitation of brokers representing prospective purchasers, and other promotional and marketing activities as CBRE and Sellers may agree upon;

(c) Sellers will refer to CBRE all inquiries it receives relating to the 727 Lofts Property, and CBRE will handle all negotiations on Seller's behalf, at Seller's direction; and,

(d) CBRE will present to Sellers all bona fide offers and assist Sellers with analyzing each offer and developing and negotiating counteroffers.

6. The Debtor shall be bound by the indemnification provisions set forth in the Listing Agreement.

7. For its services, CBRE shall be compensated as set forth in the Application. Subject to the following paragraph, CBRE shall file applications for allowance of compensation pursuant to and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders and procedures of this Court; *provided* that the fees, expenses and other compensation payable to CBRE pursuant to the Listing Agreement shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

8. Notwithstanding anything to the contrary in the Application or the Listing Agreement, no amounts shall be paid to CBRE absent an order of this Court approving a fee application after notice and a hearing in this chapter 11 case.

9. CBRE and its professionals shall be excused from keeping time.

10. The Debtor shall use its best efforts to avoid any duplication of services provided by CBRE and any of the Debtor's other retained professionals in this chapter 11 case, and, in connection with the services to be rendered pursuant to the Listing Agreement, CBRE shall

endeavor to coordinate and work together with the Debtor's other retained professionals to minimize or avoid duplication of services.

11. To the extent this Order is inconsistent with the Application, Listing Agreement, or any other document or pleading filed in this case with respect to CBRE's retention as broker to the Debtor for the 727 Lofts Property, the terms of this Order shall control.

12. The Debtor, its officers, employees, and agents, and CBRE are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein.

13. Notice of the Application as provided therein is deemed to be good and sufficient notice of the Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

14. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15. This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

16. The Movant shall notify all interested parties of this Order.

17. All findings of fact are based upon representation of Debtor's Counsel.

# # #

APPROVED:

*/s/ Jason A. Sansone*
Clayton D. Ketter, OBA No. 30611
Jason A. Sansone, OBA No. 30913
Nicholas J. Candido, OBA No. 36069
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, OK 73103
(405) 235-4100 - telephone
(405) 235-4133 – facsimile
cdketter@phillipsmurrah.com
jasansone@phillipsmurrah.com
njcandido@phillipsmurrah.com
**Proposed Attorneys**
**for YSA Investments 1, LLC**