**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**OKLAHOMA CITY DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **YSA INVESTMENTS 1, LLC,** | ) | **Case No. 26-12806-sah-11** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

**REBECCA FOWLER'S RESPONSE TO**
**FAIRFAX INVESTORS, LLC'S NOTICE OF CERTIFICATE OF NONAPPEARANCE**

Rebecca Fowler ("Ms. Fowler"), a non-party, files this Response to the "Notice of Certificate of Nonappearance" (Dkt. 439) (the "Notice") filed by Fairfax Investors, LLC ("Fairfax"), and to correct the incomplete and misleading record made by Fairfax's counsel on September 28, 2026.

## I. INTRODUCTION

Less than one business day before a deposition scheduled on Monday, September 28, 2026, Ms. Fowler received an email from Fairfax's counsel transmitting a notice and subpoena. A subpoena and deposition notice for the Monday deposition were also delivered via Federal Express to Ms. Fowler's building on Tuesday, September 29, 2026, *a day after the deposition took place*. Ms. Fowler still has not received any witness fee as required by Fed. R. Civ. P. 45(b)(1). In sum, Fairfax's service of the subpoena was invalid and by failing to provide Ms. Fowler reasonable time to comply, Fairfax failed to comply with its obligations under Rule 45(d)(1) to act reasonably to avoid imposing an undue burden or expense on a non-party witness.

Although Fairfax has taken no steps to enforce its subpoena in the court where compliance is required, *see* Fed. R. Civ. P. 45(d)(1), (f), (g) (made applicable by Fed. R. Bankr. P. 9016) (compliance is enforced by the court for the district where compliance is required, here the Southern District of Florida), Ms. Fowler responds here out of an abundance of caution because

Fairfax's Notice asks this Court to draw an adverse inference against her on a record that omits every fact that matters and intentionally misstates Fairfax's efforts to serve Ms. Fowler with a subpoena.

## II. FACTUAL BACKGROUND[1]

### A. Ms. Fowler Is a Non-Party Insurance Broker Whose Client Is the Debtor.

1. Ms. Fowler is a licensed insurance professional and the Principal of Fowler Consulting LLC, a commercial property and casualty insurance agency that she owns and operates, and she serves as its designated licensed responsible producer in the state of Oklahoma (and all other states where Fowler Consulting LLC does business). Ex. A, Declaration of Rebecca Fowler ("Fowler Decl.") ¶ 2. Running this agency is Ms. Fowler's full-time job. *Id.* She places coverages for a book of commercial clients, services their policies, and answers to insureds and carriers every business day. *Id.* Fowler Consulting LLC placed insurance for the Debtor, YSA Investments 1, LLC ("YSA"). *Id.* at ¶ 3.

2. Fowler Consulting LLC acts for its client, the Debtor, as a broker in placing and servicing the Debtor's property and casualty insurance program. *Id.* As a matter of professional practice, Ms. Fowler treats a commercial client's non-public premium, payment, and account information as confidential, and she does not disclose it to third parties, particularly parties adverse to that client, without the client's consent or valid legal process. Fowler Decl. ¶ 4.

3. The insurance Fowler Consulting LLC placed for YSA Investments 1 LLC was placed validly, prudently, and consistent with the ethics and standards of her profession, contrary to what is insinuated in the transcript attached to Fairfax's Notice. *Id.* at ¶ 6. The coverage in

[1] All times in this Response are Eastern, where Ms. Fowler resides. The deposition was noticed for 1:30 p.m. Central, which is 2:30 p.m. Eastern; references to "1:30" in quoted emails and in the transcript are to that same time.

place is furthermore not a secret to the court. On September 2, 2026, the Debtor filed a Proof of Insurance attaching evidence of the coverage, including the carriers, policy numbers, limits, policy period, and scheduled locations. Dkt. 303. Those evidence-of-insurance forms, which are detailed above and beyond typical certificates, speak for themselves: each bears an issuance date and reflects the coverage in force as of that date. Ms. Fowler also attaches the current certificate of insurance (COI) and evidence of property insurance (EOP) to her Declaration attached hereto. *Id.* at ¶ 7; Exhibit 1 to Fowler Decl. These documents show that coverage has remained continuously in place since September 1, 2026, and has since only been expanded. *Id.*

4. Fairfax and the parties aligned with it are adverse to YSA. The ECF service list for Fairfax's own deposition notice shows Ms. Lindauer appearing for numerous interested parties in addition to Fairfax, including Fairfax Best Living, LLC, Remington Ranch's Best Living, LLC, Woodland Oaks Investors, LLC, and Louis Investments LLC. Dkt. 414. Ms. Lindauer also copied Marc Kulick of Vesta Real Property, a party adverse to YSA, on various emails to Ms. Fowler relating to the September 28th deposition. *Id.* at ¶ 8; Exhibit 2 to Fowler Decl.

### B. The Deposition Notice Followed, Within Hours, an Unsolicited Call From a Principal Adverse to Ms. Fowler's Client.

5. At approximately 12:00 p.m. on Thursday, September 24, 2026, Mr. Kulick called Ms. Fowler unsolicited, seeking information about the Debtor's insurance policies. *Id.* at ¶ 9. Ms. Fowler told Mr. Kulick that because he was not a certificate holder of record, she could not provide him information about the Debtor's coverage. *Id.*

6. During the call, Mr. Kulick said he had "heard a rumor" that notices of cancellation had been issued on the Debtor's policies. *Id.* In the property and casualty insurance industry, notices of cancellation issued shortly after a policy's effective date typically signal cancellation for nonpayment of premium. *Id.* at ¶ 10. Mr. Kulick's question was in essence an attempt to learn

whether the Debtor's policies were being cancelled for nonpayment. **They are not and have not been.** *Id.* at ¶¶ 6, 9; Ex. 1 to Fowler Decl. (current certificate of liability insurance and evidence of property insurance).

7. Recognizing that Mr. Kulick was adverse to her client and was seeking information that could be used to suggest the Debtor's coverage was in jeopardy, which was not true, Ms. Fowler addressed the rumor with him, by denying it, and went no further. *Id.* at ¶ 9. **She told him that none of the policies she had placed for the Debtor had a notice of cancellation outstanding for any reason, nonpayment or otherwise, and that coverage remained in force**, but that because he was not a certificate holder, she could provide no further information, including which properties the policies covered. *Id.* Mr. Kulick ended the call by asking Ms. Fowler to call him back if she ever became able to share more. *Id.* But given that certificates that were on file with the court at the time already listed the locations that were insured and evidenced insurance coverage, Dkt. 303, it is unclear what additional information Mr. Kulik sought.

8. Roughly seven hours later, Fairfax filed its notice seeking Ms. Fowler's testimony about "Insurance for YSA Investments 1, LLC, including the properties insured and payment for the insurance policies," the very subjects Mr. Kulick had just raised. Dkt. 414. Ms. Lindauer then copied Mr. Kulick on her emails to Ms. Fowler about the deposition and the proposed declaration. Fowler Decl., ¶ 8; Ex. 2 to Fowler Decl.

**C. Fairfax E-mailed a Thursday-Night Subpoena for a Monday Deposition.**

9. Fairfax filed its Notice of Deposition of Rebecca Fowler at 6:54 p.m. Eastern on Thursday, September 24, 2026. Dkt. 414.

10. At 7:24 p.m., Ms. Lindauer's paralegal, Dian Gwinnup, emailed the notice to Ms. Fowler. Fowler Decl., ¶ 8; Ex. 2 to Fowler Decl. This notice set a deposition for Monday, September 28, at 2:30 p.m. ET, on the topic "Insurance for YSA Investments 1, LLC, including

the properties insured and payment for the insurance policies." Dkt. 414. Attached was a subpoena on Official Form B2560 and, notably, the Debtor's Proof of Insurance which included remarks sections outlining the properties insured. *See* Dkt. 414, attaching Dkt. 303.

11. No witness fee was tendered with the emailed subpoena. No witness fee has been tendered since or at any time. Fowler Decl. ¶ 14.

### D. Ms. Fowler First Saw the Subpoena Late Friday Afternoon and Responded Within the Hour.

12. Ms. Fowler did not see the Thursday-night email when it arrived and obviously does not monitor the docket in this case. *Id.* at ¶ 11. That Thursday evening, she was attending a charity event for a foundation that benefits local children. *Id.* Ms. Fowler receives a very large volume of emails each day, Ms. Gwinnup was not a recognized sender, and the Thursday-night email went unopened. *Id.* The first that Ms. Fowler saw anything regarding a deposition was at 3:04 p.m. on Friday, September 25, when Ms. Gwinnup sent a second email on the same chain attaching the Notice of Zoom Information (Dkt. 422). *Id.* at ¶ 12; Exhibit 2 to Fowler Decl. By then the Friday business day was nearly over, and Ms. Fowler was fully occupied running her agency and handling active insurance matters for her insureds. *Id.* at ¶ 12.

13. Despite this, Ms. Fowler did not ignore the notices emailed to her. Despite a full workload that afternoon, at 4:05 p.m. ET, about an hour after she first saw anything regarding this matter come through, she wrote to Ms. Lindauer, informing her that she was unavailable on September 28th but could appear for a deposition the following week and would accept service of a subpoena via email if Fairfax would be willing to reschedule by one week:

> *Ms Lindaur, I am unavailable Monday. Can you please provide dates and times the week of October 5th? If we can amend the subpoena to a date on which I am available, then I would be happy to accept service via email.* Ex. B.

*Id.* at ¶ 12; Exhibit 2 to Fowler Decl.

14. Three minutes later, Ms. Lindauer declined to reschedule, indicating, “If we can’t get this done on Monday, We will subpoena you for actual hearing on October 1 . . . that date you are suggesting is too late[.]” Exhibit 2 to Fowler Decl. The “actual hearing” in Oklahoma City is more than 1,000 miles from Ms. Fowler’s home and business. Fowler Decl., ¶ 15.

15. At 1:54 p.m. on Sunday, September 27, Ms. Lindauer wrote to Fowler: “You should have the subpoena by Federal Express in person.” Exhibit 2 to Fowler Decl. That was not true. According to FedEx’s tracking records, FedEx did not even take possession of the referenced package until 3:13 p.m. on Monday, September 28, after the deposition had already ended. Ex. B, (FedEx tracking record). The package was not even delivered to Ms. Fowler’s building until approximately 11:07 a.m. on Tuesday, September 29th, the day after the scheduled deposition. *Id.* At approximately 5:30 a.m. on September 30, 2026, Ms. Fowler was actually able to sign for the Fedex delivery in the building’s secure package room. Fowler Decl., ¶ 14.

16. The Fedex package contained the notice and subpoena, with no witness fee enclosed. *Id.* It also related to a deposition on a date that had already passed.

**E. On Monday, September 28th, Fairfax Was Told in Writing Ms. Fowler Would Not Appear.**

17. Based upon Ms. Lindauer’s threat to subpoena Ms. Fowler to a hearing over 1,000 miles away, Ms. Fowler retained counsel. *Id.* at ¶ 15.

18. At 12:24 p.m. on Monday, September 28, Ms. Lindauer wrote to Ms. Fowler, copying Mr. Kulick: “Please be advised we intend to go forward the deposition today at 1:30 CST. That would be 2:30 your time in Florida.” Exhibit 2 to Fowler Decl.

19. At 12:40 p.m., Ms. Fowler’s counsel wrote:

> Our firm represents Rebecca Fowler. Please be advised that emailing a subpoena one business day before a deposition, particularly without an accompanying witness fee, is not valid service. Even if it were, your subpoena did not provide

> reasonable time to comply. Ms. Fowler will not appear for a deposition today. You may direct all further communications to my attention. Thank you.

Ex. C, Counsel's Email String.

20. Four minutes later, at 12:44 p.m., Ms. Lindauer replied to counsel alone: "She was also sent notice by Federal Express." *Id.* The Fedex package, however, had by this time not even been received by Fedex. *See supra.*

**F. The Record Made on September 28 Was Incomplete and Misleading.**

21. Before a single participant logged in to the scheduled Zoom deposition on September 28, Fairfax had been told in writing, three separate times, that Ms. Fowler would not attend the deposition based upon unavailability, invalidity of the subpoena based upon among other things the lack of a witness fee, and Fairfax's failure to provide reasonable time to comply. *See supra.* ¶¶ 13, 19.

22. Ms. Lindauer nevertheless went on the deposition record at approximately 2:35 p.m., accused Ms. Fowler of being uncooperative, suggested that she had effectuated valid service of a subpoena including via Fedex despite the fact that Fedex had not yet taken possession of the package, and insinuated that the Court should "draw a negative inference against Ms. Fowler for failing to appear and accommodate us." Dkt. 439, pp. 4, 5, 8.

23. At 3:39 p.m., about an hour after the deposition ended, Ms. Lindauer wrote to counsel: "Let me know how you want to handle the insurance issue. Obviously everyone is drawing negative conclusions which are extremely [d]etrimental to Rebecca's clients if they have actually paid for insurance." Ex. C, Counsel's Email String. The "negative conclusions" Ms. Lindauer described, however, were the ones she invited on the record based upon her failure to make clear that she failed to properly serve a subpoena or give Ms. Fowler reasonable time to comply with it.

## III. ARGUMENT

### A. Fairfax Did Not Give Ms. Fowler Reasonable Notice and Time to Comply.

A subpoena must allow a reasonable time to comply, Fed. R. Civ. P. 45(d)(3)(A)(i), and the attorney issuing it "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The court for the district where compliance is required "must enforce this duty and impose an appropriate sanction." *Id.* Courts routinely hold that notice of one or two business days is unreasonable. *See, e.g., Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, No. 1:07-CV-956, 2009 WL 724001 (W.D. Mich. Mar. 10, 2009) ("[t]wo business days, more or less, even with the intervening weekend, is not an adequate period of time to comply with a subpoena"); *Paul v. Stewart Enters., Inc.*, No. Civ.A 99-3441, 2000 WL 1171120 (E.D. La. Aug. 16, 2000) ("[o]ne business day's notice is clearly unreasonable in light of the requirement in Fed.R.Civ.P. 45(c)(2)(B) that a subpoenaed person be permitted 14 days to object"); *Basich v. Patenaude & Felix, APC*, No. 12-9013-MC-W-FJG, 2012 WL 2886663, at *1 (W.D. Mo. July 13, 2012) ("serving the deposition late in the evening of June 27, 2012, and expecting the witness to appear at 10:00 a.m. on June 29, 2012, was clearly unreasonable").

Furthermore, Fairfax had no valid reason for *not* giving Ms. Fowler reasonable time to comply. The topics on which Fairfax sought testimony are already largely answered by the Debtor's filed Proof of Insurance, which Fairfax attached to its own deposition notice. Those forms, along with their additional remarks sections which are provided both on the Certificate of Liability Insurance and Evidence of Property Insurance, speak for themselves and reflect the coverage in force as of the certificate's issuance date. In relation to the one remaining topic set forth on the deposition notice – the "the payment for the insurance policies" – Ms. Fowler represented the overall status of this on her phone call with Mr. Kulic and told him "there are no notices of cancellation out on the insurance policies she placed for nonpayment or otherwise." It

is also unclear why Fairfax could not simply seek insurance information from the debtor through ordinary discovery processes. In any event, no notice of cancellation has been issued on any of the policies.

**B. The Subpoena Was Also Never Validly Served.**

Rule 45(b)(1) requires that a subpoena commanding attendance be served together with the fees for one day's attendance and the mileage allowed by law, and service without those fees is invalid. *See, e.g., In re Dennis*, 330 F.3d 696, 704–05 (5th Cir. 2003); *Song v. Dreamtouch, Inc.*, 2001 WL 487413, at *7 (S.D.N.Y. May 8, 2001). No fee was tendered here. The fee line on Fairfax's own subpoena is blank. The FedEx package that was not delivered until the day after the scheduled deposition also contained no fee. "Where no fee is tendered with the service of a subpoena requiring a witness' attendance, the service is invalid." *Song*, 2001 WL 487413, at *7.

**C. The Invalid Subpoena Sought Ms. Fowler's and Her Client's Confidential Commercial Information, Which Ms. Fowler Could Not Simply Voluntarily Produce.**

Valid service especially matters to Ms. Fowler: without valid process, she has no proper basis to provide her client's non-public information to its adversaries. A producer in Ms. Fowler's position acts prudently and consistently with her client relationship by declining to volunteer the client's non-public premium and payment information to the client's adversaries until she is served with valid process or the client consents. Rule 45 protects precisely that interest. Fed. R. Civ. P. 45(d)(3)(B)(i) (protecting a subpoenaed person from being required to disclose confidential commercial information). Furthermore, this premium and payment information represents competitive market information on the terms Ms. Fowler was able to negotiate and procure for YSA, which she would never voluntarily provide to an outside party. This is not Ms. Fowler's dispute, and she should not be penalized for declining to take sides in it or to volunteer a client's confidential information in response to an invalid subpoena.

## IV. CONCLUSION

Ms. Fowler respectfully requests that the Court: (a) decline to draw any negative or adverse inference against Ms. Fowler based on the Notice or the September 28, 2026 record; (b) find that Fairfax did not provide Ms. Fowler reasonable notice, that its subpoena was invalid, and that Ms. Fowler was under no obligation to appear on September 28, 2026; (c) note for the record that no notices of cancellation exist on any of the eleven (11) policies for which coverage is outlined in the attached Evidence of Property Insurance and Certificate of Liability Insurance certificates; and (d) grant such other relief as the Court deems just.

By: */s/ Richard A. Olmstead*
Richard A. Olmstead OBA No. 22363
KUTAK ROCK LLP
8415 E 21st Street N, Suite 200
Wichita, KS 67206
Telephone: 316.248.6480
Facsimile: 816.960.0041
richard.olmstead@kutakrock.com
*Counsel for Non-Party Rebecca Fowler*

## CERTIFICATE OF SERVICE

I certify that on October 1, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties registered to receive electronic notice in this case.

*/s/ Richard A. Olmstead*
Richard A. Olmstead