**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br><br>YSA INVESTMENTS 1, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-12806 (SAH)<br><br>Re: Docket Nos. 372, 386, 393, 397, 398 |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF YAMATO OKC LENDER, LLC TO (A) DEBTOR'S CORRECTED EXPEDITED MOTION FOR ENTRY OF ORDER APPROVING BID PROCEDURES AND SALE OF THE DEBTOR'S INTERESTS IN THE 727 LOFTS PROPERTY [DOC. 397] AND (B) DEBTOR'S CORRECTED EXPEDITED MOTION PURSUANT TO RULE 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT WITH ACRE Q018 RETENTION HOLDER LLC [DOC. 398]**

Yamato OKC Lender, LLC ("Yamato") objects to (A) the Debtor's corrected motion for entry of an order approving bid procedures and a sale of its interests in the 727 Lofts Property [Doc. 393, corrected at Doc. 397] (the "Sale Motion," with the bid procedures attached thereto as Exhibit 1, the "Bid Procedures," and the proposed order attached thereto as Exhibit 2, the "Bid Procedures Order"), and (B) the Debtor's corrected motion under Rule 9019 to approve its settlement with ACRE Q018 Retention Holder LLC ("ACRE") [Doc. 386, corrected at Doc. 398] (the "9019 Motion," with the Amended and Restated Global Settlement Agreement attached thereto as Exhibit 1, the "Settlement Agreement"), both set for hearing on October 8, 2026 [Doc. 372]. In support, Yamato states:

## PRELIMINARY STATEMENT

1. Yamato does not object *per se* to a sale of 727 Lofts, to a marketing process and auction, or to ACRE being paid on its first mortgage from the proceeds. However, all parties in interest in YSA's chapter 11 case are in a fundamentally different setting than when the Sale Motion and 9019 Motion were filed. On October 1, 2026, this Court approved the remaining pending motions for the appointment of a chapter 11 trustee. Docs. 232, 344, 345.[1] Given the pending appointment of a chapter 11 trustee, Yamato believes that a hearing on the Sale Motion and 9019 Motion should be adjourned until the chapter 11 trustee has sufficient time to review the requested relief and investigate the benefits to the Debtor's estate and other parties in interest. Indeed, pursuant to Rule 2012 of the Federal Rules of Bankruptcy Procedure, the Debtor no longer has standing to pursue the Sale Motion and 9019 Motion. FED. R. BANKR. P. 2012(a). Accordingly, a continuation of the hearing to allow the chapter 11 trustee to determine whether to proceed on the Sale Motion and 9019 Motion is appropriate.

2. Notwithstanding the above, to the extent the hearing on the 9019 Motion and Sale Motion moves forward, Yamato objects on two grounds: (a) the terms on which the Sale Motion asks the Court to run the auction while that dispute is unresolved, and (b) the absence, in both Motions, of any mechanism ensuring the surplus is held and distributed without prejudging who is entitled to it. With respect to the Sale Motion, the Bid Procedures functionally treat the Debtor as a co-seller with joint authority over every discretionary step — who is a qualified bidder, whether a bidder can be excluded, how the auction is run, who prevails — notwithstanding that the Debtor's own claimed interest in the property (a second mortgage and a deed in lieu it executed to itself) is itself contested, is the subject of a pending avoidance action, and is adverse to every

[1] While an order has not been entered on the docket as of the filing of this objection, an order is forthcoming.

other claimant with an interest in any surplus generated by the auction. Bid Procedures ¶¶ 8, 9, 12, 15. While this was improper at the time of the filing of the Sale Motion, it is even more improper now that a chapter 11 trustee will step into the Debtor's position. With respect to the 9019 Motion, the settlement is properly limited to compromising ACRE's claim, but the order approving it should be amended to make it abundantly clear that it does not validate the Debtor's title or to determine how the escrowed surplus will be allocated.

3. The Debtor claims title to 727 Lofts through a deed in lieu of foreclosure, the validity of which depends entirely on the validity of a second mortgage and power of attorney the Debtor itself drafted and exercised in its own favor. Under Oklahoma law a lien "transfers no title to the property subject to the lien," 42 O.S. § 10, and an instrument taken as security "must be . . . foreclosed," 46 O.S. § 1. The Debtor foreclosed nothing; its manager signed the deed in lieu on both sides, once as the purported attorney-in-fact for the record owner and once for the Debtor as lender, for consideration its own principal could not identify under oath. A party whose title is genuinely in bona fide dispute and whose interest in the surplus is adverse to every other claimant should not co-direct the sale of the property or receive any part of the surplus without adjudication.

4. Yamato asks the Court to enter the provisions set out in section III below in the Bid Procedures Order and the order approving the Settlement Agreement, and to direct that they be carried into the Sale Order. Absent the inclusion of these provisions, Yamato objects and asks that the Motions be denied.

## BACKGROUND

A. Yamato Is a Party in Interest

5. Yamato is lender to Barcelona Best Living, LLC ("Barcelona") and holds a pledge and security interest in Barcelona's distributions, receivables, proceeds and interests. Doc. 113 ¶

1 & Ex. A §§ 6, 10. The Debtor recorded a second mortgage against Barcelona on October 31, 2025 and executed a deed in lieu to itself on June 17, 2026, on instruments identical in form to those at 727 Lofts. Doc. 113 ¶ 7. Yamato has appeared and participated in this case since August. Docs. 113, 165, 235, 356. "A party in interest . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b); *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995) (party in interest requires a pecuniary interest directly affected by the bankruptcy proceeding). Any finding here that the Debtor's power-of-attorney, mortgage and deed-in-lieu template was effective, or that the Debtor may take surplus proceeds on account of it, would be persuasive (though not conclusive) authority the Debtor could invoke against Yamato's collateral at Barcelona.

B. The Debtor's Interest in 727 Lofts Is Disputed

6. 727 Lofts Best Living, LLC (the "Project Entity") is the alleged title owner of record of the 727 Lofts Property; 727 Lofts Holdings, LLC ("727 Holdings") allegedly owns its equity; ACRE holds a first mortgage and a pledge of that equity. Doc. 168 ¶¶ 8-13.

7. On October 29, 2025, the Debtor, acting under a power of attorney, executed a second mortgage on the property in favor of itself and recorded it on October 31, 2025. Doc. 168 ¶ 15. On June 8, 2026, ACRE filed a judicial foreclosure and recorded a lis pendens. Doc. 168 ¶ 18. On June 17, 2026, before that foreclosure concluded, the Debtor executed a deed in lieu conveying the property to itself, signed by Aharon Diveroli as attorney-in-fact for the record owner and, separately, for the Debtor as lender, reciting no consideration, while the Debtor continued to assert the full second mortgage as unpaid. Hr'g Tr. 71:5-9, 73:9-11, 74:7-10, Aug. 14, 2026; Doc. 168 ¶ 16; Doc. 237, Sched. D line 2.33. The Debtor also claims 727 Holdings' equity through a

Uniform Commercial Code ("UCC") process that ACRE alleges named the wrong entity, provided no notice pursuant to UCC § 9-610, and was never advertised. Doc. 168 ¶¶ 17-18.

8. The Project Entity and 727 Holdings each filed voluntary chapter 11 petitions on June 25, 2026. On July 28, Judge Jernigan directed the appointment of a chapter 11 trustee in the related cases, observing that the Debtor had "purported, through a power of attorney from Mr. Kulick, to transfer the Debtors' real properties to itself in the weeks before the Debtors filed bankruptcy." Case No. 26-12825 (Bankr. W.D. Okla.), Doc. 58; Case No. 26-12826 (Bankr. W.D. Okla.), Doc. 33. Daniel J. Sherman serves as the chapter 11 trustee for 727 Lofts (the "Trustee"). Doc. 237, SOFA Q8. A thirteen-count adversary proceeding by thirty-four Kulick entities, including the Project Entity and 727 Holdings, seeks to avoid the power of attorney, the second mortgages and the deeds under 11 U.S.C. §§ 544, 547, 548, 550, 551 and 510(c), and pleads 727 Lofts specifically. *Louis Invs., LLC v. YSA Invs. 1, LLC*, Adv. No. 26-03074 (Bankr. N.D. Tex.), Compl. ¶¶ 9, 44, 72, 104, 122 (transferred to this Court as Adv. No. 26-01042). Those claims now belong to the Trustee.

9. The Debtor has conceded the dispute in every relevant filing. Resisting ACRE's stay motion, it asserted to the Delaware bankruptcy court that "[t]he only disputes relate to the validity of YSA's interests in 727 Lofts," that the Court "need not resolve the validity of the deed in lieu," and that the right course was a sale with "the first lien lender paid off, and the remaining proceeds escrowed pending resolution of entitlement." Doc. 91 ¶¶ 3, 24, 28. Opposing the trustee motions filed by ACRE and CREO, it conceded that "disputes exist as to the parties' rights in the properties, the deeds in lieu, the claimed missing approvals, and potential claims under § 548." Doc. 324 at 9. Its schedules list 727 Lofts three inconsistent ways: owned in fee by "Recorded Deed" at $18,838,472; encumbered by a Debtor second mortgage of "Unknown" amount; and held

through an entity whose equity the Debtor values at $0.00. Doc. 237, Sched. A/B line 55.13 & Part 11 line 77; Sched. D line 2.33. Its principal, asked three ways what the Debtor paid for the deed, answered "I don't know," could not state the mortgage balance, and could not distinguish possession from ownership. Hr'g Tr. 69:2-4, 71:25-72:8, 73:12-18, Aug. 14, 2026. ACRE's view, before it settled, was that "YSA is just a second mortgagee and this reported deed in lieu, at least as to 727 Lofts, is illegal and ineffective," *Id.* at 33:20-22, and that the Debtor "purported to transfer the deed to the 727 Lofts Property to itself for no consideration whatsoever." Doc. 168 ¶ 16.

C. Oklahoma Lien-Theory and Agency Law

10. Yamato does not ask the Court to resolve the dispute relating to YSA's interests via these Motions; instead, Yamato asks the Court to account for the dispute in its orders, because it bears directly on how the surplus should be handled. Oklahoma is a lien-theory state: "a lien or a contract for a lien transfers no title to the property subject to the lien." 42 O.S. § 10. An instrument "purporting to be an absolute or qualified conveyance of real estate . . . but intended . . . as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such." 46 O.S. § 1. A mortgagee acquires its collateral in one of two ways: by foreclosure, or by a deed in lieu that the owner actually gives in satisfaction of the debt. The Debtor did neither. It filed no foreclosure. Its deed in lieu was not given by the owner. Instead, the Debtor's own manager signed it as the owner's attorney-in-fact under a power of attorney allegedly given by Mr. Kulick and his holding entities in the Debtor's own loan documents, and signed the companion agreement for the lender as well. Doc. 168 ¶ 16; Hr'g Tr. 71:5-9, 73:9-11, Aug. 14, 2026. Nor was it given in satisfaction of anything: the Debtor recites no consideration, its principal cannot identify any, and it still carries the full second mortgage as an unpaid secured claim. Doc. 168 ¶ 16; Doc. 237, Sched. D line 2.33. An instrument transferring collateral to the lender while leaving the debt in place is, at most, additional security that § 1 requires to be foreclosed — and Oklahoma law voids "[a]ll contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby." 42 O.S. § 11.

11. In addition to the issues surrounding YSA's purported mortgage, an agent may not deal with the principal's property as an adverse party, or acquire it for himself, without the principal's informed consent; a conveyance by an attorney-in-fact to himself or his employer is the paradigm of the prohibited transaction. Restatement (Third) of Agency §§ 8.01, 8.03 (2006). Here the attorney-in-fact was the lender, the grantee was the lender, and the only signature on the

grantor's side was the lender's. The recorded pledges appoint the Debtor attorney-in-fact for Vesta Holdings, LLC, Asset Holder, LLC and Kulick Manager, LLC — not for the property-owning companies whose real estate was conveyed. That is the conduct Judge Jernigan described as the Debtor having "purported . . . to transfer the Debtors' real properties to itself," Doc. 168 at 3, and that ACRE's counsel described as something no lender does "without any kind of judicial process or any UCC Article 9 process." Hr'g Tr. 33:12-15, Aug. 6, 2026. On this record, the probability of success of any claim by the Debtor to the surplus is squarely before the Court in deciding how the orders should treat that surplus.

## I. OBJECTION TO THE SALE MOTION AND BID PROCEDURES [DOC. 397]

### A. <u>The Sale Motion May Not Be Used to Determine the Debtor's Ownership Interest</u>

12. A proceeding to determine "the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding, commenced by complaint and tried on a record. Fed. R. Bankr. P. 7001(b), (i). A sale motion, by contrast, is ordinarily a contested matter and may not be used as a shortcut to adjudicate who owns the property outright. In *Whitehall Jewelers Holdings, Inc.*, the court denied a motion to sell consigned goods free and clear because the debtors had not established that the goods were property of the estate and had "utilized the wrong procedural tool, i.e., a contested matter," to try to do so. *In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 WL 2951974 (Bankr. D. Del. July 28, 2008); *see also* 11 U.S.C. §§ 363(b)(1), 541(a). Similarly, section 363(f)(4) permits a sale free and clear of an interest in property that is in bona fide dispute; it does not permit a sale to resolve such dispute. *In re Worcester Country Club Acres, LLC*, 655 B.R. 41, 44-45 (Bankr. D. Mass. 2023); *In re Goli Nutrition Inc.*, No. 24-10438 (LSS), 2024 WL 1748460, at *5-6 (Bankr. D. Del. Apr. 18, 2024) (bench ruling) ("I see nothing in section 363 of the Code that permits me to authorize the sale of property that is not property of the estate

. . . . Courts relying on § 363(f)(4) "to approve a sale of property in which ownership is disputed are mistaken").

13. The recognized workaround for such disputes is a quitclaim-style sale: each claimant conveys whatever it holds, and the dispute follows the proceeds. As the *Goli* court put it, a sale to a purchaser "willing to buy whatever interest the debtor has in the property . . . could be permissible." No. 24-10438 (LSS), 2024 WL 1748460 at *6. The burden of proving the validity, priority and extent of an asserted interest lies on the entity asserting it. 11 U.S.C. § 363(p)(2). Here, the Debtor carries this burden. The Sale Motion does not clearly say the sale is on that quitclaim basis, though the Bid Procedures Order's finding that the sale works "regardless of whether the 727 Lofts Debtor or YSA owns the 727 Lofts Property," Bid Procedures Order ¶ J, is consistent with it. The orders should be amended to expressly provide that nothing therein determines the existence, validity, priority, extent, effectiveness or avoidability of the power of attorney, the second mortgage, the deed in lieu, the equity transfer, or the Debtor's right and title to the 727 Lofts Property, or any comparable instrument at any other property.

## B. Fiduciaries and Estate Professionals Should Not Be Permitted to Bid Without Disclosure and Court Approval

14. The Bid Procedures require a bidder to identify itself and its financial backers, Bid Procedures ¶ 7(b), but contain no restriction on bids by the estates' fiduciaries or professionals and no requirement that a bidder disclose its connections to the Debtor, the 727 Lofts estates, their professionals, or ACRE. Every professional the estates employ in this sale is required to be disinterested, meaning, among other things, that it holds no "interest materially adverse to the interest of the estate." 11 U.S.C. §§ 101(14)(C), 327(a). A professional that bids for the estate's principal asset acquires exactly that adverse interest, and an agent may not purchase the principal's property without the principal's informed consent. Restatement (Third) of Agency § 8.03 (2006).

Courts scrutinize sales to insiders and management-affiliated buyers closely, and have refused to approve them where the process could not be shown to be arm's-length. See *In re Family Christian, LLC*, 533 B.R. 600, 622-27 (Bankr. W.D. Mich. 2015) (heightened scrutiny for sale to insider entity; improper for the CEO to solicit higher bids from the insider bidder off the record) (quoting *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 745 (6th Cir. 2001)); *In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 549-54 (Bankr. S.D.N.Y. 1997) (denying break-up fee and exclusivity to a buyout group including the debtor's CEO; "[t]he fiduciary obligations of directors pervade bankruptcy administration," and the conduct of a case "not only should be right but must seem right").

15. Capital Assets, Inc. manages the 727 Lofts Property for the Debtor, holds the rent roll, books, maintenance history and tenant relationships that every other bidder must obtain through the data room, Doc. 397, Ex. 1 ¶ 4, has advanced its own funds to the properties and is a creditor of the estate, Doc. 282 ¶ 9, and stands to earn a disposition fee of $15,000 to $20,000 on any sale. Doc. 283 ¶ 15. Its disinterestedness is separately contested by Yamato, with a hearing set for October 22 — the same day as the Sale Hearing. Doc. 356. PJD Consult LLC, the Debtor's proposed real estate consultant, is paid by the Debtor's sole member on a contingency that exists only if residual value reaches the Debtor, and its own retention application concedes its agreement "does not warrant a disinterestedness finding." Doc. 279 ¶ 16 & Ex. 1 ¶ 7. Yamato does not suggest that either has bid or intends to bid; it asks the Court to adopt the safeguard such circumstances ordinarily call for — that no trustee, independent manager, or professional employed or proposed to be employed by either estate under 11 U.S.C. §§ 327 or 328, including counsel, brokers, consultants, accountants and property managers, and no affiliate, principal or employee of any of them, may bid without prior Court approval after disclosure of all connections, and that each

Qualified Bid disclose the bidder's connections, if any, to the Debtor, PJD Consult LLC, Capital Assets, Inc., CBRE, Inc., the 727 Lofts Trustee and his professionals, and ACRE.

C. The Sale Order and Objection Bar Should Not Foreclose Rights Before the Sale Order Exists

16. The Settlement Agreement has the Debtor and ACRE negotiating the form of Sale Order between themselves, in form and substance acceptable to ACRE, by October 6. Settlement Agreement ¶ 1.B. The proposed Bid Procedures Order bars anyone who does not object at least two business days before the October 22 Sale Hearing, from ever objecting to the sale "free and clear" of liens, claims and encumbrances, and would deem silence to be consent. It is not clear from the proposed Bid Procedures Order when a proposed Sale Order will be filed. The potential effect of the timing in the Bid Procedures Order is to bar an objection to a Sale Order that no party outside the Debtor and ACRE has yet seen. This cannot be allowed and should also not be read to bar an objection to the priority or validity of the Debtor's asserted second mortgage specifically. The Sale Order should be filed and served on all parties who have appeared in this case and the 727 Lofts cases not less than ten days before the Sale Hearing; the objection bar should be limited to objections to the sale of the property to the Successful Bidder; and no failure to object should be deemed consent to any finding concerning the Debtor's interests in the 727 Lofts Property or any other property. Any § 363(m) good-faith finding should be confined to the Successful Bidder and the sale transaction and not extend to the Debtor's acquisition or conveyance of its asserted interest.

D. The Debtor Should Not Co-Direct the Sale

17. As written, the Bid Procedures do not merely let the Debtor convey its asserted interest — they make the Debtor a co-seller with joint authority over every discretionary decision

in the sale process: who qualifies as a Qualified Bidder, whether a bidder may be excluded or required to make further showings, how the Auction is conducted, who is designated the Successful Bidder, and whether the procedures themselves are modified. Bid Procedures ¶¶ 8, 9, 12, 15. While Yamato had concerns about this role prior to the appointment of a chapter 11 trustee, it is now wholly improper for the Debtor to exercise the authority currently written into the Bid Procedures. A chapter 11 trustee will step into the Debtor's shoes imminently and is the appropriate party to evaluate bids and host the auction. The Court has determined the Debtor is unable to run its business in bankruptcy—it necessarily follows that the Debtor should not be running a sale process either.

## II. OBJECTION TO THE 9019 MOTION AND SETTLEMENT AGREEMENT [DOC. 398]

### A. The Compromise Is Properly Limited to ACRE's Claim and Should Stay That Way

18. The 9019 Motion reduces ACRE's claim, Doc. 398 ¶¶ 12-16, and describes the Debtor's liability to ACRE as in rem, id. ¶ 5, yet is silent as to the Debtor's title to the property. While this is the correct scope of the order, the order should not be allowed to have any effect on third parties. A compromise binds only the parties who make it; it cannot adjudicate the rights of Fannie Mae, CREO, Fairfax, Auerbach, GAM Chestnut, the *Louis* plaintiffs, or Yamato, none of whom negotiated or signed it. Any finding about the validity or effectiveness of the Debtor's instruments, any finding that the Debtor acted in good faith in exercising its remedies, and any release running to the Debtor would fall outside both the compromise and the record before the Court, and should be excluded from the order.

19. The Settlement Agreement recites that it binds the parties' "related entities and affiliates . . . officers, directors, members, managers, agents, predecessors, successors and assigns." Settlement Agreement ¶ 9. That language cannot bind non-signatory Kulick entities such as

Barcelona, or parties holding interests in them, to the allowance of ACRE's claim "without offset, counterclaim, avoidance . . . or other defense," id. ¶ 1.A, or to any other term of the settlement. The order should state that the Settlement Agreement binds only its signatories and their respective estates, and that any release by the 727 Lofts estates of claims against the Debtor is effective only if separately approved by order in the 727 Lofts cases, on notice to their creditors.

## III. REQUESTED PROVISIONS

20. Yamato requests that the Bid Procedures Order and the order approving the Settlement Agreement include the following, in substance, and direct that they be carried into the Sale Order:

(1) **No determination of the Debtor's interests.** Nothing in these Orders, the Settlement Agreement, the Bid Procedures, the Sale Order or any purchase agreement determines, or shall be construed as a finding concerning, the existence, validity, priority, extent, effectiveness or avoidability of (a) any power of attorney granted to or exercised by the Debtor, (b) the second mortgage recorded by the Debtor against the 727 Lofts Property, (c) the deed in lieu of foreclosure and related agreement executed by the Debtor with respect to the 727 Lofts Property, (d) any transfer or purported transfer of the Equity Interests to the Debtor, (e) the Debtor's right and title to the 727 Lofts Property, or (f) any comparable instrument, transfer or remedy exercised by the Debtor with respect to any other property or entity. The Debtor's participation in the sale process is solely for the purpose of conveying whatever interest it may hold and is not an admission or determination that it holds any.

(2) **Conveyance of existing interests, if any.** The sale conveys all right, title and interest, if any, of the Debtor's estate and of the estates of 727 Lofts Best Living, LLC and 727 Lofts Holdings, LLC in the 727 Lofts Property and the Equity Interests, each estate conveying whatever interest it holds, without any determination as between them.

(3) **Bids by fiduciaries, estate professionals and affiliates.** No trustee, examiner or independent manager of either estate, no person employed or proposed to be employed by the Debtor or the 727 Lofts estates under 11 U.S.C. §§ 327 or 328 (including counsel, brokers, consultants, accountants and property managers), and no affiliate, principal or employee of any of them may submit a bid, directly or indirectly or as a participant in another bidder's bid, without prior order of the Court entered after notice and disclosure of all connections to the Debtor, the 727 Lofts estates, their professionals and ACRE. Each Qualified Bid shall disclose the

bidder's connections, if any, to the Debtor, PJD Consult LLC, Capital Assets, Inc., CBRE, Inc., the 727 Lofts Trustee and his professionals, and ACRE.

(4) **Sale Order and objection bar.** The proposed Sale Order shall be filed and served on all parties who have appeared in this case and in the 727 Lofts cases not less than ten days before the Sale Hearing. The bar on objections shall apply only to objections to the sale of the 727 Lofts Property to the Successful Bidder; no failure to object shall be deemed consent to any finding concerning the Debtor's interests in the 727 Lofts Property or any other property, and shall not be deemed to waive any party's right to contest the priority or validity of the Debtor's asserted second mortgage in the *Louis* adversary proceeding or otherwise.

(5) **Section 363(m) findings.** Any finding of good faith under 11 U.S.C. § 363(m) is limited to the Successful Bidder as purchaser and to the sale transaction. The findings in the Bid Procedures Order determine nothing concerning ownership of the 727 Lofts Property or the Equity Interests.

(6) **Attachment to proceeds and escrow.** All liens, claims, encumbrances and interests in the 727 Lofts Property and the Equity Interests, other than ACRE's to the extent paid at Closing, attach to the net proceeds with the same validity, priority, extent and defenses they had in the property, including the claims asserted in the *Louis* adversary proceeding and any lien preserved under 11 U.S.C. § 551.

(7) **No release or impairment of third-party claims; no binding of non-parties.** Nothing in these Orders or the Settlement Agreement releases, waives, compromises, subordinates or impairs any claim, cause of action, defense or right of any person other than the Debtor and ACRE, including the claims in the *Louis* adversary proceeding, the claims of the 727 Lofts estates, and the claims of parties in the Barcelona and other Kulick-related cases and of Yamato, all of which are preserved. Notwithstanding Settlement Agreement ¶ 9, the Settlement Agreement binds only its signatories and their estates. Any release by the 727 Lofts estates is effective only if separately approved by order in those cases after notice to their creditors.

(8) **No preclusive effect.** Neither these Orders nor the Settlement Agreement shall have any res judicata, collateral estoppel, law-of-the-case or other preclusive effect in any proceeding concerning the Debtor's interests in any property other than the 727 Lofts Property, and shall not be cited by the Debtor as evidence of the validity or effectiveness of any instrument, remedy or transfer.

## IV. RESERVATION OF RIGHTS

21. Yamato reserves all rights to supplement this Limited Objection, to object to any proposed Sale Order, to seek discovery and present evidence, and to seek relief in the 727 Lofts cases and the *Louis* adversary proceeding. Nothing herein shall be construed as an admission that

the 727 Lofts Property, the Equity Interests, Barcelona or any other property the Debtor claims through the power of attorney is property of the Debtor's estate.

**CONCLUSION**

Yamato respectfully requests that the Court (a) adjourn the hearing on the Sale Motion and 9019 Motion to a later date to allow the chapter 11 trustee to evaluate the requested relief; (b) deny the Sale Motion and the 9019 Motion unless the Bid Procedures Order and the order approving the Settlement Agreement include the provisions in section III above and direct that they be carried into the Sale Order; and (c) grant such other relief as is just.

Dated: October 2, 2026

Respectfully submitted,

/s/ Samuel S. Ory
Samuel S. Ory, OBA #30340
FREDERIC DORWART, LAWYERS pllc
124 E. 4th St.
Tulsa, OK 74103
Tel: (918) 583-9922
sory@fdlaw.com

-and-

Alex Dimock (admitted *pro hac vice*)
BRACEWELL LLP
1445 Ross Avenue, Suite 3800
Dallas, TX 75202
alex.dimock@bracewell.com

-and-

Stuart Glick (admitted *pro hac vice*)
BRACEWELL LLP
31 W. 52nd Street, Suite 1900
New York, NY 10019
stuart.glick@bracewell.com

-and-

Jonathan Lozano (admitted *pro hac vice*)
BRACEWELL LLP
111 Congress Avenue, Suite 2300
Austin, TX 78701
jonathan.lozano@bracewell.com

*Attorneys for Yamato OKC Lender, LLC*

## CERTIFICATE OF SERVICE

I certify that on October 2, 2026, the foregoing was served through the Court's CM/ECF system on all parties registered to receive electronic notice, and by electronic mail on counsel for the Debtor, counsel for ACRE Q018 Retention Holder LLC, counsel for Daniel J. Sherman as chapter 11 trustee, and the Office of the United States Trustee.

/s/ Samuel S. Ory