**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br>YSA INVESTMENTS 1, LLC,<br>Debtor. | Chapter 11<br>Case No. 26-12806 (SAH) |

**SAPEREAN'S REPLY TO AUERBACH GROUP'S OBJECTION TO JOINT MOTION TO APPROVE STIPULATION AND FOR RELIEF FROM THE AUTOMATIC STAY**

Saperean Capital IV TB Note Lender KD4, LLC ("**Lender**"), by its undersigned counsel, replies to the Auerbach Opportunity Fund 1, LP, Auerbach Opportunity Fund III, LP and Auerbach Opportunity Fund IV, LP's (collectively "**Auerbach**") Objection [Doc. 459] ("**Objection**") to the *Joint Motion for Entry of an Order Approving Stipulation and Motion for Relief from the Automatic Stay* [Doc. 377] ("**Motion**").

**RELEVANT BACKGROUND**[1]

1. Fairfax Investors, LLC, Fairfax Best Living, LLC, Woodland Oaks Best Living, LLC, and Woodland Oaks Investors, LLC ("**Borrowers**") executed a June 1, 2022, Promissory Note evidencing a $60,800,000 loan ("**Loan**"), secured by a first-priority Mortgage covering the Fairfax and Woodland Oaks apartment properties (collectively, the "**Property**"). Ex. 1, ¶¶ 4-10; Exs. A, C, D thereto.

2. Following Borrowers' defaults, Lender sent default and acceleration notices on September 19 and October 9, 2025. The Loan matured on December 1, 2025. A state-court receiver was appointed in January 2026. The above-captioned debtor in this bankruptcy case, YSA Investments 1, LLC ("**YSA**"), does not own or possess fee title to the Property; it merely asserts a

[1] Lender's August 4, 2026, stay-relief motion in *In re Fairfax Investors, LLC, et al.*, Case No. 26-11984, Doc. 110, and its accompanying materials are attached hereto as **Exhibit 1**, for factual support.

second mortgage and rights under membership-interest pledges. Ex. 1, ¶¶ 11-22.

3. As of Borrowers' June 12, 2026 petition date, Lender claimed $61,780,882.59 in outstanding indebtedness, including $55,447,462.30 in principal. Ahmadian Aff., ¶ 16 (Ex. 1, Ex. I). July 2026 appraisals value Fairfax at $11.2 million and Woodland at $25.3 million, totaling $36.5 million combined. Even Borrowers' own February 2026 broker opinions total only $48.9-$54 million. Ex. 1, ¶¶ 27, 31-33; Exs. J, K thereto. As of October 2026, the outstanding indebtedness owed to Lender exceeds $67,000,000.00.

4. On August 28, 2026, the Court entered its *Order Granting Motion for Stay Relief and Approving Stipulation* [Doc. 143] in Borrowers' bankruptcy ("**Stay Relief Order**"), attached as **Exhibit 2**. The Stay Relief Order grants stay relief as to the Property, restricts interference by Borrowers (and their owners and members), memorializes YSA's promised consent, and binds successor trustees. Ex. 2, ¶¶ 3-4, 8-9.

## ARGUMENT

### A. Auerbach's Equity Calculation Disregards the Common, Cross-Collateralized Secured Debt and Improperly Attempts to Force a Debt Allocation Between the Two Properties, in Violation of the Loan Documents

5. Auerbach compares its asserted (and entirely unsupported) $19 million Fairfax value with a supposed $16 million senior encumbrance. Objection at 2. But the Note makes Borrowers jointly and severally obligated, and the Mortgage secures the Note with both properties. Ex. 1, Ex. A, Recitals and § 2.7; Ex. C, §§ 1.1, 2.1. Auerbach identifies no contractual provision limiting Fairfax's exposure to $16 million. A scheduled allocation at loan origination does not, without more, amend those obligations or establish such a limitation.

6. Both properties secure the common debt. The values of the properties must be considered together without counting the debt twice, and the Borrowers cannot attribute a debt allocation to only one of the properties in violation of the express terms of the loan documents.

The appraised $36.5 million combined value falls **more than $30 million** below the outstanding indebtedness. Even the highest combined broker estimate, $54 million, is well below the $55,447,462.30 **principal alone**. Furthermore, that alternative does not include interest, default interest, fees, attorneys' fees, post-petition interest, and it does not subtract YSA's own junior lien as a liability. Ex. 1, ¶¶ 27, 31-33. Simply put, Auerbach had absolutely no basis in fact to allege there is equity in the Property and its Objection is therefore frivolous.

7. Lender bears the no-equity burden under 11 U.S.C. § 362(g)(1). Although YSA's lack of fee ownership does not itself satisfy that burden, the Court must evaluate the estate's actual junior lien interest. *In re A Partners, LLC*, 344 B.R. 114, 121–27 (Bankr. E.D. Cal. 2006). Here, the senior debt amply exhausts the identified collateral value well before YSA's lien is even reached, consistent with YSA's no-equity stipulation. Motion [Doc. 377]. Auerbach supplies no appraisal with its Objection and does not reconcile its figures with the common debt or the two-property valuations. Its allegations are all conclusory and entirely unsupported. Considering that YSA contends to be owed nearly $1 billion dollars by the Borrowers and related Kulick-entities, there will be absolutely no equity left over for Auerbach.

8. Nor does 11 U.S.C. § 522(a)(2) establish Auerbach's proposed valuation rule. That definition applies to the exemption section, not universally to stay relief. Auerbach's $24 million stabilized Fairfax figure is also not an as-is valuation. Lender's appraisals distinguish present value from prospective stabilization years down the road in July 2028. Ex. 1, Ex. J, ECF pp. 4, 151. The capital, time, and risk required to achieve stabilization cannot be ignored.

**B. The Objection Identifies No Realistic Reorganization for YSA**

9. Once lack of equity is established, the opposing party bears the remaining burden. 11 U.S.C. § 362(g)(2). *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988), requires a "reasonable possibility of a successful reorganization

within a reasonable time." (internal citations omitted). Auerbach's assertion that the Property could thrive under better management identifies no funded refinancing, executable sale, capital commitment, or other concrete means by which YSA could realize value from its junior lien interest. Objection at 2-3.

10. The Receiver describes severe deferred maintenance, utilities delinquencies, and operating deficits after capital expenditures, with approximately $6.1 million in immediate and short-term repair needs. Shefman Decl., ¶¶ 8-17 (Ex. 1, Ex. H). His declaration also describes active stabilization efforts. *Id.*, ¶¶ 18-22. The issue is not whether professional management could improve these apartments, but whether continued restraint of foreclosure serves a realistically achievable reorganization **of YSA**, rather than merely preserving Auerbach's investment opportunity.

11. Insurance and asserted adequate protection do not independently defeat § 362(d)(2), which supplies a separate basis for relief. 11 U.S.C. § 362(d)(1)-(2). Moreover, Auerbach's cited *In re Big Dog II, LLC*, 602 B.R. 64, 70-71 (Bankr. N.D. Fla. 2019), rejects a *per se* equity-cushion rule. Neither insurance nor that decision establishes the missing collateral value or a feasible reorganization here.

## C. Auerbach Has Not Established Standing or Party-In-Interest Status in This Case

12. The Objection alleges in a conclusory fashion that Auerbach is a "preferred equity holder in Fairfax." Objection at 1. However, the Objection does not provide any documentation or facts to support that allegation, and more importantly, it does not identify Auerbach as a creditor or equity holder **of YSA**. The enumerated equity-security-holder category concerns equity **of the debtor in bankruptcy**. 11 U.S.C. §§ 101(17), 1109(b). Investment in another non-debtor or creditor entity does not confer that entity's standing. *In re Refco Inc.*, 505 F.3d 109, 116-18 (2d Cir. 2007) (holding that investors in a company that was a defendant in a preference action were

not "parties in interest" with standing to appear and object to settlement of the action, and noting that bankruptcy court is a forum where creditors and debtors can settle their disputes with each other, and any internal dispute between a creditor and that creditor's investors belongs elsewhere).

**D. The Trustee's Appointment Does Not Resolve the Statutory Inquiry**

13. Auerbach questions the stipulation's negotiation and requests Trustee review. Objection at 1-2. Lender does not ask the Court to substitute former management's consent for an independent determination, or to foreclose the Trustee's participation. But neither the appointment of the Chapter 11 Trustee, nor criticism of management establishes equity or a viable reorganization. The Court can decide stay relief on the debt, valuation, and reorganization evidence. An open-ended delay is not warranted merely because Auerbach hopes for a different outcome. Regardless, Lender is confident that the Trustee will find there is no equity in the Property.

**E. Paragraph 4 of the Stay Relief Order Bars the Objection**

14. Assuming *arguendo* Auerbach's asserted ownership in the Borrowers, Auerbach falls within paragraph 4 of the Stay Relief Order's express "owners, members" language. That provision of the Stay Relief Order expressly prohibits Borrowers (and their owners and members, which would include Auerbach) from prosecuting a "contested matter" or other proceeding whose purpose or reasonably foreseeable effect is to "restrain, stay, postpone, condition, impair, or otherwise interfere with" Lender's authorized remedies. Ex. 2, ¶ 4. The Objection seeks precisely that interference, in clear violation and direct contempt of the Stay Relief Order. Paragraph 8 expressly records YSA's agreement to stay relief, and recites that a separate order in this bankruptcy is a material component of the parties' agreement in the Stay Relief Order. Auerbach should be prohibited and enjoined from filing it by explicit agreement of the entity it allegedly invested in.

Respectfully submitted,

*/s/ Kiran A. Phansalkar*

Kiran A. Phansalkar, OBA #11470
Preston M. Sullivan, OBA #33619
McAfee & Taft A Professional Corporation
8th Floor, Two Leadership Square
211 N Robinson Ave
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
Email: kiran.phansalkar@mcafeetaft.com
preston.sullivan@mcafeetaft.com

and

Nicholas A. Griebel (*admitted pro hac vice*)
POLSINELLI PC
7676 Forsyth Boulevard, Suite 800
St. Louis, Missouri 63105
Telephone: (314) 622-6613
Email: ngriebel@polsinelli.com
***Attorneys for Creditor Saperean Capital IV TB Note Lender KD4, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2026, I electronically transmitted this filing to the Clerk of Court for the U.S. District Court for the Western District of Oklahoma using the CM/ECF system which sent a notice of electronic filing to all counsel of record who are registered CM/ECF users in this case, including counsel for the Debtor.

I further certify that on October 7, 2026, a true and correct copy of this filing was served on the following parties who have not yet entered an appearance or are not registered CM/ECF users, via US Mail, first class, postage prepaid, and properly addressed as follows:

YSA Investments 1, LLC
8 The Green, Suite B
Dover, Delaware 19901
**Debtor**

Capital Assets, Inc.
502 W. 6th St.
Tulsa, Oklahoma 74119

*/s/ Kiran A. Phansalkar*
Kiran A. Phansalkar