**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| YSA Investments 1, LLC, | ) | |
| | ) | Case No. 26-12806-SAH |
| Debtor. | ) | |

**OMNIBUS REPLY OF FEDERAL NATIONAL MORTGAGE ASSOCIATION TO OBJECTIONS TO MOTION TO MODIFY AUTOMATIC STAY AND TO ABANDON PROPERTY AS BURDENSOME**

Federal National Mortgage Association ("**Fannie Mae**"), by and through undersigned counsel, files this omnibus reply (this "**Reply**") to *Auerbach Opportunity IV, LP's Objection to Federal National Mortgage Association's Motion to Modify Stay and Abandon Property as Burdensome Granting Relief from the Automatic Stay and Brief in Support Thereof* [Docket No. 505], as amended [Docket No. 512] (collectively, the "**Auerbach Objection**"), and to the *Response of Remington Ranch's Best Living, LLC to Federal National Mortgage Association's Motion to Modify Automatic Stay and to Abandon Property* [Docket No. 506] (the "**Remington Response**," and collectively with the Auerbach Objection, the "**Objections**"). In support, Fannie Mae respectfully states as follows:

## OMNIBUS REPLY

1. As an initial matter, Auerbach Opportunity Fund IV, LP ("**Auerbach**"), by its own description, is an equity investor in Remington Ranch's Best Living, LLC ("**Remington**"), a different debtor in a separate chapter 11 case (Case No. 26-12842-SAH),

but not in YSA Investments 1, LLC ("**YSA**"). Auerbach Obj., Dkt. No. 512, at 1. Auerbach therefore has no standing to object to relief sought in the chapter 11 case of YSA.

2. Further, in the *Federal National Mortgage Association's Motion to Modify Automatic Stay and to Abandon Property as Burdensome* [Docket No. 412] (the "**Motion**"),[1] Fannie Mae seeks relief from the automatic stay in the chapter 11 case of YSA, and only to the extent YSA claims an interest in the Property by virtue of the purported Special Warranty Deed (Deed-in-Lieu of Foreclosure). Mot. ¶ 6. The Motion does not seek relief from the automatic stay in the chapter 11 case of Remington. Fannie Mae would not be able to complete a foreclosure or other enforcement remedies against the Property based on the relief sought in the Motion alone without separately obtaining relief in Remington's chapter 11 case. To that end, Fannie Mae has filed a substantially similar motion in Remington's chapter 11 case. *See Federal National Mortgage Association's Motion to Modify Automatic Stay and to Abandon Property as Burdensome* [Case No. 26-12842, Docket No. 120] (the "**Remington Motion**"). Auerbach and Remington have filed objections to the Remington Motion that mirror the Objections addressed here, and Fannie Mae's position is the same in both cases.

3. The Remington Response states only that Remington opposes the Motion and "contends there is equity in the [P]roperty and it is necessary for a reorganization." Rem. Resp., Dkt. No. 506, ¶¶ 4–5. It offers no valuation, no evidence, and no authority. And the relief Remington actually requests—that the Court "limit any relief granted to the

[1] Capitalized terms not otherwise defined herein have the meanings assigned to them in the Motion.

specific property and matters identified in the Motion" and "preserve Remington's rights and defenses"—is relief the Motion already contemplates. *Id.* at 2. The Motion is limited to the Property and to YSA's purported interest in it. Whether the stay should be lifted as to Remington's interest in the Property is the subject of the Remington Motion, and the relief sought here would not, by itself, prejudice Remington.

4. The Auerbach Objection objects to the Motion primarily on the basis that there allegedly is equity in the Property and that the Court has appointed a chapter 11 trustee in YSA's chapter 11 case. Auerbach Obj., Dkt. No. 512, at 1–3.

5. These issues are immaterial because (1) there is no credible evidence that there is equity in the Property; (2) even if there were equity in the Property, that equity would be preserved and distributed to the appropriate parties through a foreclosure sale in the State Court Litigation; and (3) YSA has advised that it does not need the Property to reorganize.

6. Auerbach's equity argument is fundamentally misdirected. Section 362(d)(2) asks whether "*the debtor*" has equity in the property and whether the property is necessary to *the debtor's* effective reorganization. 11 U.S.C. § 362(d)(2). Auerbach concedes that YSA has not included the Property on its schedules and that Auerbach *objects* to YSA's claimed interest in the Property. Auerbach Obj., Dkt. No. 512, at 1. Auerbach cannot simultaneously deny that YSA owns the Property and argue that YSA's equity in the Property defeats relief in YSA's case. The equity Auerbach describes, if it exists at all, is unclear and YSA has acknowledged that it does not anticipate needing the Property to effectuate a plan of reorganization. Mot. ¶¶ 9, 11, 14.

7. Nor has Auerbach presented any credible evidence of equity. The Auerbach Objection bases its assertion on Remington's schedules and on "the evidence Auerbach intends to present," and asserts an even higher value in a "stabilized" condition, without identifying the source of any of these valuations. Auerbach Obj., Dkt. No. 512, at 1–2. As discussed at prior hearings before this Court, the schedules filed by the debtor in this case contain significant credibility problems. Fannie Mae has not seen any appraisal or other evidence Auerbach intends to present regarding the Property. The possibility of other evidence, or unsubstantiated allegations regarding the value of the Property in a hypothetical "stabilized" condition, is not sufficient to establish that there is equity in the Property or that Fannie Mae is adequately protected.

8. Auerbach's equity calculation is also incomplete on its face. Auerbach "believe[s]" Fannie Mae's liens total approximately $15,000,000 and computes equity by subtracting only that figure. Auerbach Obj., Dkt. No. 512, at 2. But equity for purposes of section 362(d)(2) is measured against *all* encumbrances on the Property, and the Property is subject to additional junior liens and mortgage interests. Mot., Dkt. No. 412, ¶ 8. ***<u>As of February 2, 2026</u>***, Fannie Mae's indebtedness totaled $16,020,110.83, consisting of principal of $13,470,000.00, accrued interest of $261,691.86, accrued default interest of $140,686.67, and other costs and expenses of $2,147,732.30. *Id.* ¶ 5. Default interest has continued to accrue at 9.86% per annum for the past 8 months and continues to do so. *Id.* To the extent necessary, Fannie Mae will provide an updated payoff amount (to reflect additional interest, fees, and costs that have been incurred since February 2), at or in advance of the hearing on this Motion.

9. Thus, even accepting Auerbach's own "as-is" value of $18,980,000 and taking into account only Fannie Mae's first position lien, the resulting "cushion" as of February 2, 2026 was less than $3,000,000. It is now significantly smaller still, as a result of the junior liens, more than eight months of additional accrued interest, Fannie Mae's attorneys' fees and other additional costs, Fannie Mae's additional protective advances added to the indebtedness under the Loan Documents, and the costs of a sale. Auerbach's reliance on 11 U.S.C. § 522(a)(2), which concerns the valuation of exempt property, does not change this analysis.

10. Moreover, Fannie Mae's interest in the Property is not adequately protected. The City of Stillwater has initiated a nuisance action with respect to the Property, Mot. ¶¶ 10, 13, and Auerbach itself acknowledges that the Property sustained tornado damage in August that has not been repaired. Auerbach Obj., Dkt. No. 512, b at 2. Auerbach's belief that insurance exists, or that Fannie Mae "has additional insurance on the property," *id.*, is not a substitute for adequate protection and does not address the ongoing deterioration of Fannie Mae's collateral or the accrual of interest on its claim. To the contrary, the cost of any insurance Fannie Mae is forced to place on the Property is added to the indebtedness under the Loan Agreement, Loan Agreement § 9.03(a), further eroding whatever hypothetical cushion Auerbach claims exists.

11. In the event that there is equity in the Property, that equity will not be lost by granting the Motion. Any proceeds of a foreclosure sale in excess of Fannie Mae's indebtedness will be distributed to the appropriate parties in interest in the order and priority prescribed by Oklahoma law.

12. The fact that a chapter 11 trustee has now been appointed in YSA's chapter 11 case does not change the situation or the value of the Property. YSA's claimed interest in the Property derives solely from a disputed deed-in-lieu that Auerbach itself challenges, and YSA has already advised that it does not oppose the relief sought in the Motion. Mot. ¶¶ 6, 11. Moreover, the chapter 11 trustee in Remington's case has likewise acknowledged that it does not anticipate needing the Property to effectuate a plan and consents to stay relief in that case. Remington Mot. ¶ 9. There is no need for any further delay.

WHEREFORE, Fannie Mae respectfully requests that this Court (a) overrule the Objections, (b) grant the relief requested in the Motion, and (c) grant any other or further relief that the Court deems appropriate under the circumstances.

Respectfully submitted,

*/s/ Christopher M. Scaperlanda*

Christopher M. Scaperlanda, OBA #31703
Ross A. Plourde, OBA #7193
Gatlin C. Squires, OBA #34795
McAfee & Taft A Professional Corporation
8th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
christopher.scaperlanda@mcafeetaft.com
ross.plourde@mcafeetaft.com
gatlin.squires@mcafeetaft.com

***Attorneys for Federal National Mortgage Association***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court for the Western District of Oklahoma using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are registered C/ECF users in this case.

I further certify that on October 16, 2026, I served a true and correct copy of the foregoing document on the following parties, who have not yet entered an appearance or are not registered CM/ECF users, by first-class mail:

YSA Investments 1, LLC
8 The Green, Suite B
Dover, Delaware, 19901

**Debtor**

_*/s/ Christopher M. Scaperlanda*__
Christopher M. Scaperlanda