**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**OKLAHOMA CITY DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 26-12825-SAH** |
| | § | |
| **727 LOFTS BEST LIVING, LLC**[1] | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |
| **----------------------------------------------------------** | | |
| | § | |
| | § | |
| **YSA INVESTMENTS 1, LLC** | § | **Case No. 26-12806** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| | § | |

---

**SECOND SUPPLEMENT TO TRUSTEES' JOINT AMENDED APPLICATION TO EMPLOYPROPERTY MANAGERS AND ASSET MANAGERS**

---

**TO THE HONORABLE SARAH A. HALL,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Daniel J. Sherman ("Trustee Sherman"), Chapter 11 Trustee for the above referenced jointly administered debtors (the "727 Debtors") in their bankruptcy cases (the "727 Chapter 11 Cases") and Michael E. Deeba ("Trustee Deeba" and collectively, the "Trustees"), Chapter 11 Trustee for YSA Investments 1, LLC ("YSA") in the above referenced bankruptcy case (the "YSA Chapter 11 Case" and together with the 727 Chapter 11 Cases, the "Chapter 11 Cases") file this second supplement to the *Trustees' Joint Amended Application to Employ Property Managers and Asset*

[1] The jointly administered debtors and their respective case numbers are as follows: 727 Lofts Best Living, LLC, Case No. 26-12825-SAH; 727 Lofts Holdings, LLC, Case No. 26-12826-SAH; Remington Ranch's Best Living, LLC, Case No. 26-12842-SAH; Lofts at North Penn Best Living, LLC, Case No. 26-12844-SAH; A-V Village Creek Owner, LLC, Case No. 26-12846-SAH; Barcelona Best Living, LLC, Case No. 26-12850-SAH; Louis Investments, LLC, Case No. 26-12851-SAH; Woodland Manor Best Living, LLC, Case No. 26-12858-SAH; Woodland Manor TIC 1, LLC, Case No. 26-12859-SAH; and Ridge Best Living, LLC, Case No. 26-12869-SAH.

*Managers* [Dkt. No. 311, 727 Chapter 11 Cases; Dkt. No. 567, YSA Chapter 11 Case] (the "Amended Applications").[2]

After filing the Amended Applications, the Trustees have negotiated and are proposing to enter into the Real Estate Asset Management Agreement (the "Proposed Employment Agreement") with Hilco Real Estate, LLC (the "Professional") attached hereto as Exhibit 1.

The Proposed Employment Agreement was negotiated at arm's length and in good faith by the Trustees and the Professional. Each Trustee believes the retention of the Professional requested in his Amended Application is in the best interest of each bankruptcy estate that he is administering.

The Trustees file this Supplement to attach the Proposed Employment Agreement as the Exhibit B-12 to each Amended Application.

In support of the relief requested in the Amended Applications, the Trustees submit the declaration of Jeffrey Azuse, Executive Director of the Professional (the "Declaration") attached hereto as Exhibit 2.

To the best of each Trustee's knowledge, except as set forth in the Declaration, the Professional (i) does not hold or represent any interest adverse to the estates of YSA or the 727 Debtors and (ii) is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, as required by Section 327(a) of the Bankruptcy Code. The Trustees have been informed that the Professional will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances arise, and if any such circumstances arise or are discovered, the Professional will promptly supplement the disclosures contained in the Declaration.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Applications.

WHEREFORE, the Trustees hereby supplement each Amended Application by appending the Proposed Employment Agreement attached hereto as Exhibit 1 as Exhibits B-13 thereto and reiterate their request for relief contained in the Amended Applications for an order authorizing the retention of the Professional as either an asset manager or a property manager on the terms and conditions set forth in each Amended Application and the Proposed Employment Agreement and granting such other and further relief as this Court may deem just, equitable, and proper.

Respectfully submitted,

/s/ *Nicholas K . Gurguis*
Daniel J. Sherman
TX State Bar No. 18241000 (*Admitted Pro Hac*)
Nicholas K. Gurguis
TX State Bar No. 24106036
SHERMAN & YAQUINTO, L.L.P.
509 N. Montclair Ave.
Dallas, TX 75208-5450
Telephone: (214) 942-5502
Facsimile: (214) 946-7601
Email: djsherman@syllp.com; nick@syllp.com

Kevin D. McCullough
TX State Bar No. 00788005 (*Admitted Pro Hac*)
Shannon S. Thomas
TX State Bar No. 24088442 (*Admitted Pro Hac*)
ROCHELLE MCCULLOUGH PLLC
901 Main Street, Suite 3200
Dallas, Texas 75202
Telephone: (214) 953-0182
Facsimile: (888) 467-5979
Email: kdm@romclaw.com;
sthomas@romclaw.com

***Co-General Counsel for Daniel J. Sherman, Chapter 11 Trustee***

/s/ *Jonathan M. Miles*
J. Clay Christensen (OBA # 11789)
Jonathan M. Miles (OBA # 31152)
Brock Z. Pittman (OBA # 32853)
The Parkway Building
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma 73116
Telephone (405) 232-2020
Facsimile (405) 228-1113
Clay@christensenlawgroup.com
Jon@christensenlawgroup.com
Brock@christensenlawgroup.com

***Proposed Counsel for Trustee Michael E. Deeba***

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 11, 2026, a copy of this document was electronically filed in this case with the Clerk of the United States Bankruptcy Court by using the CM/ECF system, and a copy was served on all parties who receive notice via the Court's ECF notification system.

*/s/ Nicholas K. Gurguis*
Nicholas K. Gurguis

Exhibit 1

Real Estate Management Agreement – Hilco Real Estate, LLC

# REAL ESTATE ASSET MANAGEMENT AGREEMENT

This Real Estate Asset Management Agreement, together with any attachment and exhibits hereto (the "Agreement") is entered into by and between (1) Hilco Real Estate, LLC, a Delaware limited liability company ("Hilco") (2) Daniel J. Sherman, solely in his capacities as chapter 11 trustee of each of (i) Remington Ranch's Best Living, LLC, (ii) Lofts at North Penn Best Living, LLC, (iii) A-V Village Creek Owner, LLC, and (iv) Louis Investments, LLC (in such capacities, the "Louis Trustee"), and (3) Michael E. Deeba, solely in his capacity as chapter 11 trustee of YSA Investments 1, LLC (the "YSA Trustee", and together with the Louis Trustee, the "Trustees", and the Trustees together with Hilco, each a "Party", collectively, the "Parties").

## Recitals:

WHEREAS, Trustees are the Trustees of the real property set forth on Exhibit A attached hereto (each a "Property", and collectively, the "Properties");

WHEREAS, the Louis Trustee is the duly appointed chapter 11 trustee in each Louis Debtor's chapter 11 bankruptcy case currently pending in the United States Bankruptcy Court for the Western District of Oklahoma, Oklahoma City Division (the "Court") and being jointly administered under case number 26-12825;

WHEREAS, the YSA Trustee is the duly appointed chapter 11 trustee in the chapter 11 bankruptcy case of YSA currently pending in the Court under case number 26-12806;

WHEREAS, Trustees are the Trustees of the respective real properties set forth on Exhibit A attached hereto (each a "Property", and collectively, the "Properties");

WHEREAS, Trustees seek to engage Hilco to provide certain asset management and real estate advisory and consulting services for the Properties.

## Agreement:

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustees and Hilco agree as follows:

1. Asset Management and Real Estate Advisory and Consulting Services. At Trustees' request, Hilco shall provide the asset management and real estate advisory and consulting services described below (collectively, the "Services") with respect to the Properties. Hilco will perform the Services in a professional and workmanlike manner, consistent with the standard of care of similarly situated advisers performing comparable services. Hilco's role is advisory and supervisory only. Except under a separate written agreement and any required Court approval, Hilco shall not provide day-to-day property management, legal, tax, audit, engineering, environmental, brokerage or construction services, undertake custody of estate funds, bind any Trustee or estate, approve expenditures, or exercise control over estate funds. The applicable Trustee and property manager retain responsibility for staffing, rent and money collection, leasing,

maintenance, resident safety, legal compliance, insurance placement and renewal, tax filings and payments, and implementation of approved recommendations. Hilco shall exercise reasonable care in performing the Services, but does not undertake continuous monitoring, physical inspections, certification of compliance, or detection of every defect or risk. Hilco is not required to advance funds, guarantee funding, or pay Property obligations.

a) *Liaison with Trustees and Court*: Serve as the principal operational liaison among the property management companies, Trustees, and as appropriate, the Court and its authorized representatives.

b) *Strategic Direction*: Develop and recommend property-level and portfolio wide operating strategies in consultation with the applicable Trustee, with the objective of preserving and maximizing asset value.

c) *Stakeholder Coordination*: Serve as a designated point of contact for lenders, creditors, insurance representatives, governmental entities, consultants, and other stakeholders regarding property operations and asset performance, subject to the applicable Trustee's direction.

d) *Property Management Oversight*: Monitor and evaluate the performance of certain designated property management companies, including operating results, staffing, leasing, maintenance, resident relations and compliance with approved business plans.

e) *Financial Oversight*: Review property-level financial statements, operating budgets, cash flow, occupancy, collections, delinquency and significant variances from approved budgets.

f) *Cash Flow and Funding Requirements*: Evaluate property-level cash flow and funding needs, identify projected shortfalls, prioritize expenditures, and coordinate funding requests with the Trustees.

g) *Insurance and Property Taxes*: Assist the Trustees with oversight of insurance coverage, claims, property tax assessments, appeals, and related matters, including coordination with appropriate professionals.

h) *Capital Expenditure Oversight*: Evaluate and prioritize significant repairs, deferred maintenance, and capital improvements, including review of proposals, budgets, and recommendations for Trustee approval.

i) *Risk Management and Asset Preservation*: Identify material operational, financial, physical, and regulatory risks affecting the properties and recommend corrective actions.

j) *Third-Party Professional Coordination*: Assist the Trustees in coordinating appraisers, engineers, environmental consultants, insurance professionals, brokers and other professionals engaged in connection with the properties.

k) *Bankruptcy Reporting Support*: Provide operating information, financial analyses, cash flow projections, and other property related information reasonably requested by the Trustee to support required bankruptcy filings and Court reporting. Provide operating information, financial analyses, cash flow projections and other property related information reasonably requested by the Trustees to support required bankruptcy filings and Court reporting.

l) *Transition and Turnover Coordination*: Assist with the orderly transition of property operations, books and records, contracts, tenant information, and funds upon sale, transfer, change in management, or conclusion of the Trustees' administration.

2. Term. The term (the "Initial Term") of this Agreement shall commence upon the execution hereof and shall expire on the date that is twelve (12) months therefrom; provided that at the expiration of the Initial Term, the Agreement shall automatically renew for additional one (1) month increments (each an "Extended Term", and together with the Initial Term, the "Term") until a Party affirmatively terminates the Agreement in accordance with the terms hereof.

3. Termination. Hilco may terminate this Agreement with respect to a Trustee upon written notice to such Trustee for any reason or no reason. Each Trustee may terminate this Agreement with Hilco with respect to any or all Properties managed by such Trustee upon written notice to Hilco for any reason or no reason. Notwithstanding the foregoing, any termination notice sent by any Party shall not be effective before the sixtieth (60th) day after such notice is sent by the applicable Party.

4. Effect of Termination. Upon termination of this Agreement by a Trustee, Hilco shall: (a) immediately discontinue all Services to such Trustee; and (b) deliver to such Trustee all information, reports, papers, and other materials prepared or obtained by Hilco in performing the Services, whether completed or in process. Upon termination, Trustees shall be liable for payment of accrued and unpaid fees and expenses of Hilco as of the effective date of the termination, in accordance with Section 7 below.

5. Authority. Hilco is authorized only to provide the Services set forth in this Agreement at the direction and on the behalf of the Trustees, but not to commit the Trustees to any agreement or arrangement or to sign any instrument on behalf of the Trustees. Hilco may perform the Services through its affiliates and may engage employees, consultants, subcontractors or independent contractors to assist in performing the Services, provided Hilco remains responsible for persons engaged directly by Hilco. Separately reimbursable third-party costs require the applicable Trustee's prior approval. Hilco is an independent contractor.

6. Additional Properties. Trustees may add additional properties to Exhibit A with the consent of Hilco (which consent may be provided in email) in which case such additional properties shall be considered "Properties" for purposes of this Agreement.

7. Compensation.

(a) *Fees*. In consideration of the Services, Hilco shall earn a monthly fee equal to the greater of $4,000 or $15 per unit, per Property ("Fees"). Invoices for Fees are due and

payable by the applicable Trustee upon receipt.

(b) *Additional Services*. In the event Hilco provides Additional Services at the request of the Trustees, the Parties shall mutually agree upon the scope and fees applicable for any such Additional Services in writing ("Additional Services").

(c) *Expenses*. The Trustees shall reimburse Hilco for all reasonable and documented out-of-pocket expenses incurred by Hilco in connection with its performance of the Services hereunder (collectively, "Expenses"). Expenses means all reasonable, documented (through receipts or invoices) out-of-pocket expenses incurred by Hilco in connection with its performance of its Services hereunder, including, without limitation: reasonable expenses of advertising, marketing, travel and transportation, including, the cost of out-of-town travel and postage and courier/overnight express fees, travel to the Properties, and other mutually agreed upon expenses incurred in connection with performing the services required by this Agreement. Expenses shall be due and payable upon thirty (30) days after the date of invoice. All fees and expenses payable to Hilco hereunder shall be free and clear of any liens, claims and encumbrances, including the liens of any secured parties. Hilco shall not be responsible for any other fees or commissions in connection with the property management or disposition of the Properties.

8. No Guaranty. Hilco has not guaranteed, and is not hereby guaranteeing, any specific result on the Services.

9. [Reserved.]

10. Representations, Warranties and Additional Covenants.

(a) Trustees represents and warrants to Hilco that as of the date hereof: (i) Trustees has all legal right and authority over the Properties, (ii) Trustees has taken all necessary actions required to authorize the execution, delivery and performance of this Agreement and the related documents contemplated hereby, and other than the Retention Order, no further consent or approval is required for Trustees to enter into and deliver the Agreement and to perform its obligations under the Agreement, and (iii) no court order or decree of any federal, state or local governmental authority or regulatory body is in effect that would prevent or impair, or is required for Trustees' consummation of, the transactions contemplated by this Agreement. Trustees further represents and warrants to Hilco that any amounts due and payable hereunder shall be free and clear of any liens, claims, or encumbrances of any kind whatsoever.

(b) Hilco represents and warrants to Trustees that (i) Hilco is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware, (ii) Hilco has the requisite power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby; and (iii) Hilco has taken all necessary actions required to authorize the execution, delivery and performance of this Agreement and the related documents contemplated hereby, and no further consent or approval is required for the Hilco to enter into and deliver the Agreement and to perform its obligations under the Agreement.

11. General Provisions.

(a) Trustees shall promptly file a motion under section 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code") authorizing Trustees' entry into this Agreement, which Trustees agrees to use its reasonable efforts to obtain (the "Retention Order"). Trustees will use its reasonable efforts to ensure that such order shall specifically provide that: (i) Hilco is being retained pursuant to sections 327 and 328 of the Bankruptcy Code by Trustees; (ii) the payment of all fees and expenses hereunder to Hilco shall be free and clear of all liens, claims and encumbrances; (iii) all such payments of fees and expenses hereunder shall be made without further order of the Court; (iv) notwithstanding the liens or claims of Trustees' secured lenders, including any debtor in possession financing lender, any amounts paid to Hilco hereunder, will not be reduced or capped by the terms or conditions of any debtor in possession financing, cash collateral, or related order; (v) the payment of all fees and expenses to Hilco related to the Services shall be included in any approved debtor-in-possession, cash collateral, or other post-petition financing budget; and (vi) all such fees and expenses due and owing to Hilco hereunder shall be included in any carve-out provided in any debtor in possession financing, cash collateral, or related order. Trustees shall seek express approval of Hilco's compensation under section 328(a), payment of Fees and Expenses free and clear of liens, payment without further Court order, inclusion in applicable financing and cash-collateral budgets and carve-outs, and a funded retainer or other payment reserve acceptable to Hilco. Hilco has no obligation to commence Services for an estate until an effective retention order acceptable to Hilco has been entered. Because compensation consists of fixed monthly Fees rather than hourly charges, Hilco shall not be required to maintain detailed time records or file interim fee applications except as expressly required by the Court or retention order.

(b) Trustees acknowledges and confirms that, in rendering the Services, Hilco will be using and relying on, and assuming the accuracy of, without any independent verification, data, material, and other information (collectively, the "Information") furnished to Hilco by or on behalf of Trustees or other third parties (including their agents, counsel, employees, and representatives). Trustees understands that Hilco will not be responsible for independently verifying the accuracy of the Information and shall not be liable for inaccuracies in any such Information. Trustees will cooperate with Hilco in all phases of Hilco's performance of the Services. Hilco assumes no responsibility to revise or update any information contained in any report or deliverable prepared in connection with the Services (each, a "Deliverable"). Our performance of the Services will be dependent upon Trustees providing us with accurate and timely information, as applicable. The Services and any Deliverable may not be relied upon by any person or entity other than Trustees. Hilco makes no representations or warranties of any kind regarding the Services or any Deliverable.

(c) Neither party may assign this Agreement or any interest therein, without the written consent of the other. Subject to such limitation, this Agreement shall in all respects be binding upon and inure to the benefit of the successors and assigns of the respective parties hereto.

(d) Trustees and Hilco shall deal with each other in good faith so as to allow both parties to perform their duties and earn the benefits of this Agreement.

(e) Any correspondence or required notice shall be addressed as follows and shall be deemed given (i) when received if hand delivered, (ii) three (3) business days after depositing in the United States mail if sent first-class certified mail, and (iii) on the next business

day if sent by overnight mail:

| | |
|---|---|
| If to Hilco: | Hilco Real Estate, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, Illinois 60062<br>Email: legal@hilcoglobal.com<br>Attn: Office of the General Counsel |
| If to Louis Trustee: | Daniel J. Sherman<br>Chapter 11 Trustee of Louis Investments<br>509 N. Montclair Avenue<br>Dallas, Texas 75208<br>Email: corky@syllp.com<br>Phone: (214) 942-5502<br><br>(with a copy, which shall not constitute notice, to)<br><br>Rochelle McCullough, L.L.P.<br>Bank of America Plaza<br>901 Main St #3200<br>Dallas, TX 75202<br>Attn: Kevin McCullough<br>Email: kdm@romclaw.com<br>Phone: (214) 953-0182 |
| If to YSA Trustees: | Michael E. Deeba<br>Chapter 11 Trustee of YSA Investments<br>119 N Robinson, #300<br>Oklahoma City, OK 73102<br>Phone: (405) 615-1010<br>Email: mike.d@medeeba.com<br><br>(with a copy, which shall not constitute notice, to)<br><br>Christensen Law Group, P.L.L.C.<br>The Parkway Building<br>3401 N.W. 63rd Street, Suite 600<br>Oklahoma City, Oklahoma 73116<br>Attn: J. Clay Christensen<br>Email: Clay@christensenlawgroup.com<br>Phone: (405) 232-2020 |

(f) This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

(g) By executing or otherwise accepting this Agreement, Trustees and Hilco acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

(h) This Agreement may be executed in original counterparts, and if executed and delivered via facsimile or email shall be deemed the equivalent of an original.

(i) This Agreement creates no third-party beneficiaries.

(j) The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect, and the invalid or unenforceable provision shall be reformed to the minimum extent required to render it valid and enforceable and to effect the intent of this Agreement.

(k) No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such party. The failure by either party to enforce, or the delay by either party in enforcing, any of said party's rights under this Agreement shall not be construed as a waiver of such rights, and said party may, within such time as is provided by the laws established by any government with applicable jurisdiction, commence appropriate suits, actions or proceedings to enforce any or all of such rights. A waiver by either party of a default in one or more instances shall not be construed as a waiver in other instances.

(l) This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party to this Agreement except as specifically set forth in this Agreement. All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

(m) All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of the Agreement.

(n) Limitation of Liability. To the fullest extent permitted by applicable law and the retention order, the aggregate liability of Hilco and its affiliates and their respective personnel, to each applicable estate arising out of or relating to this Agreement shall not exceed the Fees actually paid by that estate during the twelve (12) months preceding the event giving rise to liability. Hilco shall not be liable for consequential, incidental, indirect, special, exemplary or punitive damages, lost profits or diminution in asset value, regardless of theory of liability. Notwithstanding anything herein, the limitations set forth in this Section shall not apply to damages

caused due to, or in connection with, Hilco's and its affiliates' and their respective personnel's gross negligence, willful misconduct, or fraud.

(o) Insurance. Each Trustee shall cause appropriate property and operational insurance to be maintained for each Property and shall cause Hilco to be named as an additional insured under each applicable liability policy. The Trustees shall provide evidence of coverage and promptly notify Hilco of known cancellation or material reduction.

(p) Excused Performance. Hilco shall not be responsible for delay or nonperformance caused by unavailable Information, denied access, delayed Trustee approvals, failures of independently retained third parties, or events beyond Hilco's reasonable control, provided Hilco promptly notifies the applicable Trustee and uses reasonable efforts to mitigate the effect.

(q) Enforcement Costs. The prevailing Party in an action or proceeding to enforce this Agreement is entitled to recover reasonable attorneys' fees and costs actually incurred, subject to applicable bankruptcy law and any required Court approval.

(r) The construction, validity and interpretation of this Agreement will be governed by the internal law of the State of Illinois, without regard to any choice of law principle that might otherwise result in the application of the law of any other jurisdiction, and to the extent applicable, the Bankruptcy Code. The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other in respect of any matter arising out of or in connection with this Agreement.

(s) The parties hereby agree, understand, and acknowledge that any and all suits or claims arising out of a dispute as to the meaning of or performance under this Agreement shall be filed and maintained only in the Court, and that such court will have exclusive jurisdiction over any claims arising out of or concerning any term, part or provision of this Agreement. Each party hereto hereby irrevocably consents to the jurisdiction of the Court with respect to any action to approve or enforce this Agreement and waive any right to commence any action in any other forum or to contest the Court's jurisdiction, including, without limitation, as an inconvenient forum.

(t) This effectiveness of this Agreement and each party's rights and obligations hereunder are conditioned in all respects on the approval of this Agreement by the Court.

[*Remainder of page intentionally left blank*]

IN WITNESS WHEREOF, Trustees and Hilco have executed and delivered this Agreement as of the date first above written.

**DANIEL J. SHERMAN, CHAPTER 11 TRUSTEE OF REMINGTON RANCH BEST LIVING, LLC, LOFTS AT NORTH PENN BEST LIVING, LLC, A-V VILLAGE CREEK, LLC, AND LOUIS INVESTMENTS, LLC**

______________________________

Title: Chapter 11 Trustee

Date:

**HILCO REAL ESTATE, LLC**

By: Matthew D. Mason

Title: Authorized Signatory

Date:

**MICHAEL E. DEEBA, CHAPTER 11 TRUSTEE OF YSA INVESTMENTS 1, LLC**

______________________________

Title: Chapter 11 Trustee

Date:

## Exhibit A

**Properties**

| No. | Property | Property address | Property Owner | Applicable Trustee |
|---|---|---|---|---|
| 1. | Lofts at North Penn | 15501 N Pennsylvania Ave, Edmond, OK 73013 | Lofts at North Penn Best Living LLC | Louis Trustee |
| 2. | Remington Ranch | 1815 N Boomer Rd, Stillwater, OK 74075 | Remington Ranch's Best Living LLC | Louis Trustee |
| 3. | Village Creek | 6630 S Zunis Ave, Tulsa, OK 74136 | A-V Village Creek Owner LLC | Louis Trustee |
| 4. | The Capitol on 28th | 215 NE 28th St, Oklahoma City, OK 73105 | TRDWind Capitol LLC | YSA Trustee |
| 5. | Woodscape | 4200 N Meridian Ave, Oklahoma City, OK 73112 | B & J Woodscape/Oklahoma City LLC | YSA Trustee |
| 6. | 23 East | 11321 E 23rd St, Tulsa, OK 74129 | A-V 23 East Owner LLC | YSA Trustee |
| 7. | Lakeside Place | 2186 S 99th E Ave, Tulsa, OK 74129 | Lakeside Best Living LLC | YSA Trustee |
| 8. | Riverpark at Kensington | 7803 S Wheeling Ave, Tulsa, OK 74136 | Riverpark Best Living LLC | YSA Trustee |
| 9. | Shoreline | 9601 E 21st Pl, Tulsa, OK 74129 | Shoreline's Best Living LLC | YSA Trustee |
| 10. | Villas at Midtown | 2001 E Skelly Dr, Tulsa, OK 74105 | Villas at Midtown Best Living LLC | YSA Trustee |
| 11. | Eaton Place | 517 E Douglas Ave, Wichita, KS 67202 | Eaton Place Best Living LLC | YSA Trustee |

Exhibit 2

Declaration of Jeffrey Azuse, Executive Director of Hilco Real Estate, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**OKLAHOMA CITY DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 26-12825-SAH** |
| | § | |
| **727 LOFTS BEST LIVING, LLC**[1] | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | **Chapter 11** |
| | § | |
| | § | |

------------------------------------------------------

| | | |
|---|---|---|
| | § | |
| | § | |
| **YSA INVESTMENTS 1, LLC** | § | **Case No. 26-12806** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

---

**DECLARATION OF JEFFREY AZUSE,**
**EXECUTIVE DIRECTOR OF HILCO REAL ESTATE, LLC**
**IN SUPPORT OF TRUSTEES' JOINT AMENDED APPLICATION TO EMPLOY**
**PROPERTY MANAGERS AND ASSET MANAGERS**

---

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), I, JEFFREY AZUSE, declare that the following is true to the best of my knowledge, information, and belief:

1. This declaration (this "Declaration") is submitted in support of the *Trustees' Joint Amended Application to Employ Property Managers and Asset Managers* (the "Amended Application").[2]

2. I am the Executive Director of Hilco Real Estate, LLC ("Hilco"), which maintains an office at 5 Revere Drive, Suite 410, Northbrook, Illinois 60062, and I am authorized to execute

---

[1] The jointly administered debtors and their respective case numbers are as follows: 727 Lofts Best Living, LLC, Case No. 26-12825-SAH; 727 Lofts Holdings, LLC, Case No. 26-12826-SAH; Remington Ranch's Best Living, LLC, Case No. 26-12842-SAH; Lofts at North Penn Best Living, LLC, Case No. 26-12844-SAH; A-V Village Creek Owner, LLC, Case No. 26-12846-SAH; Barcelona Best Living, LLC, Case No. 26-12850-SAH; Louis Investments, LLC, Case No. 26-12851-SAH; Woodland Manor Best Living, LLC, Case No. 26-12858-SAH; Woodland Manor TIC 1, LLC, Case No. 26-12859-SAH; and Ridge Best Living, LLC, Case No. 26-12869-SAH.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Amended Application

this Declaration on behalf of Hilco.

3. The facts set forth in this declaration are based upon my personal knowledge, discussions with other Hilco employees, and Hilco's business records that were reviewed by me or other Hilco employees acting under my supervision and direction. To the extent any information disclosed in this declaration requires amendment or modification upon Hilco's completion of further review or as additional information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended and modified information.

4. I believe that Hilco and the professionals it employs are well qualified to advise the Debtors on the matters which for Hilco is proposed to be employed in a cost effective, efficient, and timely manner. Hilco is a diversified real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, manages, and disposes of all types of real estate located both nationally and internationally. The Trustees seek to retain Hilco in particular because of Hilco's significant qualifications and experience in asset management restructuring matters. Hilco has extensive experience solving complex real estate problems and managing distressed commercial properties. Hilco has an excellent reputation as a leader in the real estate field and has an experienced team of asset managers and analysts.

5. Hilco has served as real estate broker and real estate consultant in many complex bankruptcy cases, such as: *In re WeWork Inc.*, Case No. 23-19865 (JKS) (Bankr. D.N.J. Nov. 6, 2023); *In re Cyxtera Techs., Inc.*, Case No. 23-14853 (JKS) (Bankr. D.N.J. July 18, 2023); *In re Nielsen & Bainbridge, LLC*, Case No. 23-90071 (DRJ) (Bankr. S.D. Tex. Mar. 30, 2023); *In re Youfit Health Clubs, LLC*, Case No. 20-12841 (MFW) (Bankr. D. Del. Dec. 3, 2020); *In re RTI Holding Co., LLC*, Case No. 20-12456 (JTD) (Bankr. D. Del. Nov. 4, 2020); *In re Town Sports Int'l, LLC*, Case No. 20 12168 (CSS) (Bankr. D. Del. Oct. 29, 2020); *In re California Pizza*

*Kitchen, Inc.*, Case No. 20 33752 (MI) (Bankr. S.D. Tex. Oct. 13, 2020); *In re CEC Entm't, Inc.*, Case No. 20 33163 (MI) (Bankr. S.D. Tex. Aug. 14, 2020).

6. Hilco was contacted by the Trustees to serve as asset manager for the following properties (the "Subject Properties"):

| No. | Property | Property address | Property Owner | Applicable Trustee |
|---|---|---|---|---|
| 1. | Lofts at North Penn | 15501 N Pennsylvania Ave, Edmond, OK 73013 | Lofts at North Penn Best Living LLC | Trustee Sherman |
| 2. | Remington Ranch | 1815 N Boomer Rd, Stillwater, OK 74075 | Remington Ranch's Best Living LLC | Trustee Sherman |
| 3. | Village Creek | 6630 S Zunis Ave, Tulsa, OK 74136 | A-V Village Creek Owner LLC | Trustee Sherman |
| 4. | The Capitol on 28th | 215 NE 28th St, Oklahoma City, OK 73105 | TRDWind Capitol LLC | Trustee Deeba |
| 5. | Woodscape | 4200 N Meridian Ave, Oklahoma City, OK 73112 | B & J Woodscape/Oklahoma City LLC | Trustee Deeba |
| 6. | 23 East | 11321 E 23rd St, Tulsa, OK 74129 | A-V 23 East Owner LLC | Trustee Deeba |
| 7. | Lakeside Place | 2186 S 99th E Ave, Tulsa, OK 74129 | Lakeside Best Living LLC | Trustee Deeba |
| 8. | Riverpark at Kensington | 7803 S Wheeling Ave, Tulsa, OK 74136 | Riverpark Best Living LLC | Trustee Deeba |
| 9. | Shoreline | 9601 E 21st Pl, Tulsa, OK 74129 | Shoreline's Best Living LLC | Trustee Deeba |
| 10. | Villas at Midtown | 2001 E Skelly Dr, Tulsa, OK 74105 | Villas at Midtown Best Living LLC | Trustee Deeba |
| 11. | Eaton Place | 517 E Douglas Ave, Wichita, KS 67202 | Eaton Place Best Living LLC | Trustee Deeba |

7. The anticipated scope of services to be provided by Hilco to the Trustees are as follows:

a. *Liaison with Trustees and Court*: Serve as the principal operational liaison among the property management companies, Trustees, and as appropriate, the Court and its authorized representatives.
b. *Strategic Direction*: Develop and recommend property-level and portfolio wide operating strategies in consultation with the applicable Trustee, with the objective of preserving and maximizing asset value.
c. *Stakeholder Coordination*: Serve as a designated point of contact for lenders, creditors, insurance representatives, governmental entities, consultants, and other stakeholders regarding property operations and asset performance, subject to the applicable Trustee's direction.

d. *Property Management Oversight*: Monitor and evaluate the performance of certain designated property management companies, including operating results, staffing, leasing, maintenance, resident relations and compliance with approved business plans.
e. *Financial Oversight*: Review property-level financial statements, operating budgets, cash flow, occupancy, collections, delinquency and significant variances from approved budgets.
f. *Cash Flow and Funding Requirements*: Evaluate property-level cash flow and funding needs, identify projected shortfalls, prioritize expenditures, and coordinate funding requests with the Trustees.
g. *Insurance and Property Taxes*: Assist the Trustees with oversight of insurance coverage, claims, property tax assessments, appeals, and related matters, including coordination with appropriate professionals.
h. *Capital Expenditure Oversight*: Evaluate and prioritize significant repairs, deferred maintenance, and capital improvements, including review of proposals, budgets, and recommendations for Trustee approval.
i. *Risk Management and Asset Preservation*: Identify material operational, financial, physical, and regulatory risks affecting the properties and recommend corrective actions.
j. *Third-Party Professional Coordination*: Assist the Trustees in coordinating appraisers, engineers, environmental consultants, insurance professionals, brokers and other professionals engaged in connection with the properties.
k. *Bankruptcy Reporting Support*: Provide operating information, financial analyses, cash flow projections, and other property related information reasonably requested by the Trustee to support required bankruptcy filings and Court reporting. Provide operating information, financial analyses, cash flow projections and other property related information reasonably requested by the Trustees to support required bankruptcy filings and Court reporting.
l. *Transition and Turnover Coordination*: Assist with the orderly transition of property operations, books and records, contracts, tenant information, and funds upon sale, transfer, change in management, or conclusion of the Trustees' administration.

8. The Real Estate Consulting and Advisory Services Agreement, attached to the Amended Application as Exhibit B, provides, in part, that the applicable Trustee agrees to pay Hilco a monthly fee equal to the greater of $4,000 or $15 per unit, per Subject Property.

9. Hilco intends to apply for compensation for its professional services rendered to the Trustees in YSA's bankruptcy case and in the 727 Debtors' bankruptcy cases and reimbursement of expenses incurred in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

10. In connection with Hilco's proposed retention by the Trustees in these bankruptcy cases, Hilco undertook reasonable efforts to determine whether it held or represented any interest adverse to the Trustees, YSA, or the 727 Debtors or had any conflicts or other disqualifying relationships.

11. To the extent that such inquiry revealed any connection between Hilco and any potential party in interest (or their affiliates, as the case may be) within the last two years in matters unrelated to these cases, those connections are disclosed on the list attached hereto as **Schedule 1**.

12. 19. Except as otherwise set forth herein or on Schedule 1, and insofar as I have been able to determine after reasonable inquiry, Hilco and each of Hilco's employees who will work on this engagement (i) do not hold or represent any interest adverse to the estates of YSA and each 727 Debtor and (ii) are "disinterested person[s]" within the meaning of section 101(14) of the Bankruptcy Code. Specifically, they (i) are not creditors, equity security holders, or insiders of either YSA or any 727 Debtor; (ii) are not, and were not, within two years before the petition dates, a director, officer, or employee of YSA or any 727 Debtor; and (iii) do not hold an interest materially adverse to YSA or the 727 Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in YSA or the 727 Debtors, or for any other reason. 11 U.S.C. § 101(14). In addition, to the best of my knowledge and belief, except as set forth on Schedule 1, none of the Hilco professionals expected to assist in this engagement (i) has represented any parties in interest and will not represent any parties in interest or any other entities in matters relating to YSA, the 727 Debtors, their estates, assets, or businesses or these bankruptcy cases; or (ii) is related or connected to YSA, the 727 Debtors, the United States Trustee for the Western District of Oklahoma, any employee in the Office of the United States Trustee for the Western District of Oklahoma, or any

other parties in interest in these bankruptcy cases or their respective attorneys.

13. As part of its diverse global activities, Hilco may (i) be involved in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in the bankruptcy cases of YSA and the 727 Debtors; and (ii) have in the past, and may in the future, advised and/or have been represented by several attorneys, law firms, and other professionals, some of whom may be involved in the bankruptcy cases of YSA and the 727 Debtors; and (iii) have in the past, and will likely in the future, be working with or against other professionals involved in the bankruptcy cases of YSA and the 727 Debtors in matters wholly unrelated to the bankruptcy cases of YSA and the 727 Debtors. Based upon my current knowledge, none of these business relationships are in connection with the bankruptcy cases of YSA and the 727 Debtors or constitute interests adverse to the interests of estates of YSA and the 727 Debtors or of any class of creditors or equity security holders in matters upon which Hilco is to be employed.

14. YSA and the 727 Debtors have numerous creditors and relationships with a large number of individuals and entities that may be parties in interest in the bankruptcy cases of YSA and the 727 Debtors. Consequently, although every reasonable effort has been made to discover Hilco's connections with the parties in interest, Hilco is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party in interest in the bankruptcy cases of YSA and the 727 Debtors. If Hilco discovers any new or pertinent facts or relationships, Hilco will promptly file a supplemental affidavit disclosing such information as required by Bankruptcy Rule 2014.

15. No promises have been received by Hilco as to compensation or payment in

connection with this case other than in accordance with the provisions of the Bankruptcy Code. Hilco has no agreement with any other entity to share with such entity any compensation received by Hilco in connection with the YSA bankruptcy case or the 727 Debtors bankruptcy cases.

I hereby declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed on November 11, 2026

Respectfully submitted,

________________________________
Jeffrey Azuse,
Executive Director of Hilco Real Estate, LLC

**Schedule 1**
**Disclosures**

a. Affiliates of Hilco Real Estate, LLC ("Hilco") are parties to a credit facility under which Wells Fargo Bank, N.A., and PNC Bank, N.A. are participatory lenders.

b. Unrelated to YSA and the 727 Debtors, Hilco Trading, LLC was a defendant in a civil litigation matter filed by BMO Bank N.A. in the Supreme Court of New York. This case has been resolved and dismissed.

c. In matters unrelated to YSA or the 727 Debtors, Hilco IP Services, LLC, an affiliate of Hilco, has performed or is currently providing appraisal, advisory, disposition or IPv4 brokerage services for or to the following entities: (i) Greenberg Traurig, LLP, (ii) Wells Fargo Bank, N.A. and (iii) Windstream Communications.

d. In matters unrelated to YSA or the 727 Debtors, Hilco's affiliate, Hilco Valuation Services, LLC, and/or its subsidiaries have performed or are currently performing appraisal, advisory, consulting, valuation, or field examination services for, (or related to loans made by or to) the following entities: (i) Apollo Advisors, L.P, Apollo Management Holdings, L.P. and Apollo Global Management, that may be affiliates of Apollo Funding Co., (ii) BMO Bank N.A., (iii) Greenberg Traurig, LLP, (iv) Keybank N.A., (v) PNC Bank, (vi) Sunbelt Rentals, (vii) Wells Fargo Bank, N.A., (viii) Westlake ACE Hardware that might be affiliate of Westlake Ace and Westlake Hardware Inc., and (ix) White Cap Holdings, Inc (f/n/a HD Supply).

e. From time to time, Hilco and/or its affiliates have collaborated with, transacted with or engaged the professional services of: (i) Computershare Trust Company, N.A., (ii) Dechert LLP, (iii) Frost Brown Todd, LLP (iv) Greenberg Traurig, LLP (v) Haynes and Boone, LLP, (vi) Porter Hedges LLP and (vii) Rochelle McCullough PLLC.

f. In matters unrelated to YSA or the 727 Debtors, Hilco's affiliate, Hilco Commercial Industrial, LLC and its affiliates have provided consulting and marketing services to Rochelle McCullough PLLC and may have interacted with Rochelle McCullough PLLC in its capacity as trustee.

g. In matters unrelated to YSA or the 727 Debtors, Hilco's affiliate, Getzler Henrich & Associates LLC has been retained by Greenberg Traurig, LLP to provide financial advisory and management consulting services.

h. In matters unrelated to YSA or the 727 Debtors, Hilco Real Estate and/or its affiliates have been engaged to provide receivership and other professional services to the following entities: (i) Computershare Trust Company, N.A., (ii) CREO QRS RC LLC that may be an affiliate of CREO QRS NP LLC and/or CREO QRS VC LLC, and (iii) Keybank N.A. In matters unrelated to YSA and the 727 Debtors, Hilco and its affiliates provide lease acquisition, disposition, and restructuring services to commercial real estate clients. In the course of providing such services, Hilco and its affiliates may have transacted, and may in the future transact, with one or more of the parties-in-interest.

i. Because of the magnitude of the entire creditor list in this chapter 11 case, it is possible that Hilco and/or its affiliates may represent or may have represented other creditors of the Debtors but does not represent any such creditors in connection with this chapter 11 case.

Hilco and/or its affiliates presently or in the past have served as a professional person in other matters, wholly unrelated to YSA and the 727 Debtors or these chapter 11 cases, in which other attorneys, accountants and other professionals of YSA or the 727 Debtors, creditors, or other parties in interest may have also served or serve as professional persons.